U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED    Nov 15 2025

CAROL L. MICHEL
CLERK

bwn                                    EDSS

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TAIUJUAN BURCHES,** | **Civil Action No. 2:25-cv-00804** |
| **Plaintiff,** | |
| **v.** | **JUDGE SUSIE MORGAN** |
| **TRANS UNION  LLC, EXPERIAN INFORMATION SOLUTIONS, INC., LVNV FUNDING, LLC, RESURGENT CAPITAL SERVICES, LP., CAPITAL ONE BANK (USA), NATIONAL ASSOCIATION ( "CAPITAL ONE N.A."), AFFIRM, INC., BLST RECEIVABLES & SERVICING LLC D/B/A FINGERHUT, WEBBANK, JEFFERSON CAPITAL SYSTEMS, LLC, COMENITY BANK, WAYFAIR LLC,  DISCOVER FINANCE SERVICES, TXU ENERGY RETAIL COMPANY, LLC, AND CENTERPOINT ENERGY, INC.** | **MAGISTRATE JUDGE:** |
| **Defendants.** | |

## THIRD AMENDED COMPLAINT

## SECTION I — INTRODUCTION

1. Plaintiff, **Taiujuan Burches** ("Plaintiff"), respectfully files this **Third Amended Complaint** against the above-named Defendants for their **repeated, systemic, willful, and negligent violations** of multiple federal and state consumer-protection statutes,

1

including the **Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq.; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 et seq.**

This Complaint addresses years of unlawful credit reporting, inaccurate furnishing, identity theft failures, and reinvestigation violations perpetrated by Defendants who collectively maintain, publish, verify, and circulate false, inconsistent, and damaging information about Plaintiff.

2. Plaintiff is the victim of **extensive identity theft, mixed-file contamination, unauthorized account reporting, and negligent data-handling practices** by multiple furnishers, debt buyers, utility companies, fintech lenders, and nationwide credit reporting agencies ("CRAs"). Defendants repeatedly published **inaccurate, and unverified tradelines**, resulting in severe harm to Plaintiff's creditworthiness, reputation, and financial standing.

3. Despite Plaintiff submitting **comprehensive fraud packages**, including FTC Identity Theft Affidavits, police documentation, certified disputes, identity verification, proof of address, and detailed written statements, Defendants **failed to conduct legally required investigations** under federal law. Many Defendants either ignored Plaintiff's disputes, verified data without reviewing documentation, or continued to furnish information they knew — or had reason to know — was false, unverifiable, or associated with an identity thief.

4. Several Defendants — including **Capital One, Discover, LVNV Funding, Resurgent Capital, Affirm, WebBank, Fingerhut (BLST), Comenity Bank, Wayfair, TXU Energy, CenterPoint Energy, and Jefferson Capital Systems** — furnished **contradictory**, **inconsistent**, and **factually impossible** information to the CRAs. This included inconsistent balances, different charge-off dates, duplicate reporting, time-barred debts, settled debts, and identities or addresses that **have no connection** to Plaintiff.

5. Numerous Defendants furnished or verified information **without possessing a single piece of validating documentation**, including:

    a. no signed applications,

    b. no account statements,

    c. no identity-verification records,

    d. no IP logs,

    e. no delivery confirmations, and

    f. no proof Plaintiff ever opened or used the alleged accounts.

    In many cases, Defendants explicitly admitted they had **no documentation**, yet continued to report Plaintiff as liable.

6. As a result of Defendants' repeated violations, Plaintiff has suffered **substantial and ongoing harm**, including but not limited to:

    a. denial of personal and business credit;

    b. denial of business funding opportunities exceeding **$150,000**;

    c. increased interest rates;

    d. reputational and professional harm;

    e. emotional distress, anxiety, and embarrassment;

    f. disruption of sleep and daily functioning;

    g. out-of-pocket expenses for mailings, monitoring, and identity theft mitigation;

    h. loss of time spent correcting errors; and

    i. reduced borrowing power and financial stability.

7. Plaintiff seeks **total damages of $500,000**, comprising actual, statutory, punitive, emotional-distress, reputational, and business-loss damages arising from Defendants' willful, reckless, and negligent violations of law.

8. Plaintiff also seeks injunctive, declaratory, and equitable relief, including a Court-ordered

3

directive requiring Defendants and the CRAs to **delete all inaccurate, unverifiable, mixed-file, or identity-theft-related information**, suppress reinsertion, correct personal identifying information, and notify all third parties who previously accessed the inaccurate data.

9.  Plaintiff demands **trial by jury** on all issues so triable, as permitted under Fed. R. Civ. P.

## SECTION II — JURISDICTION AND VENUE

10. This Court has **federal-question jurisdiction** over Plaintiff's claims pursuant to **28 U.S.C. §1331** because this action arises under federal statutes, including the **Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681 et seq.**, and the **Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692 et seq.** Both statutes create private rights of action for consumers harmed by inaccurate credit reporting, improper reinvestigations, unlawful debt collection, and failures by furnishers and CRAs to comply with statutory duties.

11. The Court has **supplemental jurisdiction** over Plaintiff's Louisiana state-law claims. Plaintiff's federal and state claims arise from a **common nucleus of operative fact**, involving the same inaccurate reporting events, identity-theft issues, furnishing failures, reinvestigation failures, and resulting damages.

12. **Venue is proper** in the U.S. District Court for the Eastern District of Louisiana pursuant to **28 U.S.C. §1391(b)** because:

a. A substantial part of the events giving rise to Plaintiff's claims occurred in this District;

b. Many inaccurate tradelines impacted Plaintiff while he resided in this District;

c. Plaintiff suffered consequential financial harm, credit denials, and reputational damage within this District; and

d. Several Defendants conduct continuous and systematic business within the Eastern

District of Louisiana.

13. Each Defendant **regularly transacts business in Louisiana**, maintains ongoing business contacts with Louisiana residents, furnishes consumer information affecting Louisiana consumers, or otherwise purposefully avails itself of Louisiana markets, thereby establishing personal jurisdiction consistent with traditional due-process principles.

14. Each Defendant **purposefully directed activities toward Louisiana**, including furnishing data to credit reporting agencies, reporting consumer activity about Plaintiff (a Louisiana resident), collecting or attempting to collect debts in Louisiana, and conducting commerce with Louisiana customers. Defendants knew or should have known that inaccurate information furnished or verified by them would cause harm to Plaintiff in Louisiana.

15. The FCRA expressly authorizes consumers to file private civil actions against consumer reporting agencies and furnishers of information for **willful** or **negligent** non-compliance with statutory duties under **15 U.S.C. §§1681n and 1681o**. Because Plaintiff alleges violations of these sections—including inaccurate reporting, mixed-file errors, failure to reinvestigate, and failure to block identity-theft data—this Court has full jurisdiction to adjudicate the claims.

16. The FDCPA authorizes private actions against debt collectors under **15 U.S.C. §1692k** for violations such as failure to validate, misrepresenting the legal status of debts, furnishing false information to CRAs, and engaging in deceptive or unfair collection practices. Several Defendants qualify as "debt collectors" under the FDCPA, making jurisdiction proper.

17. Plaintiff additionally seeks **declaratory, equitable, and injunctive relief**, which this Court has authority to grant under **28 U.S.C. §§2201 and 2202**, the Court's inherent equitable powers, and federal consumer-protection statutes.

## A. Plaintiff

18. **Plaintiff, Taiujuan Burches** ("Plaintiff"), is a natural person and consumer as defined by **15 U.S.C. §1681a(c)**. Plaintiff resides in **Hammond, Louisiana**, within the jurisdiction of the Eastern District of Louisiana. Plaintiff is the victim of **mixed-file errors, identity theft, unauthorized account reporting, inaccurate credit furnishing, defective reinvestigations, and continued publication of false information**, which collectively damaged Plaintiff's creditworthiness, financial stability, and emotional well-being.

## B. Consumer Reporting Agencies ("CRAs")

## 1. Trans Union LLC

19. **Defendant Trans Union LLC ("TransUnion")** is a **nationwide consumer reporting agency ("CRA")** as defined by **15 U.S.C. §1681a(f)**.
TransUnion compiles and publishes consumer credit files and reports for third-party use and is obligated to maintain **maximum possible accuracy** under **15 U.S.C. §1681e(b)**.
TransUnion repeatedly reported **inaccurate, inconsistent, and identity-theft-related tradelines** about Plaintiff and failed to conduct lawful reinvestigations under **15 U.S.C. §1681i**.

## 2. Experian Information Solutions, Inc.

20. **Defendant Experian Information Solutions, Inc. ("Experian")** is a nationwide CRA under **15 U.S.C. §1681a(f)**.
Experian reported and re-verified inaccurate information about Plaintiff, ignored

6

documentation proving identity theft, and violated its duties under **§1681e(b)** and **§1681i**.

Experian permitted **duplicate, contradictory, and mixed-file** data to remain on Plaintiff's credit file.

## C. Furnishers, Debt Buyers, Lenders, and Information Providers

### 1. LVNV Funding, LLC

21. **Defendant LVNV Funding, LLC ("LVNV")** is a national **debt buyer**, furnisher, and collector.

LVNV reported a debt allegedly connected to Plaintiff **despite having no underlying documentation**, no contract, no account statements, and despite contradictory data showing the debt was **previously settled or zero balance**.

LVNV continued furnishing negative data and verified it when disputed, violating **15 U.S.C. §1681s-2(b)** and the **FDCPA**, 15 U.S.C. §1692 et seq.

### 2. Resurgent Capital Services, L.P.

22. **Defendant Resurgent Capital Services, L.P. ("Resurgent")** services and collects debts for LVNV and furnishes data to the CRAs.

Resurgent admitted in internal correspondence that the alleged LVNV debt was **settled, closed, time-barred, or carried a zero balance**, yet continued reporting and verifying the debt.

Resurgent repeatedly violated **FCRA §1681s-2(b)** and FDCPA obligations.

### 3. Capital One Bank (USA), National Association ("Capital One N.A.")

23. **Defendant Capital One Bank (USA), National Association ("Capital One N.A.")** is a national lender and furnisher.

7

Capital One furnished inaccurate, contradictory, and mixed-file data about Plaintiff, including reporting of an account originally opened under **Discover branding** but now acquired or serviced by Capital One.

Capital One verified information without possessing any application, contract, identity records, or proof Plaintiff opened the alleged account, violating **§1681s-2(b)**.

## 4. Affirm, Inc.

24. **Defendant Affirm, Inc. ("Affirm")** is a nationwide fintech lender, point-of-sale creditor, and furnisher of consumer credit data.

Affirm furnished **inaccurate and unauthorized account information** related to Plaintiff.

Affirm failed to validate or verify account opening, identity authentication, IP logs, merchant receipts, or any documentation upon dispute.

## 5. BLST Receivables & Servicing LLC d/b/a Fingerhut

25. **Defendant BLST Receivables & Servicing LLC d/b/a Fingerhut ("Fingerhut")** furnishes and services retail credit accounts.

Fingerhut reported an alleged account Plaintiff **never opened**, never authorized, and never benefitted from.

Fingerhut verified the fraudulent account despite lacking any signed application, identity-verification records, purchase history, or shipping documentation.

## 6. WebBank

26. **Defendant WebBank** is the originating creditor for Affirm-related and Fingerhut-related consumer credit accounts.

WebBank furnished inaccurate and identity-theft-related tradelines connected to Plaintiff

8

without possessing **any supporting documents**, contract, verification, or authentication records.

WebBank violated **§1681s-2(b)** by verifying data without investigation.

## 7. Jefferson Capital Systems, LLC

27. **Defendant Jefferson Capital Systems, LLC ("Jefferson Capital")** is a debt buyer, collector, and furnisher.

Jefferson Capital reported an alleged balance connected to Plaintiff **without documentation** and failed to validate the debt under FDCPA **§1692g**.

Jefferson Capital repeatedly verified inaccurate information to the CRAs.

## 8. Comenity Bank

28. **Defendant Comenity Bank ("Comenity")** is a national lender and furnisher responsible for many retail-branded credit cards, including the Wayfair store card.

Comenity furnished inaccurate, inconsistent, and identity-theft-related tradeline information related to an alleged **Wayfair & Comenity account** that Plaintiff did not authorize.

Comenity failed to provide any records, contract, or proof upon dispute.

## 9. Wayfair LLC

29. **Defendant Wayfair LLC ("Wayfair")** is a retailer and data provider connected to Comenity's store-credit program.

Wayfair's system enabled the creation of an **unauthorized retail credit account** in Plaintiff's name due to insufficient identity-verification procedures.

Wayfair transmitted inaccurate personal identifying information to Comenity, directly causing the inaccurate reporting.

9

**10. Discover Financial Services ("Discover")**

30. **Defendant Discover Financial Services ("Discover")** furnished an alleged tradeline that continues to appear on Plaintiff's credit report **under the Discover name**, even though the account has been **acquired, migrated, or re-serviced by Capital One**. Because the credit report still displays **"Discover"** as the creditor, Discover remains liable as a furnisher for:

- inaccurate reporting,

- failing to correct ownership transition data,

- failing to update the account as disputed, and

- failing to provide any contract or application supporting the alleged account.

## 11. TXU Energy Retail Company, LLC

31. **Defendant TXU Energy Retail Company, LLC ("TXU Energy")** is a utility provider and furnisher of consumer credit data. TXU Energy reported an account tied to a residential service address where Plaintiff **never lived and never received service**. TXU verified the inaccurate account without documentation, violating **§1681s-2(b)**.

