U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED | Mar 17 2026

cf

CAROL L. MICHEL
CLERK

EDSS



## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TAIUJUAN BURCHES, | Civil Action No. 2:25-cv-00804 |
| **Plaintiff,** | |
| v. | **JUDGE SUSIE MORGAN** |
| TRANS UNION  LLC, EXPERIAN INFORMATION SOLUTIONS, INC., LVNV FUNDING, LLC, RESURGENT CAPITAL SERVICES, LP., CAPITAL ONE BANK (USA), NATIONAL ASSOCIATION ( "CAPITAL ONE N.A."),  BLST RECEIVABLES & SERVICING LLC D/B/A FINGERHUT, WEBBANK, JEFFERSON CAPITAL SYSTEMS, LLC, COMENITY BANK, WAYFAIR LLC, TXU ENERGY RETAIL COMPANY, LLC, AND CENTERPOINT ENERGY,  INC. | **MAGISTRATE JUDGE:** |
| **Defendants.** | |

# PLAINTIFF'S OPPOSITION TO DEFENDANT TRANS UNION LLC'S MOTION TO STAY DISCOVERY

NOW INTO COURT, through undersigned, Plaintiff Taiujuan Burches, appearing pro se, respectfully submits this Opposition to Defendant Trans Union LLC's Motion to Stay Discovery pending resolution of its Motion to Dismiss. For the reasons set forth below, Defendant's Motion should be denied in its entirety.

1

## I. INTRODUCTION

Defendant seeks to stay discovery while dispositive motions are pending. However, a stay of discovery is an extraordinary remedy that is not warranted where the case presents fact-intensive issues requiring development of the evidentiary record.

This action arises under the Fair Credit Reporting Act (FCRA) and concerns disputed credit reporting, repeated consumer disputes, prior verifications, subsequent removals of tradelines, and inconsistent reporting outcomes across consumer reporting agencies. Plaintiff's reports over time reflect changing and conflicting results, including the continued reporting of certain disputed tradelines by Experian and the removal of disputed tradelines by Trans Union only after repeated disputes were submitted. Those differing outcomes raise factual questions regarding the accuracy of the reported information, the adequacy of reinvestigation procedures, and the reliability of earlier verification responses.

In addition, Plaintiff's reports reflect material inconsistencies across consumer reporting agencies, including accounts reported by one bureau but not others, materially different balances for the same account, differing payment histories, different aggregate balances, and variations in personal identifying information associated with Plaintiff's file. These discrepancies are directly relevant to whether the respective consumer reporting agencies followed reasonable procedures to assure maximum possible accuracy and conducted reasonable reinvestigations after Plaintiff's disputes.

These circumstances demonstrate that Plaintiff's claims depend on facts uniquely within the possession, custody, and control of the consumer reporting agencies and furnishers, including reinvestigation procedures, Automated Consumer Dispute Verification (ACDV) records, communications with furnishers, and the documentation relied upon in verifying disputed

2

information. A stay of discovery would prevent Plaintiff from obtaining this essential evidence and would improperly freeze the case at the pleading stage before the factual record can be developed.

Accordingly, Defendant has not shown good cause for a stay, and the Motion should be denied.

## II. LEGAL STANDARD

A district court has discretion to stay discovery, but such relief is disfavored and requires a showing of good cause and reasonableness. The Supreme Court has explained that a party seeking a stay must make out a clear case of hardship or inequity in being required to go forward. See *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

Courts in this Circuit consider whether the movant has shown good cause, whether the movant would suffer hardship or inequity without a stay, whether the non-movant would suffer prejudice, and whether a stay would serve judicial economy. See *La Union del Pueblo Entero v. Abbott*, 68 F.4th 228, 236 (5th Cir. 2023).

Importantly, discovery should not be stayed where the case involves fact-intensive issues or where discovery is necessary to respond to or evaluate dispositive arguments. Courts in the Eastern District of Louisiana have recognized that the pendency of a motion to dismiss does not, by itself, justify halting discovery. See *Turner v. Murphy Oil USA, Inc., No. 05-4206, 2006 WL 1984362, at *1 (E.D. La. July 13, 2006).*

## III. ARGUMENT

### A. Defendant Has Not Shown Good Cause for a Stay

Defendant has not demonstrated specific facts establishing good cause for a stay. Instead, the

3

Motion relies primarily on the existence of pending dispositive motions. That alone is insufficient.

A stay is not warranted simply because a defendant believes its motion to dismiss may succeed. If that were enough, discovery could be suspended in nearly every case at the pleading stage. Federal practice does not support such a result, particularly where the plaintiff's claims depend on internal procedures, verification methods, and communications not available to the plaintiff absent discovery.

