**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

**TAIUJUAN BURCHES,**

**Plaintiff,**

**v.**

**EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC, LVNV FUNDING, LLC, RESURGENT CAPITAL SERVICES, LP, CAPITAL ONE BANK (USA), NATIONAL ASSOCIATION ("CAPITAL ONE N.A."), AFFIRM, INC., BLST RECEIVABLES & SERVICING LLC D/B/A/ FINGERHUT, WEBBANK. JEFFERSON CAPITAL SYSTEMS, LLC, COMENITY BANK, WAYFAIR LLC, DISCOVER FINANCIAL SERVICES, TXU ENERGY RETAIL COMPANY, LLC, CENTERPOINT ENERGY, INC.,**

**Defendants**

Case No.: 2:25-CV-00804

Judge Susie Morgan

Magistrate Judge Michael North

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

CenterPoint Energy Resources Corp.'s (CERC's) Motion for Summary Judgment should be granted because plaintiff Taiujuan Burches cannot establish essential elements of his claim against CERC. Plaintiff has brought a claim against CERC pursuant to Section 1681s-2(b) of the Fair Credit Reporting Act (FCRA). That statute provides that when a consumer disputes the accuracy of a debt with a consumer reporting agency (CRA), and the CRA notifies the furnisher of the dispute, the furnisher of the information regarding the debt must conduct a reasonable investigation to determine whether the information can be verified. The basis of plaintiff's claim

is that he disputed the accuracy of his debt to CERC for natural gas service to him at 8831 Wooster Trails Drive, Baytown, Texas (the "Baytown Address"), and that CERC failed to reasonably investigate the dispute.

Plaintiff's claim must be dismissed because he cannot establish essential elements of his claim against CERC. Two essential elements of plaintiff's claim are: 1) that the information provided by the furnisher to the CRAs was inaccurate, and 2) that the furnisher failed to conduct a reasonable investigation upon being notified by a CRA of a dispute. For the reasons discussed herein, the information CERC furnished about plaintiff's debt was not inaccurate, and CERC conducted a reasonable investigation of plaintiff's dispute. Accordingly, because plaintiff cannot establish two essential elements of his claim against CERC, CERC's Motion for Summary Judgment should be granted.

## BACKGROUND

Plaintiff Taiujuan Burches brought this claim against CERC and several other defendants, alleging violations of FCRA.[1] Plaintiff also asserted claims against CERC based on the Fair Debt Collection Practices Act, and the Louisiana Unfair Trade Practices and Consumer Protection Law.[2] This Court dismissed all of plaintiff's claims against CERC, except for claims asserted pursuant to Section 1681s-2(b) of FCRA.[3]

Plaintiff's Section 1681s-2(b) claim is based on allegations that CERC failed to reasonably investigate allegedly inaccurate information after he raised disputes with the consumer reporting agencies. According to plaintiff's complaint, CERC reported information to the CRAs regarding

---

1 See Rec. Doc. 336, Limited Fifth Amended Complaint, ¶ 1.
2 *Id.* ¶ 33.
3 Rec. Doc. 341.

accounts, including a CERC natural gas utility account, that do not belong to him and that he did not open, apply for or authorize.[4] He claims that after he reported his dispute to the CRAs, and the CRAs notified CERC of the dispute, CERC failed to conduct a reasonable investigation to verify the accuracy of the debt.[5] The disputed address is 8831 Wooster Trails Drive, Baytown, Texas.[6]

The overwhelming documentary evidence reflects that plaintiff lived at the Baytown Address, and that the debt is accurate. Plaintiff opened the account on August 30, 2022.[7] The identifying information used to open the account, including telephone number, email address, and social security number, matched the plaintiff's information.[8] CERC issued its first invoice to plaintiff on September 22, 2022, and its final invoice on April 13, 2024.[9] Plaintiff never paid the final invoice.[10] Accordingly, CERC referred the final invoice for collection and reported it to the CRAs.[11]

Apart from CERC's records, there is substantial documentary evidence that plaintiff lived at the Baytown Address during the time he had the account with CERC. At the time plaintiff had his account with CERC, the Baytown Address was owned by Adegboyega Saheed Adejumo, and

---

4 Rec. Doc. 336, ¶¶ 35, 36.

5 *Id.* ¶¶ 421-425.