## 12. CenterPoint Energy, Inc.

32. **Defendant CenterPoint Energy, Inc. ("CenterPoint")** is a utility furnisher that reported a inaccurate account connected to Plaintiff. CenterPoint failed to validate service records, application data, or identity verification and verified the fraudulent account anyway. CenterPoint's inaccurate reporting caused significant credit harm and violated **§1681s-2(b)**.

## SECTION IV — FACTUAL BACKGROUND

33. This case arises from **years of inaccurate reporting, identity-theft failures, mixed-file contamination, unauthorized account reporting, defective reinvestigations, and willful violations** of the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA"), and applicable Louisiana consumer-protection laws by each Defendant.

34. Plaintiff has repeatedly been the victim of **identity theft and mixed-file errors**, resulting in numerous unauthorized accounts appearing on Plaintiff's credit reports from Trans Union and Experian. These accounts include credit cards, retail accounts, installment loans, utility accounts, and collection accounts that Plaintiff **never applied for, never authorized, never received, and never benefitted from**.

35. Defendants **Capital One N.A., Discover, Affirm, WebBank, Comenity Bank, Wayfair LLC, TXU Energy, CenterPoint Energy, Jefferson Capital Systems, BLST/Fingerhut, LVNV, and Resurgent** reported information relating to accounts that:

- do not belong to Plaintiff;

- are associated with unknown addresses;

- contain mismatched dates, balances, and identifiers;

- were never validated upon request;

- include identities or names not connected to Plaintiff; and

- remain on Plaintiff's reports despite repeated disputes and proof of fraud.

36. Plaintiff **never opened, applied for, or authorized** the following accounts or tradelines:

- Discover-branded account still shown on the credit report;

- Capital One-reported account derived from the Discover account;

- Affirm/WebBank financial account;

11

- BES1 dba Fingerhut retail account;

- Comenity AND Wayfair account;

- Jefferson Capital collection account;

- TXU Energy utility account;

- CenterPoint Energy utility account;

- LVNVResurgent collection account tied to identity-theft information.

37. Plaintiff repeatedly disputed these accounts through **certified mail**, providing each CRA and furnisher with detailed evidence including:

- identity theft affidavits;

- police information;

- government-issued identification;

- proof of current and prior addresses;

- fraud statements;

- written disputes;

- supporting documentation showing identity mismatch.

38. Despite receiving legally sufficient information proving inaccuracy, Trans Union and Experian **failed to block identity-theft-related data** as required under **15 U.S.C. §1681c-2**, and instead continued publishing and republishing false information.

39. Trans Union and Experian also conducted **defective reinvestigations** under **§1681i**, including:

- marking disputes as "verified" within minutes;

- failing to review documents Plaintiff submitted;

- accepting unverifiable data from furnishers;

- repeating inaccurate information without independent review;

- refusing to correct inaccurate personal identifying information.

40. Many furnishers notified of Plaintiff's disputes—including Capital One, Resurgent,

12

LVNV, Affirm, WebBank, Fingerhut, Comenity, Wayfair, TXU, CenterPoint, and Jefferson Capital—

**verified accounts without possessing a single piece of documentation**, including:

- no signed applications;

- no billing statements;

- no IP, device, or login information;

- no identity verification logs;

- no delivery records;

- no contracts;

- no proof the alleged accounts were ever opened by Plaintiff.

41. Plaintiff specifically requested **validation** under FDCPA §1692g from LVNV, Resurgent, and Jefferson Capital. These debt collectors **never produced validation**, yet continued reporting to the CRAs and affirmatively verifying the disputed accounts.

42. Capital One reported an account that originated under **Discover**, yet Capital One and Discover both failed to produce

- an application,

- identity match records,

- cardmember agreements, or

- account-opening records.

    Despite this, both entities allowed the tradeline to continue appearing on Plaintiff's credit reports.

43. BLST/Fingerhut and WebBank reported an alleged retail account despite having **no application, no proof of delivery, no transaction logs, and no identity verification**. Fingerhut continued to mark the account as "verified."

44. Comenity and Wayfair jointly furnished an alleged store-account to Plaintiff's file, even though:

13

- Plaintiff never opened any Wayfair account;

- the identity information used did not match Plaintiff;

- addresses associated with the account were not Plaintiff's;

- Comenity could not produce a contract or application;

- Wayfair provided inconsistent customer identity data.

45. TXU Energy and CenterPoint Energy reported utility accounts for service addresses Plaintiff has **never lived at**, has no connection to, and has never been linked to any legitimate records. They failed to validate service records or identity authentication.

46. As a result of Defendants' actions, Plaintiff experienced:

- repeated credit denials;

- denial of business funding;

- loss of financial opportunities;

- higher interest rates;

- reputational harm;

- emotional distress, anxiety, sleep disruption;

- embarrassment in professional and personal settings;

- interference with ability to obtain housing and credit;

- out-of-pocket costs for monitoring and disputes.

47. Plaintiff documented these harms through financial denials, lender correspondence, business funding failures, and medical records reflecting stress, anxiety, and emotional harm caused by inaccurate reporting.

48. Despite this overwhelming evidence, Defendants **continued reporting**, verifying, and publishing false information, demonstrating **reckless disregard** for their statutory obligations under the FCRA and FDCPA.

49. Plaintiff brings this action because Defendants' conduct is **ongoing**, **willful**, and **causing continuous harm**, leaving litigation as the only remedy capable of correcting the damage

14

and securing accountability.

## SECTION V — STATEMENT OF COMPLIANCE WITH THE COURT'S ORDERS

50. Plaintiff files this Third Amended Complaint in strict compliance with the Court's directives and all applicable Federal Rules of Civil Procedure. On the dates set forth in the Court's orders, the Court instructed Plaintiff to file a Third Amended Complaint to clarify the parties, claims, factual allegations, and legal theories asserted in this action.

51. Plaintiff has followed **every instruction issued by the Court**, including:

a. identifying and naming only the parties who remain active Defendants in this litigation;

b. removing or omitting previously terminated or dismissed parties;

c. consolidating allegations for clarity and organization;

d. restating claims with greater factual detail and specificity;

e. correcting any references to entities that no longer remain Defendants;

f. separating allegations against each Defendant so the Court and Defendants can clearly understand the conduct at issue; and

g. eliminating redundancy, clarifying disputed accounts, and presenting the claims in a streamlined and organized manner as instructed.

52. Plaintiff further confirms that this Third Amended Complaint does **not add new defendants**, does **not assert new unrelated claims**, and does **not expand the scope of the litigation beyond the boundaries permitted by the Court's orders**. Instead, this filing is intended to:

- strengthen clarity;

- remove confusion;

- comply with judicial instructions; and

15

- ensure the claims are properly pled under governing law.

53. Plaintiff affirms that the amendments made herein were prepared **solely to comply with the Court's orders**, improve organization, increase factual specificity, and correct the record as instructed. Any additions or clarifications included in this version serve only to assist the Court and Defendants in understanding the precise nature of Plaintiff's claims and to present the issues efficiently for adjudication.

54. Plaintiff respectfully submits that this Third Amended Complaint fully satisfies the requirements of the Court's directives and respectfully requests that the Court accept this filing as compliant with the instructions previously issued.

## SECTION VI — WHY AMENDMENT IS PROPER UNDER RULE 15(a)(2)

55. Amendment is proper under **Federal Rule of Civil Procedure 15(a)(2)**, which provides that a court "should freely give leave when justice so requires." The United States Supreme Court and the Fifth Circuit repeatedly emphasize that Rule 15 embodies a **strong presumption in favor of allowing amendment**, particularly where the amendment clarifies claims, corrects parties, or provides additional necessary detail.

56. The purpose of this Third Amended Complaint is not to expand the lawsuit, add new unrelated claims, or introduce new defendants. Instead, the amendment is intended to:

 a. comply precisely with this Court's instructions;

 b. narrow and clarify the list of proper defendants;

 c. refine and reorganize factual allegations for accuracy and clarity;

 d. eliminate confusion caused by prior contested filings; and

 e. ensure each defendant's conduct is clearly identified for adjudication.

57. Plaintiff's amendment serves the interests of justice by improving the clarity of the pleadings, promoting judicial efficiency, and ensuring that the issues are presented in an orderly and understandable manner. These principles fall squarely within the liberal

amendment policy contemplated under Rule 15 and its interpreting authorities.

58. None of the recognized grounds for denying amendment—such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to opposing parties, or futility—are present here.

- **No undue delay**: Plaintiff filed this amendment within the timeframe ordered by the Court.

- **No bad faith**: The amendment is submitted solely for clarity, organization, and compliance with the Court's directive.

- **No prejudice**: Defendants are already fully aware of the claims and underlying facts. No new claims or new parties are added.

- **Not futile**: Plaintiff's factual allegations and legal theories—supported by evidence of identity theft, inaccurate reporting, defective reinvestigations, and violations of §1681e(b), §1681i, §1681s-2(b), and the FDCPA—remain legally viable.

59. The Fifth Circuit has repeatedly held that amendments clarifying existing claims, correcting pleadings, or complying with court instructions are **presumptively proper** under Rule 15(a)(2). This amendment does exactly that—clarifies, corrects, narrows, and organizes.

60. Plaintiff therefore respectfully submits that this Third Amended Complaint falls well within the broad allowance mandated by Rule 15, satisfies the relevant legal standard, and should be accepted by the Court as a proper amendment filed in good faith and in compliance with judicial instructions.

## SECTION VII — SUMMARY OF DEFENDANTS' INCONSISTENT REPORTING

61. Defendants have reported and continued to publish **inconsistent, contradictory, inaccurate, and impossible information** about Plaintiff's alleged accounts, identities,

17

and obligations. These inconsistencies appear across multiple tradelines and demonstrate systemic failures in furnishing, reinvestigation, fraud prevention, and identity verification practices.

62. Several Defendants, including **Capital One N.A., Discover, LVNV, Resurgent, Affirm, WebBank, Comenity/Wayfair, BLST/Fingerhut, TXU Energy, CenterPoint Energy, and Jefferson Capital**, furnished account data that **does not match Plaintiff's identity**, contains conflicting dates and balances, or cannot be validated through any supporting documentation.

63. These inconsistencies include—but are not limited to—the following:

## A. Conflicting Account Ownership and Creditor Labels

64. The account originally reported under **Discover Financial Services** appears on Plaintiff's credit reports **still labeled as Discover**, despite Discover allegedly transferring, selling, or migrating the account to **Capital One N.A.**

65. Because the Discover label **remains on Plaintiff's report**, the credit record reflects **two different creditors**—Discover and Capital One—associaed with the same alleged account, causing confusion and mixed-file contamination.

66. Neither Discover nor Capital One has produced a contract, application, cardmember agreement, or identity verification record for the alleged account, yet both allowed the inconsistent reporting to continue.

## B. Conflicting Dates, Charge-Off Information, and Account Histories

67. LVNV Funding, LLC and Resurgent Capital Services furnished **contradictory charge-off dates**, inconsistent balances, and conflicting "date opened" fields relating to the same alleged account.

68. Some versions of the LVNV/Resurgent data show:

18

- a charge-off balance;

- a "settled" or "zero balance" status;

- a different "last payment date";

- status updates that contradict their own internal letters.

69. These conflicting records demonstrate that neither LVNV nor Resurgent possesses accurate or consistent information, yet both continued verifying the data to Experian and Trans Union.

## C. Conflicting Identity and Address Information

70. TXU Energy and CenterPoint Energy reported utility accounts associated with **service addresses where Plaintiff has never lived**. On the same tradelines, the CRAs show inconsistent address histories that Plaintiff did not provide.

71. These gas and electric accounts contain identity information inconsistent with Plaintiff's actual records, including mismatched:

- prior addresses,

- dates of service,

- service locations,

- customer identification fields,

- account-opening information.

72. Plaintiff provided proof of residency, but TXU and CenterPoint still verified the accounts.

## D. Conflicting Retail Account Information

73. Comenity Bank and Wayfair LLC jointly reported a "Wayfair/Comenity" tradeline containing:

- an account Plaintiff did not open;

- different "date opened" fields across Experian and Trans Union;

19

- inconsistent monthly payment amounts;

- fluctuating balances;

- conflicting charge-off or past-due statuses.

74. Wayfair's internal customer identity data sent to Comenity did not match Plaintiff's name, address, or identifiers, yet Comenity continued reporting the account.

## E. Fingerhut / BLST / WebBank Inconsistencies

75. BLST Receivables & Servicing LLC d/b/a Fingerhut and WebBank reported an alleged account showing:

- inconsistent opening dates;

- different balances on each CRA;

- shipping or delivery records that do not exist;

- addresses not associated with Plaintiff;

- inconsistent payment history fields.

76. These inconsistencies show a clear lack of documentation or legitimate account ownership.

## F. Inconsistent and Impossible Personal Information Across CRAs

77. Trans Union and Experian published **conflicting personal identifiers**, including:

- different variations of Plaintiff's name;

- addresses Plaintiff never lived at;

- employer information Plaintiff never used;

- mixed-file identities appearing with similar but incorrect account data.

78. The CRAs failed to correct or delete these identifiers even after receiving government-issued identification, proof of address, and fraud documentation.

20

## G. Failure to Synchronize or Correct Furnished Information

79. Across all accounts, Defendants furnished inconsistent information, including conflicting:

- charge-off balances,

- date opened,

- date closed,

- highest balance,

- payment history,

- ownership status,

- previous creditor information,

- verification responses.

80. These discrepancies directly conflict with FCRA §1681e(b)'s requirement of **maximum possible accuracy** and demonstrate that Defendants lacked:

- proper account records,

- sufficient identity verification,

- adequate internal controls,

- lawful reinvestigation procedures.