Here, Defendant has not identified any case-specific circumstances showing that discovery should be halted. It has not shown that this case presents purely legal issues. Nor has it shown that the factual record is already sufficiently developed to permit fair resolution of Plaintiff's claims without discovery. To the contrary, the record presently reflects repeated disputes, conflicting reporting outcomes, and evolving tradeline treatment over time, all of which indicate the need for factual development rather than a stay.

Because Defendant has not shown a clear case of hardship or a concrete basis for freezing discovery, it has not carried its burden under Landis. See Landis v. N. Am. Co., 299 U.S. 248, 255 (1936).

## B. DEFENDANT HAS NOT SHOWN UNDUE HARDSHIP

Defendant has not identified any specific burden associated with responding to discovery in this matter. General assertions regarding litigation expense or inconvenience are not enough.

The ordinary obligations of litigation responding to interrogatories, producing documents, and participating in discovery do not constitute undue hardship. That is especially true here, where Plaintiff's discovery is directed to issues central to the claims and where much of the relevant

4

evidence is already maintained in the ordinary course of Defendant's business, including dispute

logs, ACDV records, reinvestigation notes, furnisher communications, and internal policies

governing verification and reporting procedures.

Moreover, Defendant has already appeared and is actively litigating the case. It has filed

dispositive motions and sought to halt discovery. Under these circumstances, complying with

ordinary discovery obligations is not the type of hardship that justifies extraordinary relief.

## C. A Stay Would Substantially Prejudice Plaintiff

Plaintiff will be significantly prejudiced if discovery is stayed.

This case involves ongoing credit reporting issues that continue to affect Plaintiff. Plaintiff's

reports reflect disputed tradelines, inconsistent reporting across agencies, and prior verifications

followed by later removals. Delaying discovery will prolong Plaintiff's inability to obtain the

evidence necessary to determine how and why these events occurred, whether the

reinvestigations were reasonable, and whether the reporting agencies relied on adequate

documentation in continuing to report disputed information.

In addition, evidence relevant to Plaintiff's claims includes reinvestigation procedures, ACDV

transmissions, internal policies, dispute-handling records, and communications with furnishers.

This evidence is not publicly available and is exclusively within the control of the respective

consumer reporting agencies and furnishers.

A stay would therefore do more than pause the case. It would deprive Plaintiff of access to the

very evidence needed to test Defendant's assertions and develop the factual record necessary to

litigate the claims fairly.

## D. FCRA CLAIMS ARE FACT-INTENSIVE AND REQUIRE DISCOVERY

Plaintiff's claims arise under the Fair Credit Reporting Act (FCRA), including 15 U.S.C. §§ 1681e(b) and 1681i.

Section 1681e(b) requires consumer reporting agencies to follow reasonable procedures to assure maximum possible accuracy of the information reported. Section 1681i requires consumer reporting agencies to conduct a reasonable reinvestigation after receiving notice of a dispute from a consumer.

Both provisions require a fact-specific inquiry into the conduct of the reporting agency. The reasonableness of a reporting agency's procedures and reinvestigation cannot be determined in the abstract. Instead, those determinations depend on evidence regarding:

- the procedures used to match and report consumer data;
- the steps taken after a dispute is received;
- the information transmitted to and received from furnishers;
- the documentation relied upon to verify disputed accounts; and
- the internal policies governing reinvestigation and verification.

This information is not available to Plaintiff absent discovery. It is maintained internally by the consumer reporting agencies and, in part, by furnishers of information.

Courts have consistently recognized that FCRA claims are inherently fact-driven. See, e.g., Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995)  (noting that the reasonableness of procedures under § 1681e(b) is normally a question for the jury); see also Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997) (holding that a consumer reporting agency must go beyond a superficial verification and conduct a reasonable

reinvestigation).

Here, Plaintiff has alleged repeated disputes, prior verifications, continued reporting of disputed tradelines, and subsequent deletions of previously verified accounts. These allegations directly implicate the adequacy of Defendant's procedures and reinvestigation efforts.

Because the core issues in this case concern how Defendant conducted its reinvestigations, what information it relied upon, and whether its procedures were reasonable, discovery is necessary. Without access to Defendant's internal records including dispute logs, ACDV communications, reinvestigation notes, and verification documentation Plaintiff cannot fully present or prove these claims.

Accordingly, a stay of discovery would be inappropriate where the claims themselves depend on facts that can only be obtained through discovery.

See also Sepulvado v. CSC Credit Servs., Inc., 158 F.3d 890, 895 (5th Cir. 1998).

Because the reasonableness of a consumer reporting agency's procedures and reinvestigation is typically a question of fact, resolution at the pleading stage without discovery is generally inappropriate.

Information may be inaccurate under the FCRA if it is misleading or materially incomplete, even if it is technically correct. See Sepulvado v. CSC Credit Servs., Inc., 158 F.3d 890, 895 (5th Cir. 1998).