6 Exhibit 1, Declaration of Bryan Martin and attachments A, B, C and D.

7 Exhibit 1, ¶ 6(a) and Attachment A, correspondence from CenterPoint to Taiujuan Burches dated August 30, 2022.

8 Exhibit 1, Attachments E, F (CenterPoint Energy Credit Reporting Data, Taiujuan Burches (CPDOCS-BURCHES-000002)), CenterPoint Energy Gas Account Overview of Customer Data, Taiujuan Burches (CPDOCS-BURCHES-000004)); Exhibit 3, Deposition of Taiujuan Burches, pp. 22-23, 101-103 and Deposition Exhibit 21.

9 Exhibit 1, Attachments B, C (Invoices, CPDOCS-BURCHES-000011-12, 59-60).

10 Exhibit 1, Attachment D (Payment History, CPDOCS-BURCHES-000009-10).

11 Exhibit 2, CERC Supplemental Answer to Interrogatory No. 9 and Attachment, CPDOCS-BURCHES-000062-63).

managed by ManageRentHouses.com, Inc. ("MRH")[12] The records of MRH contain a lease application dated May 28, 2022, bearing what appears to be plaintiff's handwriting and signature.[13] MRH's records also include a copy of a Residential Lease for the Baytown Address dated May 29, 2022, which contain an electronic signature and initials showing plaintiff's name.[14] There are also public eviction records showing that plaintiff signed an extension of the lease in July 2023.[15] Those same records reflect that after plaintiff failed to pay the rent in April 2024, Mr. Adejumo commenced eviction proceedings against plaintiff.[16] They also reflect that Mr. Adejumo obtained a default judgment evicting plaintiff from the Baytown Address.[17]

Plaintiff also had a Texas driver's license, issued in July 2023, which listed his residency as the Baytown Address.[18] The records of TransUnion reflect that he sent at least one letter to them, listing the Baytown Address as his address.[19]

At his deposition, plaintiff denied he ever lived at the Baytown Address.[20] He claimed that he obtained the address on the Texas driver's license from a co-worker, and obtained a license at that address for purposes of obtaining tuition discounts at Texas schools despite not residing in Texas.[21] Plaintiff denied signing the lease application, lease, and lease extension, and denied

---

12 Exhibit 3, Deposition of Taiujuan Burches, p. 128 and Deposition Exhibit 30, Certified Records of ManageRentHouses.com, Inc., p. MRH-BURCHES-024.

13 Exhibit 3, Deposition Exhibit 30, pp. MRH-BURCHES-006-008.

14 *Id*. pp. MRH-BURCHES-009-024.

15 Exhibit 3, p. 138 and Deposition Exhibit 31.

16 *Id*. p. 139, and Deposition Exhibit 32.

17 *Id*. p. 141, and Deposition Exhibit 33.

18 *Id*. p. 113, and Deposition Exhibit 23.

19 *Id*. p. 124, and Deposition Exhibit 26.

20 *Id*. p. 108.

21 Exhibit 3, pp. 114-120. If true, among other potential violations, plaintiff may have violated Texas Transportation Code Section 521.451(a)(5)(A) (Lexis 2026), which makes it a crime to provide a false address in an application for a driver's license, and Tex. Transp. Code § 521.455 (Lexis 2026), which makes it a crime to knowingly use a driver's license bearing a false address to defraud another, as well as Texas

having knowledge of being evicted from the Baytown Address.[22] He also denied any knowledge of having sent the letter to TransUnion bearing his name and the Baytown Address.[23] However, the signatures and handwriting on the lease application, lease, and lease extension bear obvious similarities to the signatures and handwriting on other documents submitted by plaintiff, including another letter submitted to TransUnion, and an Affirmation submitted to this Court.[24] Plaintiff never filed a report with any law enforcement agency alleging identity theft.[25] He also cannot identify any witnesses who can testify that he did not live at the Baytown Address during the time period in question.[26]

The overwhelming documentary evidence reflects that plaintiff resided at the Baytown Address at the time in question, and that the debt is accurate. Plaintiff's claims to the contrary are so thoroughly contradicted by the record that no reasonable juror could believe him. Accordingly, plaintiff cannot prove the information CERC furnished about the debt was inaccurate. Furthermore, CERC investigated the debt in response to plaintiff's dispute with the CRAs and confirmed that the information it furnished regarding the debt is accurate.