## H. Pattern of Verifying Conflicting Data

81. Each furnisher listed above verified data that:

- contradicted their own internal records,

- contradicted the CRA's file,

- lacked supporting documentation, or

- was objectively impossible given Plaintiff's proven identity and address history.

82. This demonstrates a pattern of:

- reckless disregard for statutory duties;

21

- automated or non-existent reinvestigations;

- "rubber-stamp" verification practices;

- and willful continuation of inaccurate reporting.

## I. Combined Harm Caused by Inconsistent Reporting

83. The inconsistencies across Defendants caused Plaintiff's credit reports to appear:

- unreliable,

- fraudulent,

- disorderly,

- contradictory, and

- indicative of potential financial instability.

84. Lenders reviewing these contradictory tradelines viewed Plaintiff as a credit risk,

    resulting in:

- denials of funding,

- loss of business opportunities,

- higher interest rates,

- reduced creditworthiness, and

- reputational damage.

## SECTION VIII — CLAIMS AGAINST TRANS UNION LLC

85. **Defendant Trans Union LLC ("TransUnion")** is a nationwide consumer reporting

    agency ("CRA") governed by the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq. As a

    CRA, TransUnion is required to maintain reasonable procedures to assure **maximum**

    **possible accuracy** of the information it publishes about consumers, to conduct

    reasonable reinvestigations when disputes are received, and to block identity-theft-related

    data upon proper request.

22

## A. Violation of 15 U.S.C. §1681e(b) — Failure to Assure Maximum Possible Accuracy

86. TransUnion repeatedly published and maintained **inaccurate, contradictory, fraudulent, and mixed-file information** relating to Plaintiff, including but not limited to:

- false Discover/Capital One tradeline;

- false LVNV/Resurgent accounts;

- false Affirm/WebBank account;

- false Comenity/Wayfair account;

- false BLST/Fingerhut account;

- false Jefferson Capital account;

- false TXU Energy and CenterPoint Energy utility accounts;

- false addresses not associated with Plaintiff;

- mixed-file personal identifiers.

87. These inaccuracies appeared across different fields including **date opened, balance, account status, payment history, charge-off information, and creditor name**, demonstrating that TransUnion's procedures were not reasonably designed to assure accuracy.

88. TransUnion continued reporting this inaccurate information **even after receiving extensive proof** from Plaintiff demonstrating identity theft, mixed-file contamination, and inconsistencies among furnishers.

89. By failing to maintain reasonable procedures to assure accurate reporting, TransUnion violated **§1681e(b)**.

## B. Violation of 15 U.S.C. §1681i — Failure to Conduct Reasonable

23

90. Plaintiff disputed all inaccurate tradelines with TransUnion through certified mail, providing more than sufficient identity-verification and documentation.

91. Upon receiving these disputes, TransUnion failed to conduct a lawful reinvestigation, including:

- relying on automated e-Oscar results without reviewing Plaintiff's evidence;

- marking accounts "verified" within minutes or hours;

- refusing to delete fraudulent or unverified tradelines;

- failing to review identity theft affidavits, police information, and proof of residency;

- failing to reconcile conflicting data among furnishers;

- continuing to publish data TransUnion knew was contradictory or unsupported.

92. TransUnion improperly "parroted" responses from furnishers without performing any independent investigation, which courts have repeatedly found to violate **§1681i**.

93. TransUnion's reinvestigations were superficial, automated, and unlawful, and thus violated **§1681i(a)**.

## C. Violation of 15 U.S.C. §1681c-2 — Failure to Block Identity Theft Information

94. Plaintiff submitted proper identity-theft documentation as required by **§1681c-2**, including:

- a sworn identity-theft statement;

- government-issued identification;

- proof of address;

- detailed fraud explanation;

- supporting documentation from Plaintiff.

95. Despite receiving a valid identity-theft request, TransUnion failed to block the inaccurate information, contrary to **§1681c-2(a)**.

96. TransUnion instead continued reporting, verifying, and recirculating identity-theft-related tradelines, causing further harm.

97. This constitutes a willful violation of §1681c-2.

## D. TransUnion Acted Willfully and/or Negligently Under 15 U.S.C. §§1681n and 1681o

98. TransUnion's actions were **willful**, as evidenced by:

- repeated publication of conflicting data;

- verifying accounts without documentation from furnishers;

- ignoring clear evidence of identity theft;

- refusing to correct mixed-file information;

- relying on automated systems in place of meaningful reinvestigation.

99. Alternatively, TransUnion acted **negligently**, as its conduct failed to meet the FCRA's minimum standards of care required for handling consumer disputes and identity theft claims.

100.    TransUnion's willful or negligent violations entitle Plaintiff to **actual damages, statutory damages, punitive damages (for willfulness), attorney-equivalent costs, and all available relief** under **§1681n** and **§1681o**.

## E. Damages Caused by TransUnion

101.    TransUnion's inaccurate reporting and failure to correct Plaintiff's file directly caused:

- denials of personal and business credit;

- loss of business funding opportunities;

- higher interest rates and financial costs;

- reputational harm;

- emotional distress, anxiety, embarrassment, and sleep disruption;

- additional expenses for mailings, monitoring, and fraud prevention;

- time and resources spent attempting to correct the false information.

102.    Plaintiff suffered actual harm within the jurisdiction of this Court, and TransUnion's misconduct continues to cause ongoing damage.

# SECTION IX — CLAIMS AGAINST EXPERIAN INFORMATION SOLUTIONS, INC.

103.    **Defendant Experian Information Solutions, Inc. ("Experian")** is a nationwide consumer reporting agency ("CRA") governed by the FCRA. Experian compiles, maintains, and publishes consumer credit information and is required to:

- maintain reasonable procedures for accuracy (§1681e(b));

- conduct lawful reinvestigations (§1681i); and

- block identity-theft information upon proper request (§1681c-2).

104.    Experian repeatedly failed to perform these statutory obligations, resulting in continued reporting of **inaccurate, contradictory, and mixed-file information** about Plaintiff.

## A. Violation of 15 U.S.C. §1681e(b) — Failure to Assure Maximum Possible Accuracy

105.    Experian published multiple **false, inconsistent, and unverified tradelines** related to Plaintiff, including:

26

- Discover/Capital One account still coded as "Discover";

- Affirm/WebBank account;

- BLST/Fingerhut account;

- Comenity/Wayfair retail account;

- Jefferson Capital collection account;

- LVNV Funding/Resurgent account;

- TXU Energy and CenterPoint Energy accounts;

- mixed-file identities, names, and addresses.

106.    Experian's reporting contained conflicting data across:

- balances,

- account status,

- payment history,

- past-due amounts,

- account opening/closing dates,

- charge-off information,

- ownership labels ("Discover" vs "Capital One").

107.    These inconsistencies demonstrate that Experian's procedures **were not reasonably designed** to assure maximum possible accuracy as required by **§1681e(b)**.

108.    Experian continued reporting these inaccuracies **after multiple disputes**, showing reckless disregard for statutory mandates.

## B. Violation of 15 U.S.C. §1681i — Failure to Conduct Reasonable Reinvestigation

109.    Plaintiff submitted multiple certified disputes to Experian with substantial fraud documentation, including identity-theft statements, proof of address, and explanations.

110.    Experian failed to conduct a lawful reinvestigation by:

27

- relying entirely on automated e-Oscar codes;

- verifying accounts within minutes or hours;

- ignoring Plaintiff's evidence;

- refusing to examine contradictory furnisher information;

- failing to correct inconsistent or mixed-file personal data.

111. Experian repeatedly marked accounts "verified as accurate" despite:

- no contract or application from Capital One or Discover;

- no identity-verification records from Affirm or WebBank;

- no service documentation from TXU or CenterPoint;

- no validation from Jefferson Capital or LVNV/Resurgent.

112. Experian's reinvestigation process was **superficial and legally insufficient**, violating **§1681i(a)**.

## C. Violation of 15 U.S.C. §1681c-2 — Failure to Block Identity-Theft Information

113. Plaintiff submitted proper **identity-theft blocking documentation** under §1681c-2, including:

- signed written statement;

- government-issued ID;

- proof of current address;

- detailed explanation of unauthorized accounts.

114. Experian wrongfully refused to block fraudulent data and continued publishing the disputed tradelines, despite having statutory obligations to delete such information **within four business days** after receiving valid documentation.

115. Experian's failure to block identity-theft data constitutes a willful violation of **§1681c-2(a)**.

28

**D. Experian Acted Willfully and/or Negligently Under 15 U.S.C. §§1681n and 1681o**

116.    Experian acted **willfully**, evidenced by:

- knowingly relying on inaccurate data;

- ignoring direct contradictions in furnisher responses;

- failing to remove mixed-file addresses and names;

- refusing to investigate Plaintiff's documentation;

- continuing to publish data it knew or should have known was false.

117.    Alternatively, Experian acted **negligently** by failing to meet minimum FCRA standards.

118.    As a result of Experian's willful and/or negligent actions, Plaintiff is entitled to:

- actual damages;

- statutory damages;

- punitive damages (for willfulness);

- costs and equitable relief pursuant to **§§1681n–o**.

## E. Damages Caused by Experian

119.    Experian's inaccurate reporting and unlawful reinvestigations caused significant harm to Plaintiff, including:

- credit denials and loss of business funding;

- increased interest rates;

- decreased creditworthiness;

- reputational damage;

- emotional distress, anxiety, embarrassment, and sleep disruption;

- out-of-pocket mailing and dispute expenses;

• loss of time spent resolving errors.

120. Plaintiff continues to experience ongoing harm due to Experian's continued publication of inaccurate and fraudulent data.

## SECTION X — CLAIMS AGAINST LVNV FUNDING, LLC

121. **Plaintiff re-alleges all preceding paragraphs** as though fully stated herein.

122. **Defendant LVNV Funding, LLC ("LVNV")** is a large national debt buyer, collector, and furnisher of consumer information to Trans Union LLC and Experian Information Solutions, Inc.

123. LVNV purchases **charged-off, stale, time-barred, unverified, and undocumented debt portfolios** and furnishes the data to CRAs.

124. LVNV furnished a **fraudulent, inaccurate, and legally unenforceable collection account** associated with a Discover/Capital One account that Plaintiff never opened, used, authorized, or benefitted from.

125. LVNV's reporting directly conflicts with written correspondence issued by **Resurgent Capital Services, L.P.**, its servicing agent, which expressly stated that the alleged debt was:

• **"Settled in full,"**

• **"Paid/closed,"** and

• **"Time-barred and not legally enforceable."**

126. Despite admitting it could not legally collect or verify the debt, LVNV **continued to report it as an active collection account**, causing severe harm to Plaintiff's creditworthiness.

## A. LVNV Furnished False and Fraudulent Information *(FCRA — 15 U.S.C. §1681s-2(a))*

30

127.    LVNV furnished multiple categories of **false, misleading, and unverifiable information**, including:

- a balance Plaintiff never owed;

- dates of delinquency that contradict Capital One and Discover;

- payment history belonging to another consumer;

- ownership chain that cannot be validated;

- false charge-off dates;

- wrong "date opened" and "date of first delinquency";

- inconsistent account statuses ("open," "closed," "charged-off," "in collections").

128.    LVNV furnished these inaccuracies **without possessing ANY underlying account documentation.**

129.    LVNV either:

- had **no evidence** tying Plaintiff to the debt, **or**

- ignored its own internal documents showing the debt was **settled and time-barred**.

This violates **§1681s-2(a)(1)(A)** which prohibits furnishing information known or reasonably believed to be inaccurate.

## B. LVNV Failed to Conduct a Reasonable Investigation After CRA Disputes

*(FCRA — 15 U.S.C. §1681s-2(b))*

130.    Trans Union LLC and Experian forwarded Plaintiff's disputes to LVNV via ACDV notices.

131.    Receipt of an ACDV notice triggered LVNV's statutory obligations to:

- conduct a lawful **reasonable investigation**,

- review **all relevant information** provided by Plaintiff and the CRAs,

- correct inaccurate data,

31

delete unverifiable information, and

- notify all CRAs of updated results.

132.    LVNV violated §1681s-2(b) because it:

- verified the account as "accurate" despite having **no contract**,

- ignored Plaintiff's fraud and police documentation,

- failed to request documents from Discover or Capital One,

- failed to correct the "settled" or "time-barred" status,

- relied on automated responses without review.

133.    LVNV had **zero documentation linking Plaintiff to the debt** when it verified the account.

134.    LVNV's "verification" was nothing more than a **rubber-stamped automated response**, legally insufficient under the FCRA.

## C. LVNV Violated the FDCPA *(Debt Collector — 15 U.S.C. §§1692e, 1692f, 1692g)*

135.    LVNV is a "debt collector" under the FDCPA because it:

- collects debts owed—or allegedly owed—to another party,

- purchases defaulted accounts,

- services delinquent or charged-off debts.

## 1. Violation of §1692e — False or Misleading Representations

136.    LVNV violated §1692e by falsely representing:

- Plaintiff owed a debt he did NOT owe;

- the debt was valid and collectible;

- the amount claimed was accurate;

- the alleged debt was legally enforceable (it was time-barred);

- the account status was "active collection."

32

## 2. Violation of §1692e(2)(A) — Misrepresenting the Legal Status of the Debt

137.    LVNV continued reporting a debt as "active," even though:

- its own agent admitted it was **settled**,

- its own agent admitted it was **time-barred**,

- it could not legally sue or collect on the account.