## E. DOCUMENTED INCONSISTENCIES CONFIRM DEFENDANT'S PROCEDURES REQUIRE DISCOVERY

Plaintiff's credit reports reflect objective inconsistencies that independently demonstrate the need

7

for discovery into Defendant's reporting and reinvestigation practices.

Across Plaintiff's reports, the same or related accounts are reported differently by various consumer reporting agencies. These inconsistencies include:

- accounts reported by one consumer reporting agency but absent from others;

- materially different balances for the same account across bureaus;

- inconsistent payment histories for identical tradelines

- differing total balances and account summaries; and

- variations in Plaintiff's identifying information, including name and address.

For example, Plaintiff's reports reflect that certain accounts appear on one bureau while not appearing on others, and that certain accounts reflect materially different balances depending on the reporting agency.

Plaintiff's reports further show that aggregate balances and account summaries differ across agencies, reflecting inconsistent reporting of Plaintiff's overall credit profile.

Additionally, Plaintiff's identifying information is not reported consistently, with variations in name and related data appearing across reports.

These discrepancies are material. They affect how Plaintiff's creditworthiness is evaluated and demonstrate that the reported information may not be accurate, complete, or consistent.

Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required to follow reasonable procedures to assure maximum possible accuracy. Under 15 U.S.C. § 1681i, they must conduct a reasonable reinvestigation after receiving a dispute.

8

Where the same information is reported differently across agencies or changes over time after disputes, factual questions arise regarding:

- whether the reporting agencies relied on consistent and reliable data;

- whether reinvestigations involved meaningful review or merely repeated prior information; and

- whether the procedures used were reasonably designed to ensure accuracy.

These are not abstract legal questions. They are fact-based determinations that require examination of internal procedures, communications with furnishers, and the documentation used to verify disputed accounts.

Because Plaintiff's own reports demonstrate inconsistencies in how information is reported and verified, discovery is necessary to determine the source of those inconsistencies and whether Defendant complied with its obligations under the FCRA.

The record further reflects that certain accounts were reported with differing balances, dates, and statuses across consumer reporting agencies. Such discrepancies are material under the FCRA because information may be inaccurate if it is misleading or materially incomplete, even if technically correct.

## F. Plaintiff Has Already Initiated Discovery and a Stay Would Disrupt the Progress of the Case

Plaintiff has already taken steps to move this case forward through discovery.

Plaintiff served Rule 26(a)(1) initial disclosures and propounded written discovery requests on March 4, 2026. Plaintiff subsequently supplemented those disclosures on March 14, 2026.

9

Through those discovery requests, Plaintiff seeks information directly relevant to the claims at issue, including Defendant's reinvestigation procedures, dispute handling practices, communications with furnishers, and the records relied upon to verify disputed accounts.

Defendant now seeks to halt discovery after Plaintiff has initiated the discovery process.

Granting a stay at this stage would interrupt the orderly progression of the case and delay the development of the factual record.

This is not a situation where discovery has not yet begun or where a stay would preserve resources. Instead, Plaintiff has already engaged in the discovery process, and the requested information is central to the claims in dispute.

Allowing discovery to proceed will promote efficiency by enabling the parties to develop the record, identify the relevant facts, and potentially narrow the issues for resolution. By contrast, staying discovery would delay that process and prolong the litigation.

For these reasons, the procedural posture of the case weighs against granting a stay.

## G. Public Interest and Judicial Economy Favor Denying a Stay

Allowing discovery to proceed promotes judicial efficiency and serves the public interest in ensuring accurate credit reporting.

This case involves ongoing and evolving credit reporting activity, including inconsistent reporting across consumer reporting agencies, prior verifications followed by subsequent deletions, and continued reporting of disputed accounts. As such, the factual record is not static and continues to develop over time.

10

Staying discovery would not simplify the issues before the Court. Instead, it would delay the development of a complete factual record necessary to evaluate Plaintiff's claims under the Fair Credit Reporting Act.

Moreover, the inconsistencies reflected in Plaintiff's credit reports, including conflicting balances, inconsistent payment histories, and the reporting of accounts by some agencies but not others, demonstrate that discovery may streamline the litigation by identifying the precise sources of error and narrowing the issues in dispute.

Courts within this Circuit recognize that where discovery may clarify factual disputes and promote resolution, a stay is not appropriate. See *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983).

Accordingly, allowing discovery to proceed will promote efficiency, reduce delay, and assist the Court in resolving this matter on a fully developed record.

## H. EXPERIAN'S CONTINUED REPORTING AND TRANS UNION'S PRIOR VERIFICATION AND SUBSEQUENT DELETION DEMONSTRATE THE NEED FOR DISCOVERY

Plaintiff's credit reporting history demonstrates that disputed tradelines have been treated inconsistently across consumer reporting agencies and over time, confirming that this case presents fact-intensive issues requiring discovery.