Based on the foregoing, plaintiff cannot establish two essential elements of his claim against CERC pursuant to FCRA Section 1681s-2(b). Therefore, CERC's Motion for Summary

---

Education Code Section 54.057, which provides civil liability for providing false information to an educational institution to obtain residential tuition. Tex. Educ. Code § 54.057 (Lexis 2026).

22 *Id*. pp. 130-142.

23 Exhibit 3, p. 124.

24 See Exhibit 3, Deposition Exhibit 30 pp. MRH-BURCHES-006-008, Deposition Exhibit 31, p. 2, deposition p. 101 and Deposition Exhibit 21, Rec. Doc. 47, Plaintiff's Affirmation in Opposition to Defendant Wayfair LLC's Motion to Dismiss, p. 5 (envelope bearing plaintiff's handwriting).

25 Exhibit 3, pp. 142-43.

26 *Id.*, pp. 146-47.

Judgment should be granted and plaintiff's Complaint against CERC should be dismissed with prejudice.

## LAW AND ARGUMENT

### I. SUMMARY JUDGMENT STANDARDS

"Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.'"[27] While this Court must consider the evidence in the light most favorable to the party opposing the motion, that party may not rely on mere allegations in its pleadings to rebut the movant's claims that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.[28] Facts must be viewed in the light most favorable to the non-moving party only if there is a "genuine" dispute as to those facts.[29] When opposing parties tell two different stories, one of which is patently contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.[30]

### II. PLAINTIFF CANNOT ESTABLISH ESSENTIAL ELEMENTS OF HIS FCRA CLAIM AGAINST CERC

#### a) Applicable FCRA Standards

Summary judgment is proper because plaintiff cannot establish essential elements of his FCRA claim. Although FCRA primarily regulates consumer reporting agencies, the statute also

---

27 *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 482 (5th Cir. 2000) (quoting Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986).

28 *Caboni v. General Motors, Inc.*, 278 F.3d 448, 451 (5th Cir. 2002) (citing *Spivey v. Robertson*, 197 F.3d 772, 774-75 (5th Cir. 1999)).

29 *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).

30 *Id.*

creates obligations on "furnishers of information" to provide accurate information to those reporting agencies.[31] Section 1681s-2(b) of FCRA creates a private cause of action against furnishers who fail to comply with FCRA's requirements once they have been notified of a dispute.[32] Upon receiving notice from a CRA that a consumer has disputed the completeness or accuracy of information on his credit report, the furnisher of the disputed information is required to (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the CRA in connection with the dispute; and (3) report the results of the investigation to the CRA.[33] If, after investigating, the furnisher determines that the disputed information is inaccurate, incomplete, or cannot be verified, it must promptly modify, delete, or permanently block the reporting of that information to CRAs.[34]

Accordingly, "[t]o recover against a furnisher under FCRA, a plaintiff must prove: (1) the furnisher provided incomplete or inaccurate credit information about plaintiff to a CRA; (2) plaintiff notified a CRA that this information in his or her credit report was inaccurate or incomplete; (3) the CRA notified the furnisher of the dispute; and (4) after receiving this notice, the furnisher failed to conduct a reasonable investigation, correct any inaccuracies, or negligently reported the results of its investigation to the CRA."[35]

As set forth below, plaintiff cannot prove CERC provided inaccurate information about him to a CRA, nor can he prove that CERC failed to conduct a reasonable investigation or

---

31 *Cano v. State Farm Mut. Auto. Ins. Co.,* 425 F. Supp. 3d 779, 792 (W.D. Tex. 2019).

32 *Spencer v. Specialized Loan Servicing, LLC,* No. 3:19-CV-1536-S, 2021 WL 4552548, at *5 (N.D. Tex. Sept. 1, 2021).

33 15 U.S.C. §§ 1681s-2(b) (West 2026).

34 *Id.*

35 *Block v. Real Time Resols., Inc.,* No. 3:20-CV-01592, 2021 WL 2559260, at *8 (W.D. La. June 8, 2021).

negligently reported the results of its investigation. Therefore, CERC's Motion for Summary Judgment should be granted.