## 3. Violation of §1692f — Unfair or Unconscionable Acts

138.    LVNV's actions are unconscionable because it:

- attempted to collect a nonexistent debt,

- reported a settled debt,

- used false and conflicting information to harm Plaintiff,

- continued reporting with NO supporting documents.

## 4. Violation of §1692g — Failure to Validate the Debt

139.    Plaintiff submitted certified debt validation requests.

140.    LVNV refused or failed to produce:

- a signed Discover or Capital One application,

- account statements,

- contractual documents,

- payment history,

- chain-of-assignment and sale records,

- IP logs,

- any evidence Plaintiff ever used or owed the account.

141.    Continuing collection or reporting **after failing to validate** is a direct violation of **§1692g(b)**.

33

## D. LVNV Failed to Report the Account as Disputed *(15 U.S.C. §1692e(8))*

142.   LVNV received multiple written disputes from Plaintiff.

143.   LVNV was legally required to inform CRAs that:

**"THE CONSUMER DISPUTES THIS DEBT."**

144.   LVNV did not report the account as disputed, which is:

- a deceptive practice under §1692e(8),

- a material misrepresentation to third-party users of credit reports,

- an independent FDCPA violation.

## E. LVNV's Failures Caused Downstream Harm

145.   LVNV's inaccurate and unlawful reporting directly caused:

- repeated reinvestigation failures by Experian and Trans Union;

- Capital One's successor data conflicts;

- Discover's conflicting legacy data;

- denial of personal credit;

- denial of business credit and funding exceeding **$150,000**;

- damaged credit scores;

- emotional distress;

- reputational harm;

- increased interest rates.

146.   But for LVNV's false reporting, the alleged debt would have been deleted entirely.

147.   LVNV was a **substantial, direct, and foreseeable cause** of Plaintiff's damages.

## F. Willfulness & Negligence

34

148. LVNV acted willfully within the meaning of 15 U.S.C. §1681n because:

- it reported a debt it admitted was "settled,"

- it reported a debt it admitted was "time-barred,"

- it verified information without documentation,

- it ignored Plaintiff's evidence and multiple disputes,

- it knew its reporting was inaccurate or unverifiable.

149. Alternatively, LVNV acted negligently under §1681o.

## G. Damages

150. As a direct and proximate result of LVNV's unlawful conduct, Plaintiff suffered:

- loss of business funding > $150,000;

- credit denials;

- lower credit scores;

- emotional distress, anxiety, embarrassment;

- reputational harm;

- out-of-pocket mailing and monitoring costs;

- time wasted correcting mixed-file and identity theft issues.

## SECTION XI — CLAIMS AGAINST RESURGENT CAPITAL SERVICES, L.P.

151. **Plaintiff re-alleges all preceding paragraphs** as though fully stated herein.

152. **Defendant Resurgent Capital Services, L.P. ("Resurgent")** is the servicing, collection, and furnishing arm for debts owned by LVNV Funding, LLC. Resurgent purchases, services, and furnishes consumer information relating to charged-off debt portfolios, and communicates directly with Experian and Trans Union through automated

35

e-OSCAR systems:

153.   Resurgent is a **debt collector**, **information furnisher**, and **servicer**, and is therefore subject to the Fair Credit Reporting Act ("FCRA") and the Fair Debt Collection Practices Act ("FDCPA").

154.   Resurgent furnished, verified, and continued reporting **false, fraudulent, inconsistent, and legally unenforceable information** regarding an alleged debt Plaintiff never owed, never authorized, and never received notice of.

## A. Resurgent's Own Records Contradict Its Reporting

155.   Resurgent issued multiple letters to Plaintiff stating that the alleged debt was:

- **"Settled"**,
- **"Zero balance"**,
- **"Closed"**, and
- **"No further collection activity will occur."**

156.   Resurgent further admitted that the account was **time-barred**, meaning it could not be sued on, collected upon, or legally enforced under Louisiana law.

157.   Despite this, Resurgent:

- reported the debt as **active**,
- reported the debt as **owing**,
- reported inconsistent or inflated balances, and
- marked the debt as **verified** when Plaintiff disputed it with CRAs.

158.   These actions directly contradict Resurgent's own internal letters.

159.   A furnisher knowingly reporting information that contradicts its own records is a textbook violation of the FCRA.

## B. Violation of 15 U.S.C. §1681s-2(a) — Furnishing Information Resurgent

36

160.    Resurgent furnished inaccurate information to Experian and Trans Union by:

- reporting a balance that was already **settled**;

- reporting a debt that was **time-barred**;

- reporting "open collection" status;

- reporting dates of last payment that never occurred;

- reporting "charged-off" status after stating the account was resolved.

161.    Because Resurgent's own internal letters confirm the debt was not legally enforceable or owed, Resurgent **knew or should have known** the information it furnished was inaccurate.

162.    Furnishers are prohibited under **§1681s-2(a)(1)(A)** from furnishing information they know (or consciously avoid knowing) is inaccurate.

163.    Resurgent violated this provision repeatedly.

## C. Violation of 15 U.S.C. §1681s-2(b) — Failure to Conduct a Reasonable Investigation After CRA Disputes

164.    When Plaintiff disputed the fraudulent LVNV/Resurgent account with Trans Union and Experian, those CRAs sent Resurgent formal ACDV dispute notices.

165.    Upon receipt of an ACDV notice, Resurgent was REQUIRED to:

- review **all** relevant information;

- consider Plaintiff's documents;

- review its own internal letters

- verify accuracy BEFORE marking the account as accurate;

- correct or delete any inaccurate data;

- notify all CRAs of corrections.

166. Instead, Resurgent:

- verified the account within MINUTES,

- ignored Plaintiff's identity theft documents,

- ignored its own letters confirming settlement/zero balance,

- ignored conflicting ownership and date records,

- failed to correct or delete the account.

167. A furnisher cannot legally verify a debt it cannot validate.

168. Resurgent's automated and superficial response process is not a legal "investigation" under §1681s-2(b).

169. This constitutes a **clear FCRA violation**.

## D. Resurgent Violated the FDCPA (15 U.S.C. §§1692e, 1692f, 1692g)

### 1. Violation of §1692e — False or Misleading Representations

170. Resurgent falsely represented:

- the amount of the alleged debt,

- the legal status of the debt,

- that a closed/settled/time-barred debt was collectible,

- that Plaintiff owed money he never owed.

171. These false representations are **material**, because they misled CRAs, lenders, and creditors reviewing Plaintiff's consumer reports.

### 2. Violation of §1692e(2)(A) — Misrepresenting the Legal Status of the Debt

172. Resurgent continued to report the debt as:

- "Active,"

- "In collections,"

- Past due; and
- "Charged off,"

even AFTER confirming the account was:

- settled,
- closed,
- zero balance, or
- time-barred.

173. Reporting a closed or time-barred debt as active collection activity is a **direct violation of §1692e(2)(A)**.

## 3. Violation of §1692f — Unfair or Unconscionable Acts

174. It is unfair and unconscionable for Resurgent to:

- attempt to collect a debt it admits is settled/closed,
- continue reporting false information to CRAs,
- harm Plaintiff's credit after acknowledging the debt was time-barred,
- verify inaccurate information without documentation.

## 4. Violation of §1692g(b) — Failure to Validate the Debt

175. Plaintiff submitted formal **debt validation requests** to Resurgent.

176. Resurgent failed or refused to provide:

- ANY contract;
- ANY signed credit application;
- ANY identity-verification data;
- ANY account statements;
- ANY chain-of-title documentation;

- ANY documentation showing Plaintiff ever owed this debt.

177. Under §1692g(b), collection activity MUST stop until validation is provided.

178. Instead, Resurgent continued:

- collection activity,

- credit reporting, and

- verifying the debt to CRAs.

179. This is a direct violation of the FDCPA.

## E. Resurgent Failed to Report the Debt as Disputed *(15 U.S.C. §1692e(8))*

180. After receiving Plaintiff's written disputes, Resurgent had a legal obligation to notify CRAs:

**"THE CONSUMER DISPUTES THIS DEBT."**

181. Resurgent failed to provide this required notice.

182. Failing to report a known dispute is a material misrepresentation and an FDCPA violation.

## F. Willfulness & Negligence

183. Resurgent acted **willfully** because:

- it furnished data contrary to its own records,

- it verified accounts without investigation,

- it used false or misleading information to harm Plaintiff,

- it ignored multiple disputes and validation requests.

184. Alternatively, Resurgent acted negligently.

## G. Damages Caused by Resurgent

40

185.    Because of Resurgent's unlawful conduct, Plaintiff suffered:

- denial of personal credit;

- denial of business credit and funding;

- difficulty obtaining loans;

- reputational and financial harm;

- emotional distress, stress, anxiety, and embarrassment;

- wasted time and out-of-pocket mailing costs;

- ongoing publication of false information.

186.    Resurgent was a **direct and substantial cause** of these harms.

## SECTION XII — CLAIMS AGAINST CAPITAL ONE BANK (USA), N.A.

187.    **Plaintiff re-alleges all preceding paragraphs** as if fully stated herein.

188.    **Defendant Capital One Bank (USA), National Association ("Capital One")** is a national banking association and a furnisher of consumer credit information to Experian and Trans Union.

189.    Capital One furnishes monthly account data, delinquency information, charge-off information, balance information, and account status data to CRAs.

190.    **Capital One acquired and now owns/controls the Discover Financial Services credit-card portfolio**, including the line of accounts formerly serviced under the "Discover" brand which appears on Plaintiff's credit report.

191.    Because Capital One acquired Discover's credit card portfolio and assumed ownership, servicing, or reporting responsibilities, **Capital One is legally responsible for the accuracy of any Discover-branded tradeline still appearing** on Plaintiff's Experian and Trans Union credit files.

192.    Despite Capital One's acquisition of Discover's portfolio, Plaintiff's Experian and Trans Union reports continue to display the tradeline under **"Discover Financial**

41

Services"; creating inconsistent and contradictory creditor-identifiers.

193. This contradictory creditor labeling demonstrates that neither Capital One nor Discover corrected or synchronized the furnishers' reporting following the acquisition.

## A. Capital One Furnished False, Inaccurate, and Unverified Information *(FCRA — 15 U.S.C. §1681s-2(a))*

194. Capital One furnished inaccurate, inconsistent, and unverified data related to an alleged credit account that:

- Plaintiff did not open;

- Plaintiff never authorized;

- does not contain Plaintiff's identity information;

- lacks any supporting application, contract, or documentation.

195. Capital One has not produced or identified:

- a signed application,

- a cardmember agreement,

- proof of identity verification,

- IP logs,

- merchant transactions linked to Plaintiff,

- billing statements addressed to Plaintiff.

196. Furnishing data without verifying that the consumer is actually the owner, and without having a contract or application, violates **§1681s-2(a)(1)(A)**.

## B. Capital One Verified the Account Without Conducting a Reasonable Investigation *(FCRA — 15 U.S.C. §1681s-2(b))*

197. After receiving ACDV notices from Trans Union and Experian, Capital One was

42

legally required to investigate.

198.   Capital One instead:

- verified the disputed account **without reviewing any documentation**,

- failed to obtain supporting documents from Discover (its acquired portfolio),

- failed to correct the creditor name inconsistency ("Discover" vs. "Capital One"),

- ignored Plaintiff's sworn identity-theft statements,

- ignored addresses associated with the account that Plaintiff never lived at.

199.   Capital One's verification was **reckless, automated, and legally insufficient** under §1681s-2(b).

## C. Capital One Failed to Correct the Discover Label After Acquiring the Portfolio

200.   Even after controlling/owning the Discover-branded portfolio, Capital One:

- allowed Experian and Trans Union to continue listing the account as "Discover,"

- failed to synchronize creditor names across reporting systems,

- failed to update its ownership data to the CRAs,

- failed to delete fraudulent or mismatched identifiers.

201.   The result is **two different creditors** appearing on Plaintiff's reports for the same alleged account:

- "Discover Financial Services" (legacy label)

- "Capital One" (current servicer/owner)

202.   This dual reporting is confusing, contradictory, and violates §1681e(b) because CRAs rely on the furnisher to provide accurate ownership information.

## D. Capital One Failed to Report the Account as Disputed *(FDCPA §1692e(8)-type principles applied to furnishers)*

203.	After receiving written disputes, Capital One failed to notify CRAs that Plaintiff **disputed** the account.

204.	This omission caused CRAs to treat the account as undisputed despite Plaintiff's certified-mail challenges.

## E. Capital One Acted Willfully and/or Negligently

205.	Capital One acted **willfully** within the meaning of §1681n because it:

- verified an account without documents,

- ignored evidence of identity theft,

- allowed Discover-labeled data to persist after acquisition,

- failed to correct ownership transitions,

- relied on automated processes instead of human investigation.

206.	Alternatively, Capital One acted negligently under §1681o

## F. Damages Caused by Capital One

207.	Capital One's misconduct directly caused:

- credit denials;

- business funding losses exceeding **$150,000**;

- damage to Plaintiff's credit reputation;

- emotional distress, anxiety, embarrassment;

- increased interest rates and financial losses;

- out-of-pocket mailing, dispute, and monitoring expenses.

208.	Capital One's wrongful conduct continues to harm Plaintiff because the inaccurate Discover/Capital One tradeline remains on the credit report.

44

209.    **Plaintiff re-alleges all preceding paragraphs** as though fully set forth herein.

210.    **Defendant Affirm, Inc. ("Affirm")** is a national fintech lender and furnisher of consumer credit-reporting data. Affirm underwrites point-of-sale installment loans and reports those credit obligations to consumer reporting agencies, including Trans Union and Experian.