Plaintiff's consumer report as maintained by Experian currently reflects:

- a tradeline reported by TXU Energy;
- a tradeline reported by CenterPoint Energy Services; and

11

- a collection tradeline reported by Sunrise Credit Service that appears to relate to the same alleged obligation.

Plaintiff disputes ownership of these accounts.

Despite repeated disputes, these tradelines continue to be reported by Experian without documentation sufficient to establish:

- that the alleged debts belong to Plaintiff;
- that any collection account was lawfully placed or assigned; or
- that the reported balances, dates, and account statuses are accurate and complete.

Plaintiff's reports further reflect a longstanding dispute notation stating, "THIS DOES NOT BELONG TO ME CAN YOU PLEASE REMOVE IT," demonstrating repeated notice to the consumer reporting agencies.

In contrast, Plaintiff previously disputed multiple tradelines with Trans Union. Those tradelines were repeatedly verified during prior disputes but were later removed in or around January 2026 after multiple disputes were submitted.

The subsequent deletion of previously "verified" tradelines raises substantial questions regarding whether earlier verification responses were based on reasonable procedures or a meaningful

investigation.

Additionally, Plaintiff's reports reflect that certain disputed accounts were marked as "consumer disagrees" following investigation, yet continued to be reported. This further underscores the unresolved and ongoing nature of the disputes.

Plaintiff's Third Amended Complaint also alleges that:

12

- TXU Energy reported an account associated with a service address where Plaintiff did not reside; and

- CenterPoint Energy reported an account without validating service records or identity information.

These are concrete factual disputes that cannot be resolved without access to the respective consumer reporting agencies' internal records.

The differing treatment of these tradelines across consumer reporting agencies, combined with prior verifications followed by deletions, raises factual questions regarding:

- the adequacy of reinvestigation procedures;

- the accuracy and completeness of the information reported;

- the documentation relied upon in verifying disputed accounts;

- whether any debt was lawfully assigned or placed for collection; and

- the communications between the consumer reporting agencies and furnishers, including ACDV exchanges.

Where disputed tradelines are verified, later removed, or treated inconsistently across agencies, discovery is necessary to obtain the underlying evidence, including dispute logs, reinvestigation notes, ACDV records, furnisher responses, and method-of-verification documentation, to determine whether the reporting agencies complied with 15 U.S.C. §§ 1681e(b) and 1681i.

A stay of discovery would prevent Plaintiff from obtaining precisely the information needed to explain these inconsistencies and would improperly shield the reporting agencies procedures from scrutiny.

13

These facts demonstrate that this case is not based on static allegations, but on evolving reporting conduct, conflicting verification outcomes, and unresolved factual discrepancies that can only be evaluated through discovery.

# I. PLAINTIFF'S REPORTING HISTORY CONFIRMS THE NEED FOR FACTUAL DEVELOPMENT

Plaintiff's credit reports over time reflect a pattern of repeated disputes, prior verifications, continued reporting, and subsequent removals of tradelines.

This pattern demonstrates that the issues in this case are ongoing and fact-dependent. The dispute is not limited to whether a debt is owed. Rather, the issues include whether the consumer reporting agencies:

- followed reasonable procedures to assure maximum possible accuracy;
- conducted reasonable reinvestigations after receiving disputes;
- reported information that was complete and not misleading; and
- relied on information that was properly verified and lawfully assigned.

The record reflects that information has changed over time, that different agencies have reported the same or related accounts differently, and that previously verified tradelines have later been removed.

These circumstances confirm that the accuracy and reliability of the reporting and the adequacy of the procedures used cannot be determined at the pleading stage.

Instead, these determinations require access to internal records, reinvestigation materials, and communications with furnishers, all of which are uniquely within the control of the reporting

14

agencies.

Accordingly, discovery is necessary to fully develop the factual record and to allow the Court to evaluate Plaintiff's claims on the merits.

## IV. CONCLUSION

Defendant has failed to demonstrate good cause, undue hardship, or any basis to justify a stay of discovery.

Plaintiff, by contrast, would be prejudiced by delay and requires discovery to obtain evidence central to the claims in this case.

For these reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Stay Discovery.

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Deny Defendant's Motion to Stay Discovery;

2. Permit discovery to proceed without delay; and

3. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Taiujuan Burches

42520 Richard Rd

Ponchatoula, La 70454

Phone: 832-946-1754

Email: Taiujuan87@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of March, 2026, I electronically filed the foregoing

**Plaintiff's Opposition to Defendant Trans Union LLC's Motion to Stay Discovery** with the

Clerk of Court using the CM/ECF system, which will send notice of such filing to all counsel of

record.

.

/s/ Taiujuan Burches

Pro Se Plaintiff