**b) CERC Did Not Provide Inaccurate Credit Information About Plaintiff to any CRA.**

Plaintiff cannot prove an essential element of his claim against CERC because CERC did not provide inaccurate credit information about plaintiff to any CRA. Plaintiff contends that CERC reported inaccurate credit information about him because he never lived at the Baytown Address and did not owe the debt to CERC.[36] However, plaintiff's residency at the Baytown Address is established by CERC's records, and by other documentary evidence, including a lease, an extension of the lease, eviction pleadings filed by the property owner, a Texas driver's license, and a letter sent by plaintiff bearing the same address.[37] Thus, the information reported by CERC was not inaccurate.

Plaintiff's testimony to the contrary is so thoroughly contradicted by the record that it does not create a genuine issue of material fact for summary judgment purposes. "Self-serving allegations are not the type of significant probative evidence required to defeat summary judgment."[38] "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ... summary judgment."[39]

---

36 Rec. Doc. 336, ¶¶ 35, 36.
37 See *supra*. Exhibits 1, 2, and 3, and related deposition exhibits.
38 *Koerner v. CMR Constr. & Roofing, L.L.C.,* 910 F.3d 221, 227 (5th Cir. 2018).
39 *Id.*

Plaintiff's claim that he never lived at the Baytown Address is contradicted by CERC's records.[40] It is also contradicted by extensive public records, records from plaintiff himself, and records from neutral third parties, including plaintiff's Texas driver's license, a letter he sent to one of the CRAs, and leases and eviction pleadings related to the Baytown Address.[41] Although plaintiff denied that he signed the lease and lease extension, the handwriting and signatures clearly match the handwriting and signatures on other documents he has submitted.[42] Furthermore, to obtain an original Texas driver's license, plaintiff had to present two documents bearing his name and the Baytown Address.[43]

The record so thoroughly contradicts plaintiff's unsupported statements that no reasonable juror would believe it. Accordingly, plaintiff's testimony does not create a genuine issue of material fact for summary judgment purposes.

This Court has previously granted summary judgment in the face of unsupported plaintiff contentions that were contradicted by the record. See *Koerner v. Vigilant Ins. Co,* 2017 WL 4682295 (West 2017), *aff'd*, 910 F.3d 221 (5th Cir. 2018). In *Koerner*, the plaintiff brought claims alleging improper roof repairs.[44] The defendant responded with a motion for summary judgment based on peremption, arguing that the project had been completed more than five years before

---

40 See *supra.* Exhibit 1, 2 and Attachments.

41 See *supra*. Exhibit 3 and related deposition exhibits.

42 Exhibit 3, Deposition Exhibit 30 pp. MRH-BURCHES-006-008, Deposition Exhibit 31, p. 2, deposition p. 101 and Deposition Exhibit 21, Rec. Doc. 47, Plaintiff's Affirmation in Opposition to Defendant Wayfair LLC's Motion to Dismiss, p. 5 (envelope bearing plaintiff's handwriting). This Court may determine that plaintiff's handwriting and signature on these documents are genuine by comparing them with the handwriting and signature on other documents known to be genuine, or distinctive characteristics taken in conjunction with surrounding circumstances. *United States v. Wylie,* 919 F.2d 969, 978 (5th Cir. 1990), *United States v. Binzel*, 907 F.2d 746, 750 (7th Cir. 1990), Fed. R. Evid. 901(b)(3), 901(b)(4) (West 2026).

43 37 Tex. Admin. Code § 15.49 (Lexis 2026).

44 *Koerner*, 2017 WL 4682295 at * 1.



2306190

plaintiff filed suit.[45] Plaintiff claimed it was his "understanding" that the repairs had been completed four years earlier, not five years earlier.[46] However, the court found that "upon closer examination, the record belies [plaintiff's] belief," because there were documents showing that the project was "closed" five years earlier.[47] Thus, the court found plaintiff's claims were perempted and granted summary judgment for the defendant.[48]

In this case, plaintiff's claim not to have lived at the Baytown Address are similarly contradicted by the record. Numerous documents establish plaintiff lived at the Baytown Address at the time in question, including CERC's records, plaintiff's Texas driver's license, his letter to TransUnion, his lease and lease extension, and the eviction records relating to the Baytown Address.[49] Thus, plaintiff cannot establish a genuine issue of fact to suggest that CERC reported inaccurate information to the CRAs.