211.    Affirm furnishes account information to CRAs through the Metro-2 data format and automated e-OSCAR systems and is therefore required to comply with the Fair Credit Reporting Act ("FCRA") and all duties imposed upon furnishers under **15 U.S.C. §1681s-2(a)** and **§1681s-2(b)**.

212.    Affirm reported a tradeline on Plaintiff's consumer reports purporting to reflect an Affirm/WebBank installment loan that Plaintiff **never applied for, never authorized, never signed for, and never received any benefit from.**

## A. Affirm Reported an Account That Was Created Through Identity Theft or Fraud

213.    Plaintiff did **not** open or authorize any Affirm account.

214.    The alleged account contains multiple identity-theft indicators:

- shipping addresses that do not belong to Plaintiff;

- device/IP/verification logs not associated with Plaintiff;

- no matching personal information;

- opening dates inconsistent with Plaintiff's credit history;

- no Affirm transaction history matching Plaintiff's activity.

215.    Affirm has never produced:

- a signed loan agreement;

45

- a consumer application;

- identity-verification logs;

- device fingerprinting records;

- billing or repayment records;

- merchant purchase receipts.

216. Affirm's inability to provide basic documentation shows that the alleged Affirm/WebBank account does **not** belong to Plaintiff.

## B. Affirm Furnished Information It Knew or Should Have Known Was Inaccurate *(FCRA — 15 U.S.C. §1681s-2(a))*

217. Despite lacking any documentation proving Plaintiff opened the account, Affirm furnished data stating that:

- Plaintiff owed an installment loan;

- Plaintiff failed to pay;

- Plaintiff was delinquent;

- Plaintiff had a negative payment history.

218. Furnishing information without confirming the account actually belongs to the consumer violates **§1681s-2(a)(1)(A)**.

219. Affirm further furnished inconsistent or contradictory data between Trans Union and Experian, including different:

- dates opened;

- high balance amounts;

- payment history;

- last payment dates.

220. These inconsistencies demonstrate that Affirm's procedures were not reasonably designed to ensure accuracy.

46

## C. **Affirm Failed to Conduct a Reasonable Investigation After Receiving Plaintiff's Disputes** (*FCRA — 15 U.S.C. §1681s-2(b)*)

221. Plaintiff disputed the Affirm account with Trans Union and Experian via certified mail. Plaintiff supplied:

- identity theft statement;

- proof of address;

- government-issued ID;

- fraud explanation;

- documentation proving the account was unauthorized.

222. Trans Union and Experian sent Affirm official ACDV dispute notices.

223. Upon receiving an ACDV notice, Affirm was legally required to:

- review **all** dispute materials;

- investigate the account in good faith;

- examine whether an application actually exists;

- verify consumer identity records;

- correct or delete inaccurate information

224. Affirm instead:

- verified the account in minutes or hours;

- failed to perform any identity-matching process;

- did NOT check internal merchant-purchase records;

- did NOT produce documentation;

- "parroted" the same inaccurate information back to CRAs.

225. Affirm's investigation was superficial and automated, not "reasonable" under the FCRA.

226. A furnisher **cannot legally verify an account** when it possesses **no proof** the consumer opened it.

**D. Affirm Failed to Report the Account as Disputed** *(FCRA and FDCPA §1692e(8)-type accuracy duties)*

227. Plaintiff disputed this account multiple times.

228. Affirm failed to provide the CRAs with the required notice that:

**"THE CONSUMER DISPUTES THIS ACCOUNT."**

229. Failing to report a dispute is a material omission that misleads third-party creditors and violates federal credit-reporting standards.

**E. Affirm Acted Willfully and/or Negligently** *(15 U.S.C. §§1681n and 1681o)*

230. Affirm acted **willfully** because it:
- knew it had no application or contract;
- knew identity-theft indicators were present;
- knew the account belonged to a different user;
- verified information without documentation;
- relied on automated processes instead of a human review.

231. Alternatively, Affirm acted with **gross negligence** or simple negligence.

**F. Damages Caused by Affirm's Misconduct**

232. As a direct result of Affirm's false reporting and failed reinvestigations, Plaintiff suffered:
- damage to credit reputation;
- credit denials;
- loss of business funding;
- increased interest rates;

48

- emotional distress and anxiety;

- time lost attempting to correct fraudulent reporting;

- out-of-pocket costs for certified mail, printing, and monitoring.

233.    Plaintiff continues to suffer harm because the Affirm tradeline remains inaccurate on the consumer reports.

## SECTION XIV — CLAIMS AGAINST BLST RECEIVABLES & SERVICING LLC d/b/a FINGERHUT

234.    **Plaintiff re-alleges all preceding paragraphs** as though fully stated herein.

235.    **Defendant BLST Receivables & Servicing LLC d/b/a Fingerhut ("BLST" or "Fingerhut")** is a retail credit and installment account servicer that extends credit lines through its online marketplace and furnishes tradeline information to Trans Union and Experian for consumer credit reporting purposes.

236.    BLST purchases and services consumer retail accounts allegedly originated through WebBank and reported under the "Fingerhut" brand. As a furnisher of credit information, BLST is governed by **15 U.S.C. §1681s-2(a) and §1681s-2(b)** and is responsible for the accuracy of all information it provides to CRAs.

237.    BLST reported a **fraudulent and unauthorized Fingerhut retail account** on Plaintiff's consumer reports that Plaintiff **never opened, never authorized, never applied for, and never benefitted from.**

## A. BLST/Fingerhut Furnished an Account Plaintiff Never Opened

238.    Plaintiff has **never** opened or applied for any Fingerhut account. BLST reported an account containing indicators of identity theft, including:

- addresses that do not belong to Plaintiff;

49

- account opening dates inconsistent with Plaintiff's credit history;

- purchase history unrelated to Plaintiff;

- no records of device/IP verification;

- mismatched identity information.

239.    BLST is unable to produce:

- a signed application;

- IP/device verification logs;

- purchase receipts;

- order confirmations;

- proof of merchandise delivery to Plaintiff;

- identity-verification data linking Plaintiff to the account.

240.    Fingerhut's reporting of an account without possessing ANY proof of ownership

violates §1681s-2(a)(1)(A).

## B. BLST/Fingerhut Furnished Contradictory and False Information *(FCRA —*

*§1681s-2(a))*

241.    BLST exceeded the scope of its authority by furnishing account details that were:

- inconsistent between Trans Union and Experian;

- contradictory in terms of "Date Opened";

- contradictory in terms of high balance amounts;

- contradictory in terms of status ("charged-off" vs "past due");

- contradictory in payment history and delinquency reporting.

242.    These inconsistencies show BLST's data systems were not reasonably designed to

ensure accuracy, violating FCRA §1681e(b) through indirect participation.

## C. BLST Failed to Conduct a Reasonable Investigation After Receiving

50

*(FCRA — §1681s-2(b))*

243.    Plaintiff disputed the Fingerhut account multiple times through certified mail to Trans Union and Experian.

244.    After receiving Plaintiff's disputes, Trans Union and Experian sent BLST official ACDV dispute notices.

245.    Under §1681s-2(b), BLST was required to:

- review the information provided by Plaintiff;

- examine internal records;

- verify that the account was opened using Plaintiff's identity;

- delete or correct inaccurate information;

- notify all CRAs of corrections.

246.    Instead, BLST:

- verified the account as "accurate" within minutes;

- ignored Plaintiff's proof of identity theft;

- failed to provide any verification documents;

- rubber-stamped the same inaccurate tradeline back to CRAs;

- failed to investigate mismatched addresses and identifiers.

247.    A furnisher verifying an account without ANY proof the consumer opened it violates §1681s-2(b).

## D. BLST Failed to Report the Account as Disputed *(FCRA §1681s-2(a)(3) & FDCPA §1692e(8))*

248.    Even after receiving Plaintiff's disputes, BLST failed to notify CRAs that Plaintiff **disputed** the account.

51

249. Failure to report a known dispute is deceptive and materially misleading, violating:

- FCRA furnisher accuracy standards;

- the spirit of FDCPA §1692e(8);

- federal consumer reporting accuracy obligations.

## E. BLST Engaged in Identity-Theft Reporting Violations *(FCRA — §1681c-2)*

250. Plaintiff submitted proper identity-theft documentation, including:

- proof of address;

- signed identity-theft statement;

- government-issued ID;

- supporting fraud documentation.

251. BLST ignored this documentation and continued furnishing fraudulent information to CRAs.

252. BLST's continued publishing and verifying of identity-theft data constitutes willful disregard of Plaintiff's rights under both §1681c-2 and §1681s-2(b).

## F. BLST Acted Willfully and/or Negligently *(15 U.S.C. §§1681n & 1681o)*

253. BLST acted **willfully** because it:

- verified an account without ANY supporting records;

- ignored Plaintiff's sworn documentation of identity theft;

- failed to request or produce identity verification logs;

- knowingly furnished contradictory data;

- used automated verification instead of human review.

254. Alternatively, BLST acted negligently under §1681o.

255. As a direct and proximate result of BLST's unlawful conduct, Plaintiff suffered:

- credit denials;

- loss of personal and business credit;

- loss of business funding opportunities;

- lower credit scores and diminished creditworthiness;

- emotional distress, anxiety, disrupted sleep, and humiliation;

- financial loss from increased interest rates;

- out-of-pocket dispute costs for certified mail, monitoring, and investigations.

256. BLST continues to cause Plaintiff harm due to the ongoing presence of the fraudulent Fingerhut tradeline.

## SECTION XV — CLAIMS AGAINST WEBBANK

257. **Plaintiff re-alleges all preceding paragraphs** as though fully stated herein.

258. **Defendant WebBank** is a state-chartered industrial bank headquartered in Utah that originates retail and installment loans on behalf of multiple fintech and marketplace partners, including **Affirm, Inc.** and **BLST Receivables & Servicing LLC d/b/a Fingerhut**.

259. WebBank extends credit using a centralized underwriting system and then furnishes account information to national consumer reporting agencies, including Trans Union and Experian.

260. WebBank is responsible for verifying consumer identity before opening any account and is required to maintain accurate records under **15 U.S.C. §1681s-2(a)** and conduct lawful reinvestigations under **§1681s-2(b)**.

261. WebBank furnished a fraudulent account (or accounts) claimed to belong to Plaintiff

through its Affirm and/or Fingerhut channels, despite possessing **no documentation** tying Plaintiff to the alleged account.

## A. WebBank Furnished an Account Plaintiff Did Not Open *(FCRA — §1681s-2(a))*

262. Plaintiff has **never** opened any WebBank, Affirm, or Fingerhut-originated account.

263. The WebBank-originated account reported on Plaintiff's Trans Union and Experian files shows:

- identity information that does not match Plaintiff;

- addresses unrelated to Plaintiff;

- opening dates inconsistent with Plaintiff's records;

- purchase/loan amounts inconsistent with Plaintiff's usage;

- no legitimate underwriting or approval documentation.

264. WebBank has failed or refused to produce:

- a loan application;

- a completed and authenticated credit agreement;

- IP address or device logs;

- identity verification (KYC) step results;

- merchant transaction records;

- electronic signature verification;

- proof of benefit received by Plaintiff.

265. Without these documents, WebBank lacked any basis to furnish the account to CRAs—violating **§1681s-2(a)(1)(A)** which prohibits furnishing information known or reasonably believed to be inaccurate.

## B. WebBank Verified False Information After Receiving Dispute Notices *(FCRA — §1681s-2(b))*

54

266.  Plaintiff disputed the fraudulent WebBank-originated accounts through Trans Union and Experian using certified mail.

267.  Trans Union and Experian sent WebBank official ACDV dispute notifications, triggering WebBank's statutory duty to:

- review **all** relevant information;

- examine its own internal application data;

- confirm whether Plaintiff actually applied for or opened the account;

- verify identity matching records;

- correct inaccuracies;

- delete unverifiable data.

268.  Instead, WebBank:

- verified the account **within minutes**;

- performed no meaningful reinvestigation;

- failed to review Plaintiff's identity documentation;

- ignored inconsistencies and identity mismatch indicators;

- confirmed the account as "accurate" without a contract or application;

- relied on automated responses rather than human review.

269.  Verifying an account without documentation violates **§1681s-2(b)**.

270.  Courts hold that a furnisher who verifies without reviewing internal records engages in a *willful* FCRA violation.

## C. WebBank Is Directly Responsible for the Inaccuracy of the Fingerhut and Affirm Tradelines

271.  WebBank is the **originating bank** behind:

- the alleged Affirm installment loan;

- the alleged Fingerhut retail credit line.

272. Because WebBank originates these loans, it is the only party capable of producing:

- the original credit application;

- the identity verification (KYC) outcome;

- the onboarding decision;

- the device/IP metadata used during account creation;

- the initial underwriting records.

273. WebBank's failure to produce these records strongly suggests the accounts were:

- created through identity theft,

- opened with fraudulent information, or

- opened using a different individual's identity.

274. Nevertheless, the inaccurate WebBank-originated accounts continue damaging Plaintiff's credit.

## D. WebBank Failed to Report the Account as Disputed *(FCRA — §1681s-2(a)(3))*

275. Plaintiff disputed the WebBank-originated account multiple times.

276. WebBank failed to mark the account as **"consumer disputes this account"** in its reporting to Experian and Trans Union.

277. This omission is a violation of §1681s-2(a)(3) and materially misleads all third-party lenders.

## E. WebBank Acted Willfully and/or Negligently *(15 U.S.C. §§1681n & 1681o)*

278. WebBank acted **willfully** because it:

- verified an account without evidence;

- ignored the identity-theft documentation;

- failed to examine its own underwriting records;

- relied solely on automated verification;

56

● refused to provide ANY proof of account ownership;

● continued to furnish false data after receiving disputes.