**c) Alternatively, CERC's Investigation Was Reasonable as a Matter of Law**

Furthermore, plaintiff cannot prove that CERC failed to conduct a reasonable investigation, failed to correct inaccurate information, or negligently reported the results of its investigation. Whether an investigation is unreasonable is a question of fact, and the burden of showing unreasonableness is on the plaintiff.[50] However, "courts can determine as a matter of law that an investigation by a furnisher of information was reasonable under the circumstances."[51] Because a

---

45 *Koerner*, 2017 WL 4682295 at * 1.
46 *Id*. at * 6.
47 *Id*.
48 *Id*. at * 10.
49 *See supra.* Exhibits 1, 2, 3.
50 *Spencer v. Specialized Loan Servicing, LLC,* No. 3:19-CV-1536-S, 2021 WL 4552548, at *8 (N.D. Tex. Sept. 1, 2021).
51 *McCoy v. SC Tiger Manor, LLC,* No. CV 19-723-JWD-SDJ, 2022 WL 6845990, at *8 (M.D. La. Sept. 23, 2022).

furnisher's obligation under § 1681s-2(b)(1)(A) arises when it receives a notice of dispute from a CRA, the relevant inquiry is "whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute."[52] Where a defendant has a reasonable procedure for conducting investigations, and follows that procedure in a plaintiff's case, the investigation is reasonable.[53] Section 1681s-2(b)(1) does not mandate that the information be deleted from a consumer's credit reports on account of the dispute, particularly where the furnisher did not report inaccurate information in the first place.[54]

CERC has a procedure for handling disputes, which it followed in plaintiff's case. When a consumer reports a disputed debt to a CRA, the CRA notifies CERC's third party vendor, First Collection Services, via e-OSCAR (Online Solution for Complete and Accurate Reporting).[55] First Collection Services then notifies CERC of the dispute, investigates the dispute, and responds to the CRA.[56] CERC's records reflect that it responded via this process to several inquiries from TransUnion and Experian regarding plaintiff's debt between August 2024 and March 2025.[57] The records also reflect that CERC responded to subsequent direct inquiries from plaintiff, and confirmed that the debt was valid and the balance was still outstanding.[58] CERC also sent plaintiff an identity theft affidavit but he never responded.[59]

52 *Spencer*, 2021 WL 4552548 at * 8.
53 *Id.*
54 *Id.* at * 9.
55 Exhibit 2, CenterPoint Energy Resources Corp.'s Second Supplemental Answers to Plaintiff's First Set of Interrogatories, Second Supplemental Answer to Interrogatory No. 9 and CPDOCS-BURCHES-000062-63.
56 *Id.*
57 *Id.*
58 Exhibit 2, Second Supplemental Answer to Interrogatory No. 9 and CPDOCS-BURCHES-000062-63
59 *Id.*

Based on the foregoing, CERC's investigation of plaintiff's dispute was reasonable. CERC responded to every inquiry from the CRAs, responded to inquiries from plaintiff himself, and provided plaintiff with an identity theft affidavit that he never returned. Thus, there is no genuine issue of material fact regarding the reasonableness of CERC's investigation, and summary judgment should be granted.

## CONCLUSION

Plaintiff cannot prove essential elements of his claim against CERC because CERC accurately reported his debt to the CRAs, and CERC's investigation of plaintiff's dispute was reasonable. Plaintiff's assertions to the contrary are so thoroughly contradicted by the record that no reasonable jury could believe him. Accordingly, CERC prays that its Motion for Summary Judgment be granted, and that plaintiff's claims against CERC be dismissed with prejudice at plaintiff's cost.

Respectfully Submitted,

PLAUCHÉ MASELLI PARKERSON LLP

*/s/ Scott H. Mason*

James K. Ordeneaux (#28179)
Scott H. Mason (#29329)
701 Poydras Street, Suite 3800
New Orleans, LA 70139
Tel: (504) 582-1142
Fax: (504) 582-1172
jordeneaux@pmpllp.com
smason@pmpllp.com
COUNSEL FOR CENTERPONT ENERGY RESOURCES CORP.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading has been served upon all counsel of record on this 3rd day of November, 2026 via the Court's CM/ECF system, which will send notification of such filing to all counsel of record. I further certify that a copy of the foregoing was sent via e-mail to Taiujuan Burches, *Pro se plaintiff*, at taiujuan87@gmail.com.

*/s/ Scott H. Mason*

_______________________________