279.    In the alternative, WebBank was negligent.

## F. Damages Caused by WebBank

280.    As a direct result of WebBank's wrongful reporting and failed reinvestigations,

Plaintiff suffered:

● denial of personal and business credit;

● loss of business funding;

● reduced creditworthiness and credit score damage;

● emotional distress, anxiety, frustration, humiliation;

● denial of housing and financial opportunities;

● out-of-pocket costs for certified mail, monitoring, and documentation.

281.    WebBank's conduct continues to harm Plaintiff because the inaccurate tradeline

remains active on the credit reports.

## SECTION XVI — CLAIMS AGAINST JEFFERSON CAPITAL SYSTEMS, LLC

282.    **Plaintiff re-alleges all preceding paragraphs** as though fully stated herein.

283.    **Defendant Jefferson Capital Systems, LLC ("Jefferson Capital")** is a national

debt buyer, debt collector, and furnisher of consumer credit information to Trans Union

and Experian. It buys and services charged-off, defaulted, and old consumer debt

portfolios and reports them as active collection accounts.

284.    Jefferson Capital furnished a fraudulent collection tradeline to Trans Union and

Experian claiming Plaintiff owed a debt that Plaintiff **never opened, never authorized,**

57

never contracted for, and never owed.

285.    As a **debt collector**, Jefferson Capital is regulated by the FDCPA, 15 U.S.C. §1692 et seq., and as a **furnisher** it is governed by FCRA §1681s-2(a) and §1681s-2(b).

## A. Jefferson Capital Furnished False and Fraudulent Information *(FCRA —*

*§1681s-2(a))*

286.    Jefferson Capital reported a collection account that:

- does not belong to Plaintiff;

- contains identity information that does not match Plaintiff;

- was allegedly tied to an account not opened by Plaintiff;

- reflects inconsistent balances and dates;

- lists an address Plaintiff never lived at;

- lacks any application or contract linking Plaintiff to the debt.

287.    Jefferson Capital has failed to produce:

- any original creditor contract;

- any signed credit application;

- any account statements;

- any chain-of-title or bill of sale records showing assignment;

- any identity verification records;

- any proof Plaintiff ever owed the debt.

288.    Furnishing account information **without possessing ANY evidence** of consumer liability violates §1681s-2(a)(1)(A).

## B. Jefferson Capital Failed to Conduct a Reasonable Investigation After Receiving CRA Disputes *(FCRA — §1681s-2(b))*

58

289. Plaintiff disputed the fraudulent Jefferson Capital account with both Experian and Trans Union through certified mail.

290. After receiving Plaintiff's disputes, the CRAs sent Jefferson Capital **official ACDV notices**, triggering Jefferson Capital's statutory duty to:

- review all dispute documentation;

- review internal records;

- verify the accuracy of the account;

- correct or delete any inaccurate information;

- notify the CRAs of any corrections.

291. Jefferson Capital instead:

- verified the account **within minutes**,

- failed to review Plaintiff's identity-theft documents,

- failed to request documents from the original creditor,

- failed to examine chain-of-title or assignment paperwork,

- failed to produce ANY supporting evidence,

- simply "parroted" the same inaccurate information back to the CRAs.

292. A reinvestigation that consists of clicking "verified" without reviewing ANY internal documents is **not legally compliant** under §1681s-2(b).

293. Jefferson Capital's verification was reckless, superficial, and violated its furnisher duties.

## C. Jefferson Capital Violated the FDCPA *(15 U.S.C. §§1692e, 1692f, 1692g)*

## 1. Violation of §1692e — False and Misleading Representations

294. Jefferson Capital violated §1692e by falsely representing:

- that Plaintiff owed a debt Plaintiff did not owe;

59

- that the debt was valid, accurate, and collectible;

- that Plaintiff was delinquent on a non-existent account;

- that the account belonged to Plaintiff when it did not.

295.    These representations were material and deceptive.

## 2. Violation of §1692e(2)(A) — Misrepresenting the Legal Status of a Debt

296.    Jefferson Capital reported Plaintiff as owing a debt that:

- was not Plaintiff's,

- was unvalidated,

- could not be legally collected,

- had NO supporting documentation,

- contained identity errors.

297.    Reporting an invalid debt as collectible is a direct violation of §1692e(2)(A).

## 3. Violation of §1692f — Unfair and Unconscionable Practices

298.    Jefferson Capital used unfair and unconscionable means to harm Plaintiff by:

- reporting a false debt,

- failing to validate the debt,

- damaging Plaintiff's credit for a debt Plaintiff did not owe,

- refusing to delete an account it knew was inaccurate.

## 4. Violation of §1692g(b) — Failure to Validate the Debt

299.    Plaintiff submitted a debt validation request directly to Jefferson Capital.

300.    Jefferson Capital failed or refused to produce:

- the original creditor agreement;

- any documentation linking Plaintiff to the alleged account;

60

- a signed contract;
- purchase or assignment records;
- proof that Plaintiff ever owed the debt.

301.    Despite failing to validate the debt, Jefferson Capital continued reporting it, which violates §1692g(b).

## D. Jefferson Capital Failed to Report the Account as Disputed

*(FCRA §1681s-2(a)(3) & FDCPA §1692e(8)-type duties)*

302.    Jefferson Capital received multiple written disputes from Plaintiff.

303.    Jefferson Capital failed to notify Experian and Trans Union that

**"THE CONSUMER DISPUTES THIS DEBT."**

304.    This omission is deceptive and materially misleading.

## E. Jefferson Capital Acted Willfully and/or Negligently *(15 U.S.C. §§1681n–1681o)*

305.    Jefferson Capital acted **willfully** because it:

- knowingly reported a debt with no supporting documentation;
- ignored identity-theft indicators;
- ignored Plaintiff's validation requests;
- continued to report inaccurate and unverifiable information;
- repeatedly verified the account without investigation.

306.    Alternatively, Jefferson Capital acted negligently.

## F. Damages Caused by Jefferson Capital

307.    Jefferson Capital's inaccurate reporting and failed investigations caused:

61

- damage to Plaintiff's credit score;

- denial of personal and business credit;

- loss of business funding opportunities;

- emotional distress, anxiety, frustration, and humiliation;

- out-of-pocket expenses for certified mail, printing, and credit monitoring;

- reputational harm.

308. Plaintiff continues to suffer harm due to the presence of the fraudulent Jefferson Capital tradeline.

## SECTION XVII — CLAIMS AGAINST COMENITY BANK

309. **Plaintiff re-alleges all preceding paragraphs** as though fully stated herein.

310. **Defendant Comenity Bank ("Comenity")** is a national lender and furnisher of consumer credit information. Comenity issues retail-branded credit cards, including the **Wayfair store credit account**, and reports these accounts to consumer reporting agencies including Trans Union and Experian.

311. Comenity is responsible for originating, maintaining, and furnishing account information for the alleged Wayfair/Comenity credit account that appears on Plaintiff's credit file.

312. The Comenity/Wayfair tradeline appearing on Plaintiff's reports is **fraudulent, inaccurate, and identity-theft related**. Plaintiff never applied for, opened, authorized, or used any Comenity or Wayfair account.

## A. Comenity Furnished an Unauthorized and Fraudulent Account *(FCRA — §1681s-2(a))*

313. Comenity furnished a retail credit account to Experian and Trans Union that **does not belong to Plaintiff**.

314.   Comenity has been unable to produce:

- a signed credit application;

- an electronic application log;

- any identity-verification (KYC) records;

- IP/device fingerprinting data;

- merchant purchase receipts;

- delivery or shipping records;

- cardholder agreements;

- billing statements addressed to Plaintiff.

315.   Comenity is furnishing data without having **any** evidence that Plaintiff ever opened the account.

316.   Furnishing information without possessing supporting documentation violates **§1681s-2(a)(1)(A)**.

## B. Comenity Furnished Contradictory, Inaccurate, and Internally Inconsistent Information

317.   The Comenity tradeline contains multiple inconsistencies between Trans Union and Experian, including:

- different "date opened" entries;

- conflicting balances;

- different high-credit limits;

- different delinquency dates;

- mismatched payment history;

- ambiguous charge-off status;

- status labeled "open" on one CRA and "closed/charged-off" on another.

318.   These conflicting fields show that Comenity's procedures for maintaining accuracy

63

are **defective and violate** §1681e(b) through its role as a furnisher.

319.    Comenity also furnished personal identifying information that does not match

Plaintiff, including:

- address information Plaintiff never used;

- name variations inconsistent with Plaintiff;

- customer profile identifiers belonging to another consumer.

## C. Comenity Failed to Conduct a Reasonable Investigation After Receiving

## Plaintiff's Disputes (FCRA — §1681s-2(b))

320.    Plaintiff disputed the fraudulent Comenity/Wayfair account multiple times via

certified mail.

321.    Trans Union and Experian forwarded Plaintiff's disputes to Comenity through ACDV

notices.

322.    Upon receiving an ACDV notice, Comenity was required to:

- review ALL relevant information;

- examine internal application logs;

- verify whether Plaintiff actually opened the account;

- reconcile contradictory data;

- delete or correct inaccuracies.

323.    Comenity instead:

- verified the account **within minutes**;

- conducted no meaningful investigation;

- "parroted" inaccurate data back to the CRAs;

- ignored identity-theft documentation;

- ignored mismatched address and identity data;

- verified an account without ANY proof of Plaintiff's involvement.

64

324.   This violates Comenity's duties under **§1681s-2(b)**.

## D. Comenity Failed to Report the Account as Disputed *(FCRA — §1681s-2(a)(3))*

325.   After receiving Plaintiff's written disputs, Comenity failed to notify the CRAs that the account was **disputed by the consumer**.

326.   Failing to report a known dispute is:

- deceptive,

- misleading to third-party lenders,

- a violation of §1681s-2(a)(3),

- material because it affects creditworthiness evaluations.

## E. Comenity Participated in Identity-Theft Reporting Violations *(FCRA — §1681c-2)*

327.   Plaintiff submitted proper identity-theft documentation under §1681c-2, including:

- signed identity-theft affidavit;

- government-issued identification;

- proof of address;

- detailed explanation of unauthorized activity.

328.   Comenity failed to block, remove, or suppress identity-theft-related information.

329.   Instead, Comenity continued to furnish, publish, and verify fraudulent data.

330.   This constitutes a failure to block identity-theft information under §1681c-2(a).

## F. Comenity Acted Willfully and/or Negligently *(15 U.S.C. §§1681n & 1681o)*

331.   Comenity acted **willfully** because it:

- had no documentation linking Plaintiff to the account;

65

- continued to verify an account it could not validate;
- ignored identity mismatch data;
- ignored Plaintiff's disputes;
- relied on automated verification without review;
- furnished contradictory data to multiple CRAs.

332. Alternatively, Comenity acted negligently under §1681o.

## G. Damages Caused by Comenity's Misreporting

333. Comenity's wrongful reporting caused:

- credit denials;
- loss of business funding opportunities;
- higher interest rates;
- damage to Plaintiff's credit reputation;
- emotional distress, anxiety, embarrassment;
- out-of-pocket costs related to disputing the fraud;
- inability to access fair credit markets.

334. Plaintiff continues to suffer harm due to the presence of the fraudulent Comenity tradeline.

## SECTION XVIII — CLAIMS AGAINST WAYFAIR LLC

335. **Plaintiff re-alleges all preceding paragraphs** as though fully stated herein.

336. **Defendant Wayfair LLC ("Wayfair")** is a national online retail marketplace that partners with Comenity Bank to offer private-label "Wayfair Credit Card" accounts. Wayfair collects consumer identity data, transmits that data to Comenity for credit approval, and participates in identity verification through its customer onboarding

66

process.

337.    Wayfair is therefore a **furnisher-adjacent data supplier** whose customer identity information directly determines whether a credit account is opened, approved, or reported to consumer reporting agencies.

338.    The alleged Wayfair/Comenity account that appears on Plaintiff's credit reports was created using **identity information, addresses, and data that do not match Plaintiff**, indicating identity theft or fraud.

339.    Wayfair bears direct responsibility for the transmission of inaccurate, incomplete, or fraudulent identity data that Comenity then used to open and report an account Plaintiff never authorized.

## A. Wayfair Transmitted False and Fraudulent Identity Information to Comenity Bank

340.    Plaintiff never created a Wayfair account, never purchased anything from Wayfair, and never submitted identity information to Wayfair for credit purposes.

341.    Despite this, Wayfair transmitted identity data to Comenity that:

- did not match Plaintiff's legal name;

- included addresses Plaintiff never lived at;

- did not match Plaintiff's credit profile;

- included unknown phone numbers, emails, or customer identifiers;

- triggered the creation of a fraudulent Wayfair/Comenity account.

342.    Wayfair's customer-verification and fraud-prevention controls **failed**, leading to the creation of an account using fraudulent or mismatched identity information.

343.    Wayfair is liable for causing Comenity to furnish the false Wayfair account to Trans Union and Experian.

## B. Wayfair Failed to Properly Authenticate the Identity of the Individual Who Opened the Account

344. Wayfair failed to perform adequate identity verification procedures before transmitting customer information to Comenity, including:

- failing to authenticate the real user;

- failing to confirm that the email, address, and identity belonged to Plaintiff;

- failing to use multi-factor authentication or identity-matching systems;

- failing to prevent fraud despite red-flag indicators.

345. Had Wayfair performed proper authentication, the fraudulent account would not exist and would not appear on Plaintiff's credit report.

## C. Wayfair Failed to Maintain Reasonable Procedures to Assure Maximum Possible Accuracy

*(FCRA — §1681e(b) Applied Through Furnisher-Supplier Liability)*

346. Although Wayfair is not a traditional furnisher, its transmission of inaccurate consumer identity data is directly governed by the FCRA accuracy mandate.

347. Courts recognize that companies who supply data that furnisher banks rely upon are responsible for the accuracy of that data when it results in inaccurate credit reporting

348. Wayfair failed to maintain reasonable procedures to ensure that:

- the customer identity was genuine;

- the customer's identifying information was correct;

- the account creation data matched the consumer's identity.

349. Wayfair's failure to assure accuracy contributed directly to the inaccurate reporting by Comenity to the CRAs.

68

## D. Wayfair Enabled the Furnishing of a Fraudulent Tradeline to Experian and Trans Union

350. Wayfair's data errors and lack of fraud prevention directly caused Comenity Bank to:

- approve a fraudulent Wayfair credit account;

- open an account without any signed application from Plaintiff;

- report the account to Experian and Trans Union;

- furnish delinquency and charge-off information related to an account Plaintiff never owed.

351. But for Wayfair's negligence in transmitting correct identity information, the Comenity/Wayfair account would not exist.

## E. Wayfair Failed to Respond Appropriately After Plaintiff Submitted Fraud and Identity-Theft Documentation

352. Plaintiff submitted:

- identity-theft reports,

- proof of address,

- fraud statements,

- government ID,

- certified-mail disputes.

353. Wayfair failed to take corrective action, including:

- failing to notify Comenity of Plaintiff's fraud report;

- failing to stop the reporting;

- failing to correct its internal customer identity records;

- failing to block or remove fraudulent activity;

- failing to conduct any investigation whatsoever.

69

354. Wayfair's inaction allowed Comenity to continue furnishing the inaccurate Wayfair account.

## F. Wayfair Acted Willfully and/or Negligently

*(15 U.S.C. §§1681n and 1681o — applied through data-supplier liability)*

355. Wayfair acted **willfully** because it:

- permitted credit-account creation without proper identity verification;

- ignored clear fraud indicators;

- transmitted inaccurate identity data to Comenity;

- refused to correct false customer information;

- failed to investigate Plaintiff's fraud claims;

- continued to support the existence of a fraudulent account.

356. Alternatively, Wayfair acted negligently.

## G. Damages Caused by Wayfair

357. Wayfair's transmission of inaccurate identity data and failure to prevent fraud directly caused:

- the fraudulent Comenity/Wayfair tradeline:

- damage to Plaintiff's credit reputation;

- denials of personal and business credit;

- loss of business funding opportunities;

- emotional distress, anxiety, embarrassment;

- financial losses due to higher interest rates;

- significant time and expense disputing the account.

358. Plaintiff continues to suffer harm due to the ongoing presence of the fraudulent

70

Wayfair/Comenity tradeline.

## SECTION XIX — CLAIMS AGAINST DISCOVER FINANCIAL SERVICES

359.   **Plaintiff re-alleges all preceding paragraphs** as if fully stated herein.

360.   **Defendant Discover Financial Services ("Discover")** is a national financial institution, credit-card issuer, and furnisher of consumer credit data to Experian and Trans Union.

361.   Although Capital One Bank (USA), N.A. **acquired Discover's U.S. credit card business**, the credit tradeline connected to Plaintiff continues to appear on Plaintiff's consumer reports as **"Discover Financial Services."**

362.   Because Discover allowed its name, account identifier, and creditor code to remain associated with the tradeline **after the transition of ownership**, Discover remains liable for the accuracy of the reporting, failure to update the creditor transition, failure to investigate disputes, and for continuing to appear as the "furnishing source" on Plaintiff's credit file.

363.   Discover's continued publication of the account under its name—despite the acquisition—has created **dual-creditor confusion** and inconsistent ownership data, violating the FCRA's accuracy mandates.

## A. Discover Furnished or Allowed the Furnishing of Inaccurate, False, and Fraudulent Account Information *(FCRA — §1681s-2(a))*

364.   Discover appears on Plaintiff's Trans Union and Experian credit reports as the creditor for a revolving credit account that:

- Plaintiff did NOT open;

71

- Plaintiff did NOT authorize;
- Plaintiff did NOT apply for;
- contains inconsistent balance, date, and payment history information;
- contains identity-mismatch indicators requiring deletion.

365.    Even after Capital One acquired the portfolio, the account continues to report under **Discover's name**, demonstrating a failure to coordinate, update, or correct ownership transfer data.

366.    Discover either:

- furnished the data,
- failed to correct pre-existing data in its systems,
- failed to notify CRAs of the ownership change,
- or failed to prevent CRAs from listing Discover as the creditor after the Capital One acquisition.

367.    Discover's failure to correct or suppress the inaccurate tradeline violates **§1681s-2(a)(1)(A)**, which prohibits furnishing information known or reasonably believed to be inaccurate.

## B. Discover Failed to Update or Synchronize Ownership Information After Capital One Acquired Its Credit Portfolio

368.    Following Capital One's acquisition of Discover's credit card portfolio, Discover had a duty to:

- notify CRAs of the transfer;

- ensure creditor identifiers were updated;
- ensure Capital One replaced Discover as the reporting furnisher;

72

- prevent duplicate or conflicting creditor names;

- prevent mixed-file or dual-creditor entries.

369.   Discover failed to take these actions, resulting in:

- Discover appearing as a creditor;

- Capital One appearing as a creditor;

- both entities showing conflicting data;

- a false impression of two separate debts;

- mixed-file and false delinquency reporting.

370.   This dual reporting significantly harmed Plaintiff's credit score and caused lenders to question the accuracy of the file.

## C. Discover Failed to Conduct a Reasonable Investigation After Plaintiff's Disputes (FCRA — §1681s-2(b))

371.   Plaintiff disputed the Discover-branded tradeline with both Experian and Trans Union.

372.   The CRAs transmitted ACDV notices to Discover.

373.   Discover was required to:

- review all information provided by Plaintiff;

- review internal account data;

- confirm account ownership;

- verify identity-matching records;

- correct or delete inaccurate information.

374.   Instead, Discover:

- performed no meaningful investigation;

- relied on outdated, inaccurate pre-acquisition data;

- mechanically verified the account;

73

- ignored identity-theft documentation;

- failed to coordinate with Capital One;

- failed to update the creditor name.

375.    Verifying an account without investigation is unlawful under **§1681s-2(b)**.

## D. Discover Failed to Report the Account as Disputed *(FCRA — §1681s-2(a)(3))*

376.    Discover received Plaintiff's disputes.

377.    Discover failed to notify CRAs that Plaintiff **disputes** the account.

378.    This omission is deceptive and materially misleads third-party lenders.

## E. Discover's Reporting Created Mixed-File and Identity-Confusion Harms

379.    Discover's inaccurate reporting caused Plaintiff's credit reports to reflect:

- conflicting creditor identities,

- inconsistent dates,

- inconsistent payment history,

- ownership confusion between Discover and Capital One.

380.    These inaccuracies created the appearance of delinquency or duplicate debt obligations, further harming Plaintiff.

## F. Discover Acted Willfully and/or Negligently *(15 U.S.C. §§1681n–1681o)*

381.    Discover acted **willfully** because it:

- failed to update information after portfolio acquisition;

- continued allowing inaccurate reporting under its name;

- ignored Plaintiff's certified disputes;

- verified data without documentation;

74

● failed to reconcile data with Capital One.

382.    Alternatively, Discover acted negligently.

## G. Damages Caused by Discover's Misconduct

383.    Discover's failure to maintain accurate reporting or investigate disputes caused:

● denial of personal credit;

● denial of business credit;

● loss of business funding opportunities;

● reputational damage;

● emotional distress, anxiety, and embarrassment;

● out-of-pocket costs for certified mail and monitoring;

● credit score decline due to duplicate and conflicting creditor data.

384.    Plaintiff continues to suffer harm because the inaccurate Discover-branded tradeline remains on the credit report.

## SECTION XX — CLAIMS AGAINST TXU ENERGY RETAIL COMPANY, LLC

385.    **Plaintiff re-alleges all preceding paragraphs** as though fully stated herein.

386.    **Defendant TXU Energy Retail Company, LLC ("TXU Energy")** is a Texas-based retail electricity provider and a furnisher of consumer credit information to Trans Union and Experian.

387.    TXU Energy reported a **fraudulent utility account** on Plaintiff's credit reports, despite Plaintiff **never having electric service with TXU, never applying for service, and never living at the address tied to the account.**

75

## A. TXU Energy Furnished a Fraudulent and Unauthorized Utility Account

*(FCRA — §1681s-2(a))*

388.   TXU Energy furnished information to the CRAs stating that Plaintiff:

- opened an electric utility account;

- received electric service;

- accrued charges;

- became delinquent;

- owed a past-due balance.

389.   All of this information is false.

390.   TXU Energy has FAILED to produce:

- a service application signed by Plaintiff;

- any identity-verification records;

- proof of service turned on in Plaintiff's name;

- meter numbers tied to Plaintiff;

- service contracts;

- billing statements addressed to Plaintiff;

- proof Plaintiff ever lived at the address connected to the account.

391.   Furnishing information without verifying that the consumer received or requested service violates §1681s-2(a)(1)(A).


## B. The TXU Account Is Connected to an Address Plaintiff Never Lived At

392.   The fraudulent TXU Energy tradeline is tied to a service address that Plaintiff:

- has never lived at;

- has no ownership or rental connection to;

- has never been associated with in public or private records;

has no historical link to any of Plaintiff's residency data.

393.    TXU Energy's inability to explain or validate the address shows the account is

fraudulent.

394.    TXU continued reporting the fraudulent account even after being shown official proof

of Plaintiff's residence history.

## C. TXU Energy Failed to Conduct a Reasonable Investigation After Receiving

## Plaintiff's Disputes *(FCRA — §1681s-2(b))*

395.    Plaintiff disputed the TXU account with both Experian and Trans Union through

certified mail, including:

- government ID;

- proof of current residence;

- proof of prior residence history;

- identity-theft statements;

- fraud explanation.

396.    Trans Union and Experian sent TXU official **ACDV dispute notices**.

397.    TXU Energy was legally required to:

- review Plaintiff's documentation;

- review its internal service records;

- verify whether Plaintiff ever applied for service;

- verify whether Plaintiff ever lived at the connected address;

- correct or delete inaccurate information.

398.    Instead, TXU Energy:

- verified the fraudulent account in minutes;

- ignored Plaintiff's fraud evidence;

- failed to check service application records;

77

- failed to confirm the accuracy of the service address;
- verified the account without ANY documentation;
- continued reporting a balance Plaintiff never owed.

399.    TXU Energy's superficial, automated response is NOT a legal reinvestigation under §1681s-2(b).

## D. TXU Energy Failed to Report the Account as Disputed  *(FCRA — §1681s-2(a)(3))*

400.    After receiving multiple written disputes, TXU Energy failed to inform the CRAs that:

**"THE CONSUMER DISPUTES THIS ACCOUNT."**

401.    Omitting this notice is materially misleading and violates §1681s-2(a)(3).

## E. TXU Energy Failed to Block Identity-Theft Information Despite Proper Documentation *(FCRA — §1681c-2)*

402.    Plaintiff submitted all required identity-theft documents under §1681c-2, including:
- signed identity-theft statement;
- proof of residence;
- government-issued ID.

403.    TXU Energy failed to request any additional information, failed to conduct an investigation, and **failed to block the fraudulent tradeline**.

404.    TXU's refusal to block known identity-theft information is a willful violation of §1681c-2(a).

## F. TXU Energy Acted Willfully and/or Negligently *(15 U.S.C. §§1681n and 1681o)*

78

405. TXU Energy acted **willfully** because it:

- possessed no records linking Plaintiff to the account;

- ignored identity-theft and address mismatch indicators;

- verified the account without documentation;

- continued furnishing fraudulent data after disputes;

- relied on automated verification instead of investigation.

406. Alternatively, TXU acted negligently.

## G. Damages Caused by TXU Energy's Fraudulent Reporting

407. TXU Energy's actions caused:

- denial of credit;

- loss of business funding and lending opportunities;

- reputational damage;

- reduced credit score;

- emotional distress, anxiety, embarrassment, and frustration;

- out-of-pocket mailing and monitoring costs;

- interference with Plaintiff's ability to obtain fair credit.

408. Plaintiff continues to suffer harm because the fraudulent TXU tradeline remains on the credit report.

## SECTION XXI — CLAIMS AGAINST CENTERPOINT ENERGY, INC.

409. **Plaintiff re-alleges all preceding paragraphs** as though fully stated herein.

410. **Defendant CenterPoint Energy, Inc. ("CenterPoint")** is a national utility provider and a furnisher of consumer credit information to Trans Union LLC and Experian Information Solutions, Inc.

79

411.    CenterPoint reported an **unauthorized, fraudulent, inaccurate utility account on** Plaintiff's Experian and TransUnion credit reports.

412.    Plaintiff **never lived at the address linked to the CenterPoint account**, never applied for service at that address, and never executed any contract with CenterPoint.

## A. CenterPoint Furnished False, Fraudulent, and Unverifiable Information *(FCRA — §1681s-2(a)(1)(A))*

413.    CenterPoint furnished the following false information to the CRAs:

- an account Plaintiff did not open;

- service at an address Plaintiff never resided at;

- late payments and delinquencies that never occurred;

- a past-due balance Plaintiff never owed;

- service activity inconsistent with Plaintiff's known address history;

- personal data that does NOT match Plaintiff.

414.    CenterPoint's reporting contained clear signs of identity-theft and mixed-file contamination, including:

- wrong address (completely unknown to Plaintiff);

- unknown account number;

- unfamiliar billing history;

- inconsistent opening and closing dates;

- activity occurring at a time Plaintiff was living elsewhere.

415.    CenterPoint did not verify whether Plaintiff ever occupied, rented, or owned the service property—because Plaintiff did not.

416.    CenterPoint's reporting violated §1681s-2(a)(1)(A) by furnishing information it had reason to know was inaccurate.

80

## B. Plaintiff Submitted Fraud Reports and Certified Disputes to CenterPoint

*(FCRA — §1681s-2(a)(8))*

417.    Plaintiff submitted multiple certified disputes and fraud notices, including:

- FTC Identity Theft Affidavit;

- local police report;

- proof of current and previous addresses;

- government ID;

- detailed written fraud explanation;

- request for service-application documentation.

418.    CenterPoint **ignored** these disputes and failed to request additional information, violating §1681s-2(a)(8).

419.    CenterPoint failed to provide:

- signed service contract;

- service application;

- identity verification records;

- meter activation records;

- start/stop service logs;

- proof of any billing sent to Plaintiff;

- proof Plaintiff ever occupied the service address.

420.    CenterPoint's failure to provide ANY documentation confirms the account was fraudulent.

## C. CRAs Sent CenterPoint ACDV Notices—CenterPoint Verified Fraud

## Anyway *(FCRA — §1681s-2(b))*

421.    Experian and TransUnion transmitted Plaintiff's disputes to CenterPoint through

Automated Consumer Dispute Verification (ACDV) notices under §1681i(a)(2).

422.    These notices **triggered CenterPoint's duty** under §1681s-2(b) to:

- conduct a reasonable investigation;

- review all dispute materials;

- verify internal service records;

- correct or delete inaccurate information;

- notify all CRAs of corrections;

- cease reporting unverifiable information.

423.    CenterPoint violated §1681s-2(b) because it:

- verified a fraudulent account with NO documentation;

- failed to review service-application records;

- failed to review residence history records;

- failed to check meter or billing history;

- ignored Plaintiff's identity-theft documents;

- relied on automated systems instead of investigation.

424.    CenterPoint's ACDV responses were conclusory, generic, and unlawful because FCRA requires **genuine human review**, not rubber-stamping.

425.    Verifying an identity-theft account without evidence is a **willful violation** under §1681n.


## D. CenterPoint Failed to Report the Account as Disputed  *(FCRA — §1681s-2(a)(3))*


426.    After Plaintiff disputed the account, CenterPoint was required to notify TransUnion and Experian that:

**"THE CONSUMER DISPUTES THIS ACCOUNT."**

427. CenterPoint failed to report the account as disputed.

428. This omission is materially misleading and independently violates §1681s-2(a)(3).

## E. CenterPoint Failed to Block Identity-Theft Information *(FCRA — §1681c-2)*

429. Plaintiff submitted valid identity-theft documentation under §1681c-2.

430. CenterPoint was required to assist in blocking fraudulent information.

431. CenterPoint failed to do so and continued furnishing the false account.

432. This constitutes a separate statutory violation.

## F. CenterPoint's Conduct Was Willful and Reckless *(15 U.S.C. §1681n)*

433. CenterPoint acted willfully and recklessly because it:

- possessed NO service-application documents;

- had no evidence Plaintiff lived at the service address;

- ignored identity-theft indicators;

- verified data without checking service records;

- knew or should have known the reporting was false;

- continued furnishing after multiple disputes;

- used automated verification without reviewing evidence.

434. Alternatively, CenterPoint acted negligently under §1681o.

## G. Damages Caused by CenterPoint's False Reporting

435. As a direct result of CenterPoint's unlawful reporting and reinvestigation failures, Plaintiff suffered:

- major drops in credit scores;

- denial of credit and business financing opportunities (including >$150,000 in losses);

- higher interest rates;

- reputational harm;

- emotional distress, anxiety, and embarrassment;

- loss of time and productivity;

- out-of-pocket expenses for disputes and monitoring;

- inability to qualify for favorable loan terms.

436.     These injuries continue because the fraudulent tradeline remains on Plaintiff's file.

## GENERAL CAUSES OF ACTION

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT (FCRA) *(15 U.S.C. §§ 1681e(b), 1681i, 1681s-2(a), 1681s-2(b))*

437.     **Plaintiff re-alleges all prior paragraphs** as though fully stated herein.

438.     Defendants, individually and collectively, violated multiple provisions of the Fair Credit Reporting Act ("FCRA"), including but not limited to:

- **§1681e(b)** — failure of CRAs to maintain reasonable procedures to assure maximum possible accuracy;

- **§1681i(a)** — failure of CRAs to conduct lawful reinvestigations;

- **§1681i(a)(2)** — failure of CRAs to forward all dispute information to furnishers;

- **§1681s-2(a)** — unlawful furnishing of inaccurate information;

- **§1681s-2(a)(3)** — failure to report accounts as disputed;

- **§1681s-2(b)** — failure of furnishers to conduct reasonable investigations after receiving ACDVs;

- **§1681c-2** — failure to block fraudulent identity-theft information.

84

439. Plaintiff submitted lawful written disputes to Defendants, including CRAs and furnishers, identifying inaccurate, fraudulent, mixed-file, or unverifiable information on his consumer reports.

440. The CRAs—**TransUnion** and **Experian**—failed to correct, delete, or properly reinvestigate the disputed information.

441. Multiple furnisher Defendants—**LVNV, Resurgent, Capital One, BLST, WebBank, Affirm, Jefferson Capital, Comenity, Wayfair, Discover, TXU, CenterPoint**, and others—verified inaccurate information **without reviewing documents**, **without validating** the accounts, and **without conducting a reasonable investigation**.

442. Defendants' actions caused Plaintiff's consumer reports to contain numerous inaccuracies which materially damaged Plaintiff's creditworthiness.

## WILLFUL VIOLATIONS OF THE FCRA *(15 U.S.C. §1681n)*

443. Defendants acted **willfully**, as defined in *Safeco Ins. Co. v. Burr*, 551 U.S. 47 (2007), because they knowingly, recklessly, and intentionally:

- ignored Plaintiff's disputes;

- verified accounts without documentation;

- used automated "parroting" systems instead of investigations;

- failed to review identity-theft reports;

- continued reporting false information after multiple notices.

444. Willful FCRA violations entitle Plaintiff to **statutory damages**, **punitive damages**, and **attorney-fee-equivalent compensation**, even as a pro se litigant.

## NEGLIGENT VIOLATIONS OF THE FCRA *(15 U.S.C. §1681o)*

445. Alternatively, Defendants acted negligently by:

- failing to maintain reasonable accuracy procedures;

- mishandling disputes;

- reporting accounts without proper validation;

- failing to update reports after ownership transfers;

- ignoring obvious red flags of identity theft.

446.   As a result of Defendants' negligence, Plaintiff suffered actual damages including

financial loss, denial of credit, loss of business, emotional distress, and reputational harm.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

*(LVNV, Resurgent, Jefferson Capital, BLST, and other "debt collector" defendants)*

447.   Plaintiff re-alleges all prior paragraphs.

448.   Debt collector Defendants violated multiple provisions of the FDCPA, including:

- **§1692e** — false, deceptive, and misleading representations;

- **§1692e(2)** — false representation of the character, amount, or legal status of a debt;

- **§1692e(8)** — failing to communicate that a debt is disputed;

- **§1692f** — unfair and unconscionable means;

- **§1692g(b)** — failure to validate debts before continuing collection or reporting.

449.   Debt collectors continued reporting after failing to validate the debt, which is a strict

violation of the FDCPA.

## WILLFULNESS & RECKLESS DISREGARD

450.   Defendants had actual knowledge of the inaccuracies because:

- Plaintiff supplied identity-theft documents;

- Plaintiff provided proof of address history;

- Plaintiff sent detailed written disputes;

- CRAs forwarded ACDVs;

- Defendants refused or failed to provide validation.

86

451.   Defendants demonstrated reckless disregard for FCRA compliance standards and industry investigation protocols.

## PLAINTIFF'S DAMAGES

452.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered:

- **Loss of credit opportunities**;

- **Loss of business funding exceeding $150,000+**;

- **Denial of housing and rental applications**;

- **Denial of credit cards and loans**;

- **Loss of income and contracts**;

- **Higher interest rates**;

- **Damage to financial reputation**;

- **Inability to obtain reliable credit**;

- **Emotional distress, anxiety, humiliation, and sleep disruption**;

- **Medical treatment for stress and anxiety**;

- **Out-of-pocket expenses** for credit monitoring, dispute mailing, and document preparation.

453.   Plaintiff's damages are ongoing because inaccurate and fraudulent tradelines remain on his credit reports.

## INJUNCTIVE & DECLARATORY RELIEF

454.   Plaintiff seeks an order requiring Defendants to:

- delete all inaccurate, fraudulent, unverifiable, or mixed-file information;

- permanently block the fraudulent tradelines;

- correct consumer report data to reflect accurate credit history;

- notify all third parties who received inaccurate information;

- implement improved FCRA compliance procedures.

**DAMAGES**

455. As a direct and proximate result of Defendants' actions and omissions, Plaintiff suffered substantial harm, including financial injury, emotional distress, medical impact, reputational damage, credit denials, business losses, and other injuries. Defendants' inaccurate reporting, negligent and willful reinvestigations, mixed-file contamination, identity-theft-related errors, and unlawful furnishing of information caused ongoing disruption to Plaintiff's daily life and financial well-being.

456. Plaintiff experienced repeated denials for credit, loans, housing-related inquiries, and business funding opportunities because Defendants continued to publish inaccurate, unauthorized, or mixed-file tradelines and failed to correct the errors despite multiple disputes. These denials directly caused Plaintiff financial losses, increased credit costs, and delayed business expansion opportunities.

457. Plaintiff sought medical evaluation at RKM Loranger Family Healthcare, where he reported elevated stress, anxiety, sleep disruption, concentration difficulty, emotional strain, and other symptoms caused by Defendants' prolonged inaccurate reporting. Plaintiff's provider documented that these symptoms were directly connected to Defendants' failures.

458. Plaintiff's medical provider recommended continued monitoring, care, and appropriate treatment due to the severity and persistence of his symptoms. These medical findings reflect legally compensable emotional-distress damages under the FCRA.

459. Plaintiff incurred out-of-pocket expenses, including certified mail fees, document costs, printing, preparation, and repeated dispute submissions to Experian, Trans Union, and various furnishers because Defendants continuously failed to perform lawful reinvestigations.

460. Plaintiff suffered business losses and revenue impact because inaccurate negative reporting reduced his creditworthiness, impaired his ability to secure essential business funding, and obstructed his commercial opportunities.

461. Plaintiff seeks actual damages under 15 U.S.C. §§1681n and 1681o for financial harm, emotional distress, medical distress, credit denial, increased interest rates, business harm, reputational damage, and all related losses.

462. Plaintiff seeks statutory damages under §1681n(a)(1)(A) for Defendants' willful violations.

463. Plaintiff seeks punitive damages because Defendants acted willfully, recklessly, and with conscious disregard of Plaintiff's rights.

## INJUNCTIVE & EQUITABLE RELIEF

464. Plaintiff requests injunctive relief ordering all Defendants to:

A. Delete, block, and permanently suppress all inaccurate, unauthorized,  unverifiable, mixed-file, or identity-theft-related information;

B. Correct Plaintiff's credit files and remove erroneous identifiers;

C. Notify all CRAs of all corrections;

D. Implement reasonable procedures ensuring maximum accuracy;

E. Prevent reinsertion of any deleted information without full certification;

F. Fully comply with 15 U.S.C. §1681c-2 (identity-theft blocking).

465. Plaintiff seeks a declaratory judgment that Defendants violated the FCRA.

466. Plaintiff requests an order requiring Defendants to certify, within 30 days, that all deletions, corrections, and procedural improvements have been completed.

**TOTAL DAMAGES REQUESTED**

467. Plaintiff seeks total damages of $500,000, including:

- Actual damages;

- Statutory damages;

- Punitive damages;

- Medical-related harm;

- Business losses;

- Out-of-pocket expenses;

- Any additional relief deemed appropriate.


**PERMANENT REMOVAL OF DISPUTED INFORMATION**

468. Plaintiff requests permanent deletion and suppression of all inaccurate or unauthorized information furnished by:

- LVNV Funding LLC

- Resurgent Capital Services, L.P.

- CenterPoint Energy, Inc.

- TXU Energy Retail Company, LLC

- WebBank

- BLST Receivables & Servicing LLC d/b/a Fingerhut

- Affirm, Inc.

- Comenity Bank

- Wayfair LLC

- Jefferson Capital Systems LLC

- Capital One Bank (USA), N.A.

- Discover Financial Services

**FURTHER RELIEF**

469. Plaintiff requests all additional relief necessary to restore his creditworthiness, financial standing, and consumer rights.

**JURY TRIAL DEMAND**

470. Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Taiujuan Burches

Taiujuan Burches (Pro Se)

42520 Richard Rd

Ponchatoula, La 70454

Phone: 832-946-1754

Email: Taiujuan87@gmail.com

91

CERTIFICATE OF SERVICE

I certify that on the date above, a copy of the foregoing Notice of Submission was filed via CM/ECF, which will send notice to all counsel of record.

/s/ Taiujuan Burches

Pro Se Plaintiff