# In the Matter Of:

BURCHES V.TRANS UNION LLC ET AL.

2:25-CV-00804-SM-MBN

---

## TAIUJUAN BURCHES

*October 27, 2026*

---

EXHIBIT

3

ESQUIRE

DEPOSITION SOLUTIONS

*800.211.DEPO (3376)*

*EsquireSolutions.com*

A. It is never the same. Always different. It could be a day. It could be two days. It could be one week. It could be two weeks. It could be two months. Could be three months. Could be a year. It all depends. I travel from different sites. I'm a safety manager.

Q. Is that still what you do?

A. Correct.

Q. Do you own any other property?

A. Yes. I do own other properties.

Q. Okay. What, are they residential properties?

A. Just land.

Q. Is that also in Louisiana?

A. No, ma'am. It is in Mississippi.

Q. Do you have a mortgage on that property?

A. No, ma'am. I own it.

Q. Do you use email?

A. Correct.

Q. What is your email address?

A. Taiujuan87@gmail.com.

Q. How long have you had that email address?

A. I don't recall.

Q. Do you think you've had it for about 10 years?
A. I don't recall.
Q. Have you had any other email addresses in the last --
A. Yes, I have. Yes.
Q. What, what are those?
A. There are several. Burchesinc1@gmail.com, Aglobaltrainingacademy@gmail.com. Aglobalsafetygroup@gmail.com. Taiujuanlatorenburches@gmail.com. Aglobalunited.inc1@gmail.com. Burchesandr@gmail.com. To my knowledge, that is all that I can think of at the moment.
Q. What is your phone number?
A. 832-946-1754.
Q. How long have you had that number?
A. I don't recall.
Q. Have you had it 10 years?
A. I really don't recall.
Q. Have you used, or excuse me. Does anyone else have access to this cell number?
A. Depends if we are on a job site and I have a crew, yes. It is a company phone. So it

the record.

BY MR. MASON:

Q. Good afternoon, Mr. Burches. My name is Scott Mason. I represent CenterPoint Energy Resources Corp. Can you hear me okay?

A. Yes. I can hear you, but I can't see you.

Q. You can't see me?

A. I see you now. Yes, sir.

Q. Okay. All right. Do you see me now?

A. Yes, I can.

Q. Okay. Good. I'm going to get into some documents, and let me share my screen real quick. All right.

Can you see a letter with your name and address at the top?

A. I can see it.

Q. You can see it?

A. Correct.

(Deposition Exhibit 21 marked for identification.)

Q. Okay. Good. I'm going to mark this as Exhibit 21. And it looks like it is a letter from you to TransUnion. It is dated, with a fax header at the top, of August 23, 2024. Does that sound

correct?
A. That is what it says. Yes.
Q. And that is your date of birth. I have it blacked out partly. But that is your birth year?
A. Yes, it is.
Q. And that is your, last four of your social?
A. Yes, it is.
Q. Okay. Thank you. And I'm not going to go through all the details in it because it has a number of accounts. I just really wanted to get to the date and signature just to verify. Is that your signature there?
A. It looks like it.
Q. And your handwriting where the date is?
A. Again, it looks like it.
Q. Okay. And again, other than the blackout, as best as possible everything but the last four. Is that your signature on that Social Security card?
A. Again, it looks like it.
Q. You say it looks like it. I mean, is it or not?

A. I can't, we both see what we see.
Q. Okay.
A. Yeah.
Q. Are you saying it may not be?
A. I can't say that. All I can say right now, it looks like it. All I can tell you, it is what it is right there. We all can see what is going on.
Q. All right. Is that a copy of your Louisiana driver's license?
A. It looks like it.
Q. All right. And again, is that your signature on it?
A. It looks like it.
Q. Is that how you sign your name?
A. Yeah. Partially. Yeah. Like I say, again, it looks like it.
Q. All right. What about at the top of this CFPB complaint that's attached to your letter, is that your signature?
A. Again, it looks like it.
Q. All right. But you don't know if it is?
A. Just from looking what I'm seeing right now, off eye vision.

Q. Well, did you, let me go back to the top first. Did you submit this letter to TransUnion around August 16, 2024 or not?
A. I don't recall.
Q. You don't recall.
A. There's been so many, I paid so many people, I don't recall.
Q. But you don't know whether that is your signature in all these places on the document?
A. I said it looks like it.
Q. All right. What about that handwriting, is that your handwriting?
A. It looks like it.
Q. Is it yours or not?
A. Again, it looks like it.
Q. All right. So, but you don't know whether you actually submitted this letter or wrote that envelope?
A. There's been so many, I can't recall.
Q. Are you disputing, these are TU Bates numbers and they came from TransUnion's file. Are you saying that you are disputing whether they received a letter from you or not?
A. No. I'm not. All I said, it looks like it.

(Deposition Exhibit 22 marked for identification.)

Q. I've moved on to what I'm going to mark as Exhibit 22. These are your answers to CenterPoint Energy's interrogatories. Do you recognize that?

A. Looks familiar.

Q. And I'm not going to ask you about all of these. I just have questions about a couple in particular.

A. Okay.

Q. No. 4, you were asked to identify all your places of residence in the past five years. Then you say your permanent residence at that time was that Richard Road address. Correct?

A. Correct. Permanently. Yes, sir.

Q. All right. And you stayed at temporary locations, including temporarily in Houston. Correct?

A. Yes.

Q. And let's go down to No. 5, because it asks a little bit more specifically about your Texas residency, dates and addresses of your residency in Texas. You say temporarily in the Houston, Texas area. Did I read that right?

A. Correct.

Q. All right. And your permanent address at that time remained at the Richard Road address?

A. Yes, sir. It did.

Q. Okay. And you said whatever Texas stays were temporary and were not permanent residences or domiciles. Did I read that right?

A. Correct. Yes, sir.

Q. All right. You were asked about dates and addresses here. And I don't see that you provided any dates or addresses of residency in the Houston, Texas area. Can you tell me now what dates you temporarily lived in the Houston area and what places?

A. Mainly hotels, unless staying by a friend or associate. But I do not recall any exact addresses because I didn't stay there for long periods of time. Again, I want to stress the issue, I'm a construction worker. I travel for work. We are always at different locations, as I am right now. So traveling and working is different. And it goes for different situations, and mine, too. I might go on a turnaround maybe for a day, maybe for two days. Maybe for a week. Maybe for two weeks. I might meet somebody there that come on a job site, with someone

who already has a residence and can stay with them for a couple days. You know what I'm saying. Or I might go on, I might come late and get a hotel. Or I might come and do time if someone already has a hotel. Working with somebody, save money, because we are all working temporarily. This is not permanent. Never was permanent. So all those addresses are in Texas was because of me staying there because of work. Only work.

Q. What was the first time you stayed temporarily for work in the Houston area?

A. I do not recall. I've been doing this type of work since, I'm assuming 2011. But I cannot recall the first time I actually stayed in Houston, Texas.

Q. Okay. Can you estimate within, like was it the past five years?

A. No, sir. I know it was longer than that. Correct. Like I say, I been doing work since 2011. So I know it's been longer than that. I just can't give you an exact roundabout.

Q. It was longer than five years or less?

A. I would say, yeah. Longer than that. As a workman, correct.

Q. So you haven't temporarily stayed or

lived in Texas in at least five years?

A. Regular, no, live, no way, I live. Work, yes. Not live.

Q. Okay. What is your best estimate of the last time you stayed temporarily in Texas, or the Houston, Texas area?

A. I don't recall.

Q. All right. Now, let's go back to your answer here. You said temporary, temporarily in Houston. Temporary. But you know you did not reside at 8831 Wooster Trails Drive. That's right?

A. Right.

Q. So you deny you ever lived at that address?

A. Yep. Correct.

Q. All right. And you say exact dates and locations of temporary lodging are being investigated and will be supplemented.

Did you do any further investigation into your exact dates and locations of any temporary residency in Texas in submitting these answers?

A. I can give you some cities. But locations, exact locations, no, I cannot. And this come from my research. I said I lived in Baytown. Again, I did a job in Baytown before at the Exxon. I

stayed at a hotel nearby there. I did several jobs in Baytown. But the most recent one was a shutdown in Baytown, maybe six, seven years ago. I worked in Pasadena, Texas a lot. I worked in Freeport, Texas a lot. Houston, Texas a lot. I traveled to, I'm going to say Jasper, Texas. I think it is Jasper, Texas. Let me think. Freeport, I said Freeport.

Q. Yeah. What documents did you consult in doing this investigation?

A. Just asking around people, the guys I work with, like I said, in the field.

Q. Who were some of the people --

A. Sir?

Q. Who were some of the people you asked?

A. That is friends on Facebook. I can find them and send it to you. Several guys. Chris Ciperin. One of the guys I worked with before on a job in Freeport.

Q. Would you mind spelling his last name for us? I don't think I --

A. To be honest with you, I don't know how to spell it. Certain names, you go on a job site, I just know them by name. I just know his last name is Ciperin. But I don't know how to spell it. I can probably get it for you. Another guy, Edward,

I was on a job with Edward before. Louis, Louis Brown.

Q. Were these all coworkers of yours?

A. Yes. Guys I worked with prior. Yeah.

Q. Do you remember what company Chris Ciperin worked with you?

A. Don't make me lie. We go job site to job site. Company to company. Like when you are doing construction, you just go with whoever was hiring this morning. You drag up and go to another company on any given day.

Q. Was he affiliated with a company like you, or were you already under Burches, Inc. at the time?

A. No. I was not.

Q. What company were you operating under?

A. I was just, I've been freelancing. But I don't know exactly what company I was with at the moment me and him worked on the last job together.

Q. So you and him, did you work for the same company?

A. Prior, before we have.

Q. What company was that?

A. I can't recall.

Q. What about Elwood, were you and him affiliated with a company?
A. Edward.
Q. Edward. I'm sorry. I misheard you.
A. It's another guy I met on a job site. Me dealing with safety, do a lot of talking with everybody. So I usually end up meeting a lot of people on job sites. Some you relate to, some you can't.
Q. Okay. And then you mentioned, the last name you mentioned was Louis Brown.
A. Yeah. Louis Brown.
THE REPORTER:
Wait. Wait. You guys are talking over each other. Start over.
BY MR. MASON:
Q. I apologize. The name you recalled, Louis Brown, what company was he associated with?
A. I did a lot of work for him. He is with Comfort Air. Not in the Houston area. But I did a lot of work for him before, a lot of safety work.
Q. Do you have addresses or telephone numbers for either of those, any of the three people you mentioned?

A. No.
Q. And aside from Comfort Air, is there any other company that either you or them work for that you can identify for us?
A. Not that I can recall.
Q. Can you identify the names of any hotels, even if not by address, just like the names of properties anywhere, in either Baytown, Pasadena, Freeport, Houston, Jasper, any of the places you've named?
THE REPORTER:
I didn't hear an answer.
THE WITNESS:
Not that I can recall at the moment. I'm sorry about that.
BY MR. MASON:
Q. Okay.
A. Yeah.
Q. What was the longest period of time that you stayed temporarily in any of these cities in Texas during this time period?
A. I don't recall.
Q. Did you ever sign a lease to rent a, any property on like more than a month, more than one-month basis anywhere in Texas?

A. Not that I recall.
Q. The last thing before we move on from this set of answers to interrogatories, executed on September 14, 2026. Did I read that right?
A. That's what it says, yeah. Yes. That is what it says. Yes. That is what it says.
Q. Okay. And is that your signature on the, on these responses?
A. Yes. It looks like it.
(Deposition Exhibit 23 marked for identification.)
Q. Thank you. And we are on Exhibit 23 now. And does that appear to be a copy of a Texas driver's license?
A. It's a copy of a Texas driver's license.
Q. Is that a copy of a Texas driver's license issued to you?
A. Yes, it is.
Q. Okay. And that has your correct date of birth on it?
A. Correct.
Q. And the date of issuance, July 24, 2023, did I read that right?
A. Yes, sir, you do.

Q. Okay. And it has the address listed as 8831 Wooster Trails Drive, Baytown. Right?
A. That is the address on the driver's license. It is.
Q. Is that your signature on that driver's license?
A. It looks like it.
Q. Okay. Did you apply for this driver's license?
A. Yes, I did.
Q. All right. And when you applied, did you tell the DMV that 8831 Wooster Trails Drive, Baytown was your residence address?
A. I don't recall.
Q. Was that your residence address at that time in 2023?
A. No, sir. It was not. It was an address that was given to me by a coworker to obtain the driver's license.
Q. By a coworker?
A. Correct.
Q. Who was that?
A. I don't recall.
Q. So you asked a coworker for what, for an address?

A. Correct. Because I needed a driver's license.
Q. And what did you need it for?
A. Different uses. Didn't have my driver's license and the only I could get it was to go back home. He said he could give me a driver's license to use. I said I need it. I used it once to get my driver's license and used it again for school. Did you hear me? I can start over. I'm sorry.
Q. No. I heard you. You said you used it once. And then for what? What did you need it for, for that first time that the coworker gave it to you?
A. I didn't have a driver's license. I had lost my wallet. I didn't have a driver's license. I lost my wallet.
Q. Okay.
A. Yep.
Q. Where, what in particular at this time? This is July of '23. But like what in particular did you need a driver's license for?
A. You got to have driver's license when you are driving.
Q. Why, why a Texas driver's license?
A. Because I was in Texas at the moment.

Q. You were in Texas at the moment?
A. Right.
Q. So July 24, 2023, you were in Texas at the moment. For what?
A. A job, I'm assuming. I met him on a job site. I just told you I met him on a job site. So I can't tell you what I was doing at that very moment. But I was in Texas on a job site.
Q. Okay. You don't know what company?
A. No, sir. I do not.
Q. And what was the nature of the job?
A. I don't recall.
Q. Okay. Don't recall the nature of the job or the company or the person?
A. Correct.
Q. Is that right. Okay.
A. Yeah. A lot been going on since then.
Q. How long were you there for whatever job this was?
A. I don't recall.
Q. Do you think it was more than a week?
A. I can't tell you. Give you an answer. I don't recall.
Q. What city in Texas was this job you were getting this license for?

A. I don't recall. But it had to be nearby because I left and went to the DMV.
Q. Did you live someplace else in Texas at this time? July, I'm talking about July of '23 when this was issued.
A. I only lived in Louisiana. Was I at a location because of work, yes. I apparently had to be, because I was there working and I also obtained a driver's license in Texas.
Q. You mentioned during the course of this discussion, you also used it later for school. Tell me about that. When did you use it for school?
A. When you is in school, if you are in state, it is cheaper to be in state when using, to apply for school. It is just cheaper. By using a Louisiana address, my permanent residence address in Louisiana, the tuition would've been higher. Out-of-state fees. Sir?
Q. No. I cut you off. Sorry. Finish that answer.
A. I already had the Texas driver's license. So why not apply, why not use it for school and I can save money on fees.
Q. And what school did you use it for?
A. I don't know. I think I was going to,

I don't recall. But I'm assuming it could've been HCC.
Q. Houston City College?
A. Correct. Houston Community College. Yeah.
Q. Are there any other schools in Texas you ever attended besides Houston City College?
A. No. Not that I recall.
Q. So you, did you tell Houston City College then that you lived in Texas for purposes of tuition?
A. I don't recall.
Q. Well, isn't that what you just, didn't you just explain that was the reason for using your Texas driver's license?
A. Yes. But the question that you asked me was, did I tell Houston Community College that was my reason, no. I don't recall. I did not tell, I don't recall telling Houston Community College that. But did I tell you that just now, yes, I did. But I don't recall telling Houston Community College that.
Q. Okay. Did they ever --
A. Excuse me.
Q. Did they ever as part of their application process when you are determining what the

tuition is, do they ask if you are a Texas resident?
A. I don't recall.
Q. So how, how would they have known to apply, charge you cheaper tuition if they didn't ask you that?
A. I didn't work on that end.
THE REPORTER:
I didn't understand you. What did you say?
THE WITNESS:
I did not work on the other end, on the admin side. So I don't know.
BY MR. MASON:
Q. All right. So, so you just don't recall whether or not you told them you lived in Texas when you applied?
A. Correct. I guess they asked something about a driver's license.
Q. So you did submit that driver's license as part of the application process?
A. I did it in person. So I'm not sure if I submitted it or was it in person. I'm not sure.
Q. Do you remember when that application was submitted?
A. I do not recall.

(Deposition Exhibit 24 marked for identification.)

Q. All right. Let me move on to what I'm going to mark as Exhibit 24. These are answers to, these are further supplemental answers to TXU Energy Retail's interrogatories 7 and 8. Let me just go to the end first.

Is that your signature on this verification?

A. Probably. Yeah.

Q. Is it or not?

A. I said it looks like it.

Q. But you can't say whether or not it is your signature?

THE REPORTER:

Wait. You guys are talking over each other. One at a time.

BY MR. MASON:

Q. Sorry. You can't say whether that is your signature or not?

A. Again, it looks like it.

Q. Okay. It is 9-20, it says executed 9-24-26. Did I read that right?

A. Yes.

Q. Okay. And I wanted to go to answer to

No. 8. This also asked about dates and addresses. I have stayed, I stayed in Pasadena and Houston, Texas intermittently for work approximately February '20 through January 2022.

Did I read that right?

A. Yes. That is what it says on the paper.

Q. Is that an accurate statement of when you stayed in Texas intermittently?

A. I don't personally recall every specific lodging address or a precise date. I also do not presently recall whether I additionally stayed in Texas before February 2020 to '22nd. I don't recall.

Q. So you, wait, is that, so is this answer correct or not?

A. Yes. The answer is very correct. Where I said I do not, I also do not. I'm telling you just what it is. I don't recall. So as far as my recalling, yes, it is. Because I do not recall.

Q. What are you saying you don't recall? Is there something about this answer that you don't recall?

A. The date, the exact dates. The exact dates, the exact dates.

Q. All right. Well, you verified under oath that you stayed in Pasadena and Houston from approximately February 2020 to January 2022. So now you are saying you don't recall?

A. No. I said, no, the exact dates. Approximately, yes. I did stay there approximately around those dates. I did. Correct. You are correct. Approximately, February '20 through January '22nd, I stayed there approximately around those dates for work.

Q. All right. Do you maintain a LinkedIn page?

A. Correct. Yes I do.

Q. And have you listed your work and education experience on that page?

A. Yeah. On and off. More now, present than ever, but, yes.

(Deposition Exhibit 25 marked for identification.)

Q. Okay. I'm going to mark as Exhibit 24, or I'm sorry. 25. This is, I'm going to represent to you this is a page from your LinkedIn account that deals with the education section.

Did you list your education history on your LinkedIn page?

A. That is what I thought was correct on my LinkedIn page. Yes. I did.
Q. All right. And this starts with Columbia Southern, Master of Science. Is that something, is that a program you are in now?
A. Correct. Yes.
Q. Okay. And then you talked earlier about your Columbia bachelor's --
A. Yes, sir.
Q. -- in 2026. So that is consistent with what you told us. Right?
A. Approximately. Because it says '26 to '26. I know I didn't start school in '26 and graduate in '26. It is a bachelor program. So I know I didn't. Everything on here is approximately, like, not accurate.
Q. Did you also get an Associate of Applied Science from Columbia Southern as it says there?
A. Yes. Again, dates are not accurate.
Q. And next we have Houston City College. It looks like, it says here, Associate of Arts, multi-disciplinary studies. Is that a degree you got from Houston City College?
A. Yes. Again, dates are not just

accurate.

Q. So this is what, June 2024 to July 2025, you are saying that is not accurate?

A. Not all of those dates are accurate.

Q. What are the accurate dates that you went to Houston City College? Do you know?

A. I don't recall at the moment. All of those was online.

Q. So did you ever physically live in Houston City, in Houston during the time period listed here, June 2024 to July of '25?

A. The word live, correctly. I did not live there none of those dates.

(Deposition Exhibit 26 marked for identification.)

Q. All right. I want to ask you now about what I'll mark as 26. This is a letter, Bates number TU 7. It appears to be a letter to TransUnion. Did you send this letter?

A. No, sir.

Q. You didn't send this?

A. I don't recall.

Q. Okay. You did send them a letter where you listed your addresses?

A. I do not recall.

Q. Okay.

A. No, sir.

(Deposition Exhibit 27 marked for identification.)

Q. All right. We will mark as 27, this is a letter from CenterPoint Energy to you dated August 30, 2022, about a security deposit.

Did you ever receive this letter?

A. No, sir.

Q. All right. So you never received anything saying that CenterPoint had checked your utility score and determined that a cash deposit was needed? You never got a letter to that effect?

A. I received it, no, sir. I did not.

Q. You haven't seen this letter before it was produced in this case?

A. No, sir. I did not.

Q. So you, CenterPoint never asked you for a security, a cash security deposit?

A. Not my knowledge.

Q. Okay. And you never paid a security deposit?

A. Not willing. Not to my knowledge. I have not. Me, personally, no.

(Deposition Exhibit 28 marked for

identification.)

Q. Well, let's move on to what I will mark as 28. And this is an invoice. Date, September 7, 2022. It say it was mailed to you at 8831 Wooster Trails Drive, Baytown, Texas.

Did you ever receive this bill?

A. No, sir. I did not.

Q. You agree that the address on the letter of this bill is the same address that appears on your driver's license. Right?

A. Correct. It is.

Q. Did you ever authorize somebody else to open up an account with CenterPoint at this address?

A. No, sir. I did not.

Q. The coworker who gave you this address, and you don't remember who that was, did you ever ask where he got that address?

A. No.

Q. All right. So it is your testimony you never received this invoice?

A. Right.

(Deposition Exhibit 29 marked for identification.)

Q. Let's move on to 29, Exhibit 29. This

is going to be a final invoice dated April 13, 2024. Again, this is directed to you with the same service address, at Wooster Trails Drive, Baytown, Texas.

Did you ever receive this invoice?

A. No. I do not recall.

Q. And is it your testimony that you just, you never opened an account with CenterPoint at any time during the time period of August of 2022 through April of 2024?

A. Not only have I never opened it, I never authorized anyone to open it.

Q. Did you ever call CenterPoint concerning that account at any time during that time period?

A. No, sir. I did not call CenterPoint at all. Not in this, not concerning this time period. But I did call CenterPoint once I did find out about it on my credit. When, I don't recall.

Q. You don't remember when you found out about it on your credit?

A. No. But I know once I did find it about it on my credit, I did reach out to them. Because it was now on my credit affecting me. I started receiving mail at the 42520 Richard Road address.

Q. So you never called CenterPoint at any time prior to this final bill being issued in April of 2024?

A. No. I don't recall. I only found out about it once when it became a negative item reported on my credit, again.

Q. All right. And so it is your testimony you've never resided at 8831 Wooster Trails Drive, Baytown, at any time?

A. No. I lived at 42520 Richard Road, Ponchatoula, Louisiana. That is my only address, permanent address.

(Deposition Exhibit 30 marked for identification.)

Q. I'm going to move on to what I'm going to mark as Exhibit 30. And this is a set of certified records from ManageRentHouses.com. Have you seen these documents before?

A. You sent them to me. Yes, sir. I did see them.

Q. All right. So it's got an affidavit. And we will go through them one by one. But I've got them marked as MRH-Burches-001 through 26. So let's just start, the first page of the documents themselves.

Did you ever retain a real estate agent in the Houston area named Sheena Ayers?
A. I did not.
Q. You've never met that person?
A. No. I did not. If I did met her, it wasn't dealing with nothing like anything we are dealing with right now.
Q. What do you mean? Like when else would you have met her?
A. I met a lot of people. Just in general, meet people. Yes. But no. Have I have met her, or anyone else, type of realtor dealing with me or anything at that address, no. I did not.
Q. Well, do you remember meeting her in some other context?
A. No. I'm saying I just meet a lot of people. I talk a lot. But no. I do not.
Q. You never meet Sheena Ayers?
A. Not to my knowledge. I don't recall.
Q. Never spoken to her on the phone?
A. Don't recall.
Q. Ever submitted a written application to her company?
A. I don't recall.
Q. Let me go down to page

MRH-Burches-006. Is this your handwriting on this lease application?

A. I don't recall. I just see handwriting.

Q. This is not yours?

A. I do not recall.

Q. What do you mean you don't recall? I'm asking you, you are looking at something right in front of your face. Is it or not?

A. I can't say yes or I can't say no.

Q. You can't say --

A. Did I write it, no.

Q. You didn't write this?

A. Correct.

Q. Is that your email?

A. I can't say. Correct.

Q. And you were using that email address, let me go back. Let me go to the last page of this so we know the date. You see that signature and date there?

A. Yeah.

Q. Is that your signature?

A. I can't say yes or no.

Q. You can't say it is yes or no?

A. Correct.

Q. Okay. I mean, are you denying that is your signature?
A. I said I can't say, yes, it is my signature. I can't say yes or I can't say no. I've seen a lot of other signatures here, also. Like I said, I can't.
Q. I'm asking, are you denying that this is your signature?
A. Again, I can't say yes or no from looking at it. And this is what I can tell you, I can't say yes or no.
Q. Why not?
A. I'm looking at it. I can't say yes, it is mine or it's not from looking at it. But what I do know is, I did not fill it out. That is what I do know. Did I write this, no. I did not. Did I write this, no.
THE REPORTER:
Wait, wait. You guys are talking over each other. Start over.
THE WITNESS:
Did I write this, no.
BY MR. MASON:
Q. So you didn't write this, but you don't know whether that is or isn't your signature?

A. Correct. But I didn't write it for a fact.
Q. In May of 2022, was that your email address, taiujuan87@gmail.com?
A. Yes, sir. It was.
Q. Was that your home phone number that is listed here?
A. 832-946-1754. Yes. That is the business phone number.
Q. And are those the correct last four of your Social Security number?
A. It looks like it says, it look like 2812. And if it is, yes, it is.
Q. This says that other person who would occupy this property included Chase Burches, son, age 12. Do you have a son named Chase?
A. Correct. I do. Never stayed. He been with his mother forever. So I know that is not correct.
Q. Was he 12 years old around the time this application was submitted around 2022?
A. What month was it?
Q. May 28, 2022.
A. May 28. Yeah. He makes, his birthday is May 29th. Yep.

Q. So that would've been about roughly an accurate statement of his name and age at that time?
A. Yeah. Correct.
Q. And this was your residential address at the time. Right?
A. Permanent. Yes, sir.
Q. Okay. This asked about a landlord or a property manager named Vicky. Who is Vicky?
A. I don't even know who is that.
Q. Did you authorize somebody else to submit this application on your behalf for this residency in Texas?
A. No, sir. I did not.
Q. So how do you think somebody had this much personal information about you and submitted an application at this time?
A. I don't know.
Q. You have mentioned a company Aglobal before. Right?
A. Correct. Yes.
Q. All right. So whoever submitted this application also knew your employment information. Is that correct?
A. Not mine.
Q. Was that your correct employment

information at that time?
A. No. It is a company I own.
Q. Okay. Did you own it in 2022 when this application was dated?
A. Yes. I owned it. I never was, yeah. I had a position of fitter on there. Aglobal does not do pipe fitting. That is on there, I can't even read the phone number. I don't know who that phone number is attached to.
Q. Who is Pierre Warford? Is that somebody you know?
A. Yes.
Q. Who is that?
A. A friend of mine.
Q. Was he affiliated with the company Aglobal in 2022?
A. We was partners.
Q. Okay.
A. Uh-huh. Yep.
Q. All right. So before we move on from that, it is not your signature and did not, you didn't submit this application?
A. I did not submit this application for a fact.
THE REPORTER:

You did or did not? I did not hear you.

THE WITNESS:

I did not. I'm sorry. I did not submit that application.

BY MR. MASON:

Q. There is this residential lease, it is a 16-page document. So let me go to the bottom of it and just verify the date. Just give me a second.

A. Okay.

Q. All right. Looks, the best as I can tell is June 3rd, 2022. Although, there is no date next to your signature, at least the one that has your name. Did you E-sign this lease application?

A. I did not.

Q. Did you authorize anybody to do that for you?

A. No. I did not.

Q. Have you ever seen this lease application before being provided these documents earlier this week?

A. No, sir. No, sir.

Q. You've never spoken to or met somebody named Adjumo Adegboyega Saheed?

A. Not that I recall.

Q. Never met him or spoken with him?
A. Not that I recall.
Q. All right.
A. I don't even know how to pronounce the name.
Q. Okay. So you didn't lease the property listed on this lease at Wooster Trails Drive, Baytown, anytime between June 2022 and June 2023?
A. I did not. No.
Q. Are those your initials at the bottom of the pages of this lease?
A. It says T and a B. But I can't tell you. No. I do not. But it does say TB at the bottom of that page.
Q. All right. Did you initial this document?
A. No. I did not.
Q. Did you ever have any dealings, whether by phone, email, in writing, or in person with a company called ManageRentHouses.com?
A. Not me. No. I did not.
Q. You said not me. Did somebody else have any interactions with this company on your behalf?

A. Not under my behalf. But they had to because the document is in front of us. But on my behalf, no. I did not give anyone permission to do any of this on my behalf.

Q. Couple more questions about this. Part of the documents here contain a money order for $900, $940. Is that your handwriting on that money order?

A. No, sir. It ain't.

Q. Have you ever paid rent to a company ManageRentHouses.com?

A. Me personally, no. I have not.

Q. Has anybody else ever paid rent on your behalf to the company ManageRentHouses.com?

A. No. Not with my permission.

Q. Are you aware of anybody paying rent to ManageRentHouses without your permission?

A. Other than what I'm seeing, no.

Q. There is a second money order here for 800, I'm sorry. $2,050. And the remitter is Savannah Bilquist. Do you know a person named Savannah Bilquist?

A. I don't recall.

Q. Well, do you know somebody by that name or not?

A. I know somebody named Savannah. But by that name, no, I do not.

Q. You never met anybody, as far as you know, named Savannah Bilquist?

A. Not that I recall.

Q. Are you aware that she paid rent to ManageRentHouses for this property in Baytown, Texas?

A. Not that I recall. Other than what I'm seeing now.

(Deposition Exhibit 31 marked for identification.)

Q. Let me move on to another document I'll mark as Exhibit 31. And this is an Extension of a Residential Lease, effective July 20, or July 1, 2023.

Have you ever seen this document before?

A. No, sir. Not that I recall.

Q. All right. So you didn't sign a lease extension with you as tenant at Wooster Trails Drive?

A. No, sir. Not that I recall. Not me.

Q. Is that your signature on this document?

A. It is a signature that looks like mine.

Q. Is it yours?
A. I just told you I did not sign it. It is a signature that looks like mine, but I did not sign it. Correct.
Q. All right. So that's not your handwriting down here with that phone number and email address?
A. That is my phone number and that is my email address. No. I did not write it. No. It is not mine.
(Deposition Exhibit 32 marked for identification.
Q. I want to mark as Exhibit 32, this is a Petition for Eviction from the Justice of the Peace court in Harris County. Have you ever seen this before?
A. No.
THE REPORTER:
What was your answer?
THE WITNESS:
No. I have not.
BY MR. MASON:
Q. All right. So it is your testimony you never lived at this Baytown address that we are talking about. Right?

A. No, sir.
Q. You were never evicted from this property, either?
A. No, sir.
Q. So would you disagree with the statement in here that the rent was unpaid in April, May and June of 2024?
A. That is what it says. I can't say I agree with it. I'm just going off the document, I can't go off a document I never had anything to do with. You asked me.
Q. So you disagree --
A. Go ahead. I'm sorry.
Q. I'm sorry. So you disagree with what it says there?
A. I can't disagree with it, because I don't know what is going on with the property. I just can't just say what the documents says. You said it says that. I'm looking at it and it says that. But can I agree or disagree with it, it is not mine to agree or disagree with.
Q. Were you ever served with a notice to vacate the property at Wooster Trails Drive, Baytown?
A. No. I was not.
Q. Were you ever served with a notice

terminating the right of occupancy at this property?
A. No.
Q. So you've never, never seen that document before?
A. Correct. You are correct.
(Deposition Exhibit 33 marked for identification.
Q. All right. I'm going to mark as Exhibit 33, this is a default judgment in a case No. 243100273628, in Harris County, Justice of the Peace court.
Have you ever seen this before?
A. I don't recall.
Q. All right. Were you, you were never served with any notice of eviction for this?
A. I don't recall.
Q. Were you aware that there's a default judgment against you in the records of the Justice of Peace court, Harris County, giving you --
A. Is Harris County, Houston?
Q. I don't know. But this is --
THE REPORTER:
You guys are talking over each other. One at a time, please.
BY MR. MASON:

Q. So were you, so I guess the question is were you aware that there was a default judgment entered against you for failure to pay rent at this Wooster Trails Drive, Baytown, Texas address?

A. I do not recall.

Q. Do you remember when you first reported that the CenterPoint bill for living at this address was inaccurate?

A. I do not recall.

THE REPORTER:

I did not understand you.

THE WITNESS:

I do not recall. Again, multiple people been, just like anyone else, they are paying different people to fix their credit. I lie if I tell you when or the exact date that it started on. But do I remember personally, no. I not. I do not recall.

(Deposition Exhibit 34 marked for identification.)

BY MR. MASON:

Q. Well, since you first disputed the debt, did you ever file a report with the Houston Police Department alleging identity theft?

A. I do not recall. I knew there was a

FTC report. But the people who worked on my credit, I'm not sure if they have filed one on my behalf. But as far as me, I don't recall filing a police report. It's been years.

Q. So you never reported to the Houston police that someone stole your identity, or the Baytown police?

A. I don't recall. Because I had one of my vehicles stolen, one of my trucks stolen up there at one point as well. But I just don't recall what all I reported.

Q. Have you ever reported to any law enforcement agency anywhere that somebody has stolen your identity and lived at an address in Baytown, Texas?

A. I don't recall what I all put on the address. I mean, I don't recall what all I put on there. But, yes, I did file an FTC report. But I just remember like faxing it in or mailing it in. But I don't remember an exact police report.

Q. So no police report. Just what you are describing is an FTC report?

A. That I recall. Like I say, I do not recall filing a police report. I don't know what the people who were fixing my, fixing my credit, I don't

know what they did on my behalf. But as far as me, I don't recall.

Q. What you are describing, when you say an FTC report, and I'm sorry. Did you submit something to the FTC, the Federal Trade Commission --

(Talking simultaneously.)

A. Correct. I think the screenshot. But for some reason I don't have all the documents of it. And I've been searching for it. It's probably something I had sent in, right there. I'm thinking this right here was something that I made a copy of it. I sent it in with each one of my letters. So I didn't need to keep a copy for myself.

Q. So this document you produced, is this the only document you can identify as reporting identity theft to anybody?

A. That I can recall. Correct. But like I said, I don't know. As I can recall, correct. But I'm not sure what the other process was taking with other people who filed my report. But not my report, my, the people I was paying to fix my credit.

Q. So are you saying you don't have any longer this complete document?

A. As of right now. Prior to being found, like I said, I'm remember asking for documents

from several different lenders who I actually sent them to, that I know I sent them to, for verification and proof that they received it. But I know they was helping me, you know what I'm saying. By the law, so they can't withheld it from me. I asked for it. I haven't received it yet. But I know for a fact I had sent it in with my disputes. This copy right here, I know for a fact I sent it with my disputes. I sent one copy to, whoever the FTC is. I sent copies also for a fact, TransUnion, Equifax and Experian. Do I have the physical copy with me right now to show, no, I do not. I did not receive the full copy.

Q. Do you remember when this document that we have the screenshot of was submitted?

A. No. I do not recall. Like I said, there's been a lot going on. I do not recall.

Q. Have you ever reported to anybody else, apart from the defendants in this case, or that you did not live at the Baytown address that we are talking about?

A. No, sir.

Q. And you've never submitted anything to any law enforcement agencies disputing that you lived there?

A. This one I know I did for a fact.

Again, my truck was stolen. I don't know what all I asked to put in for the report. But I know I filed a report once my truck was stolen before. I had a work truck, it was stolen in Houston before, they found it at the junkyard. That's about all I remember on it. But again, I do not recall.

Q. What other evidence do you have that you did not live at this Wooster Trails Drive address at this time?

A. Say it again. I didn't hear. I'm sorry.

Q. What evidence do you have that you did not live at the Wooster Trails Drive address between May of '22 and April of '24?

A. Mail. My job. Witnesses, I guess. I know I wasn't there.

Q. What witnesses can you identify?

A. None at the moment. But I can just try to figure out people who was at the job site, who helped me on the job site who I can get in contact. At the moment, none of them. I just know I wasn't there.

Q. All right. But you can't identify anybody, sitting here today, that can say Taiujuan Burches did not live in Baytown, Texas between May of

2022 and April of '24?

A. At this moment, no. But not today, end of day.

Q. All right. I think those are my only questions I have.

A. Okay. Thanks.

Q. Thank you.

BY MR. OAKES:

Q. All right. I guess that is me next. Mr. Burches, Blake Oakes on behalf of TXU Energy Retail Company. And I'm going to ask some similar questions, and I may repeat some questions you've already been asked. But I'm going to try to go through this as efficiently and as quickly as I can.

A. Yes, sir.

Q. Mr. Burches, I think you've kind of covered this earlier today, but I wanted to get you to respond again. What, what did you do to prepare for today's deposition?

THE REPORTER:

I can't hear you.

THE WITNESS:

You asked me, I guess basic research. I just researched a couple things. I pulled different questions that we went over. Just the

REPORTER'S CERTIFICATE

I, Ruby Wallen, Certified Court Reporter, in and for the State of Louisiana, as the officer before whom this testimony was taken, do hereby certify that the witness, after having been duly sworn by me upon authority of R.S. 37:2554, did testify as set forth in the foregoing pages; that this testimony was reported by me in stenotype, prepared and transcribed by me or under my personal direction and supervision, and is a true and correct transcript to the best of my ability and understanding; that the transcript has been prepared in compliance with transcript format guidelines required by statute or by rules of the board, and that I am informed about the complete arrangement, financial or otherwise, with the person or entity making arrangements for deposition services, that I have acted in compliance with the prohibition on contractual relationships, as defined by Louisiana Code of Civil Procedure Article 1434 and in rules and advisory opinions of the board; that I have no knowledge of any contractual relationship, direct or indirect, between a court reporting firm and any party litigant in this matter, nor is there any such relationship between myself and a party litigant in this matter. I am not related to counsel or to the parties herein, nor am I otherwise interested in the outcome of this matter.

----------------------------
RUBY M. WALLEN, CSR NO. 78022

DATE: NOVEMBER 2, 2026

TAIUJUAN BURCHES

42520 Richard Rd

Ponchatoula, Louisiana 70454

Date of Birth:[redacted]/1987

SS#: 2812

TransUnion

PO Box 1000

Chester, PA 19022

08/16/2024

To Whom It May Concern:

In accordance with the Fair Credit Reporting act. The List of accounts below has violated my federally protected consumer rights to privacy and confidentiality under 15 USC 1681.

15 U.S.C 1681 section 602 A. States I have the right to privacy.

15 U.S.C 1681 Section 604 A Section 2: It also states a consumer reporting agency cannot furnish an account without my written instructions

15 U.S.C 1681c. (a)(5) Section States: no consumer reporting agency may make any consumer report containing any of the following items of information Any other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years.

15 U.S.C. 1681s-2 (A)(1) A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.

1. The following personal information is incorrect

Former: BURCHES,TAIJUAN

EXHIBIT
21

2. The following personal information is incorrect

Former: BURCHES,TIANUJUAN,L

3. The following personal information is incorrect

Former: BURCH,TAIUJUAN

4. The following personal information is incorrect

Also Known As: BURCHES,TAIJUAN

5. The following personal information is incorrect

Also Known As: BURCHES,TIANUJUAN,L

6. The following personal information is incorrect

Also Known As: BURCH,TAIUJUAN

7. The following personal information is incorrect

Previous Address(es): 5021 HOLLOWAY DR HOUSTON TX 77048

8. The following personal information is incorrect

Previous Address(es): 302 GROVE ST HOUSTON TX 77020

9. The following personal information is incorrect

Employers: NICHOLSON CONSTRUCTION

10. The following personal information is incorrect

Employers: ACCOUNTANT

11. The inquiry was not authorized

MERRICK BK

Date of Inquiry:10/13/2023

12. The inquiry was not authorized

NAVY FCU

Date of inquiry: 10/13/2023

13. The inquiry was not authorized

NAVY FCU

Date of inquiry: 10/13/2023

14. The inquiry was not authorized

SUMMIT CU

Date of inquiry: 06/05/2023

15. The inquiry was not authorized

USA FINANCE

Date of inquiry: 05/17/2023

16. The inquiry was not authorized

BK OF AMER

Date of inquiry: 09/26/2022

17. The inquiry was not authorized

CORELOGIC

Date of inquiry: 09/01/2022

18. The inquiry was not authorized

BK OF AMER

Date of inquiry: 08/26/2022

19. The inquiry was not authorized

COMDATA-CRDT

Date of inquiry: 08/22/2022

20. The inquiry was not authorized

US BANK

Date of inquiry: 08/17/2022

21. The inquiry was not authorized

BK OF AMER

Date of inquiry: 07/24/2022

22. The following account was not authorized and violates my federally protected consumer rights to privacy and confidentiality under 15 USC 1681.

AMSHER COLLECTION SE - Account Number: [redacted]

23. The following account was not authorized and violates my federally protected consumer rights to privacy and confidentiality under 15 USC 1681.

LVNV FUNDING LLC - Account Number: [redacted]

24. The following account was not authorized and violates my federally protected consumer rights to privacy and confidentiality under 15 USC 1681.

USA FINANCE LLC - Account Number: [redacted]

25. The following account was not authorized and violates my federally protected consumer rights to privacy and confidentiality under 15 USC 1681.

GROW CREDIT INC - Account Number: [redacted]

26. The following account was not authorized and violates my federally protected consumer rights to privacy and confidentiality under 15 USC 1681.

AFFIRM INC – Account Number: [redacted]

27. The following account was not authorized and violates my federally protected consumer rights to privacy and confidentiality under 15 USC 1681.

AVA FINANCE INC – Account Number: [redacted]

28. The following account was not authorized and violates my federally protected consumer rights to privacy and confidentiality under 15 USC 1681.

CENTERPOINT ENGERY – Account Number: [redacted]

29. The following account was not authorized and violates my federally protected consumer rights to privacy and confidentiality under 15 USC 1681.

COMENITYBANK/WAYFAIR – Account Number: [redacted]

30. The following account was not authorized and violates my federally protected consumer rights to privacy and confidentiality under 15 USC 1681.

TIMEPAYMENT CORP – Account Number: [redacted]

31. The following account was not authorized and violates my federally protected consumer rights to privacy and confidentiality under 15 USC 1681.

WEBBANK/FINGERHUT FRES – Account Number: [redacted]

In accordance with the Fair Credit Reporting Act, I hereby request that you investigate and eliminate these items from my report. It is my understanding that you will verify these items with the respective creditor. Please remove any information that cannot be verified by the creditor where I gave writing permission for anyone to put anything on my report and verify that it was me who did such. In accordance with the Fair Credit Reporting act. The List of accounts above has violated my federally protected consumer rights to privacy and confidentiality under 15 USC 1681 & I am aware that, as per 15 U.S.C. Sec. 1681i(a), you are required to complete this reinvestigation within 30days of receiving this letter. Please send an updated copy of my credit report to the provided address. According to the act, there should be no cost associated with obtaining this updated report. Additionally, I kindly request that you notify anyone who has received my credit report in the past six months of any corrections made certified. In addition, I have also reach out to CONSUMER FINANCIAL PROTECTION BUREAU about this situation. My complaint number is 240816-15634201. If we can clear this up as soon as possible, I would greatly appreciate this. Thank you for your time and assistance in resolving this matter.

Regards,

TAIUJUAN BURCHES

8/16/24


SOCIAL SECURITY
[redacted]9812
TAIUJUAN LATOREN
BURCHES
04/09/2013


BURCHES,
TAIUJUAN L.
TWIC
EXPIRES
2028
FEB04

Don't Drink and Drive
**Louisiana**
Don't Litter Louisiana



**PERSONAL** DUP
**DRIVER'S LICENSE**
NOT FOR FEDERAL IDENTIFICATION

| LICENSE/ID NO | CLASS | EXPIRATION DATE |
| --- | --- | --- |
| 008731320 | E | 05-05-2027 |

DOB [redacted]1987 ISSUE DATE 12-30-2021
BURCHES
TAIUJUAN LATOREN
42520 RICHARD ROAD
PONCHATOULA, LA 70454-0000

ENDORSEMENTS
NONE

RESTRICTIONS
NONE

| SEX | HGT | WGT | EYES | AUDIT | OFFICE |
| --- | --- | --- | --- | --- | --- |
| M | 6'04" | 250 | BRO | 3592 | 163 |

PARISH
53



8/16/24

An official website of the United States Government

Consumer Financial Protection Bureau (https://www.consumerfinance.gov/)

Submit a complaint / Complaint filed

# Your complaint

Complaint Number 240816-15634201

## Step 1

### What product or service is your complaint about?

| PRODUCT OR SERVICE | TYPE |
|---|---|
| Credit reporting or other personal consumer reports | Credit reporting |

## Step 2

### What type of problem are you having?

**ISSUE**

Improper use of your report

**TYPE OF ISSUE**

Reporting company used your report improperly

**HAVE YOU ALREADY TRIED TO FIX THIS PROBLEM WITH THE COMPANY?**

Yes

**DID YOU REQUEST INFORMATION FROM THE COMPANY?**

No

---

# Step 3

---

## What happened?

In accordance with the Fair Credit Reporting act. The List of accounts below has violated my federally protected consumer rights to privacy and confidentiality under 15 USC 1681. -Convergent Account # 1234, has violated my rights -CAPITAL ONE #480213, has violated my rights -LVNV FUNDING LLC #517805, has violated my rights -USA FINANCE LLC #12, has violated my rights -JEFFERSON CAPITAL SYST #378174, has violated my rights -AFFIRM INC #8YRD1G, has violated my rights -GROW CREDIT INC #GCL164, has violated my rights -WEBBANKFINGERHUT FRES #636992, has violated my rights -COMENITYBANK WAYFAIR #778850, has violated my rights -TIMEPAYMENT CORP #433410, has violated my rights 15 U.S.C 1681 section 602 A. States I have the right to privacy. 15 U.S.C 1681 Section 604 A Section 2: It also states a consumer reporting agency cannot furnish a account without my written instructions 15 U.S.C 1681c. (a)(5) Section States: no consumer reporting agency may make any consumer report containing any of the following items of information Any other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years. 15 U.S.C. 1681s-2 (A)(1) A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.

☑ **I WANT THE CFPB TO PUBLISH THIS DESCRIPTION ON CONSUMERFINANCE.GOV SO THAT OTHERS CAN LEARN FROM MY EXPERIENCE.**

The CFPB will take steps to remove my personal information from this description but someone may still be able to identify me. Learn how it works. I consent to publishing this description after the CFPB has taken these steps.

---

## What would be a fair resolution to this issue?

DELETE ACCOUNTS IMMEDIATELY

---

# Step 4

---

## What company is this complaint about?

**COMPANY INFORMATION**

EXPERIAN

**SOCIAL SECURITY NUMBER (LAST FOUR DIGITS)**

••••

**DATE OF BIRTH**

[redacted]1987

**NAME AS IT APPEARS ON CREDIT REPORT**

TAIUJUAN BURCHES

**ADDITIONAL COMPANY**

TRANS UNION LLC

**SOCIAL SECURITY NUMBER (LAST FOUR DIGITS)**

••••

**DATE OF BIRTH**

[redacted]/1987

**NAME AS IT APPEARS ON CREDIT REPORT**

TAIUJUAN BURCHES

**COMPLAINT ALSO SUBMITTED TO THIS COMPANY?**

true

**ATTEMPTED TO FIX WITH THIS COMPANY?**

Yes

**DID YOU REQUEST INFORMATION FROM THE COMPANY?**

No

**ADDITIONAL CREDIT REPORTING COMPANY**

EQUIFAX

**COMPLAINT ALSO SUBMITTED TO THIS COMPANY?**

Yes

**ATTEMPTED TO FIX WITH THIS COMPANY?**

Yes

**DID YOU REQUEST INFORMATION FROM THE COMPANY?**

No

# Step 5

## What people are involved?

**YOUR CONTACT INFORMATION**

TAIUJUAN BURCHES

taiujuan87@gmail.com
8329461754

**YOUR DEMOGRAPHIC INFORMATION**

**AGE**

37

**SEX**

Male

**HISPANIC, LATINO, OR SPANISH ORIGIN**

No

**RACE**

Black or African American

**HOUSEHOLD SIZE INCLUDING TOTAL NUMBER OF ADULTS AND CHILDREN**

1

**COMBINED ANNUAL HOUSEHOLD INCOME**

$100,000 - $149,999

# About us

We're the Consumer Financial Protection Bureau (CFPB), a U.S. government agency that makes sure banks, lenders, and other financial companies treat you fairly.

Learn how the CFPB can help you (https://www.consumerfinance.gov/about-us/the-bureau/)

**HAVE A QUESTION? ¿PREGUNTAS?**

(855) 411-2372

TTY/TTD: (855) 729-2372

8 a.m. to 8 p.m. ET, Monday - Friday (except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Overview)

More than 180 languages available.

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question? ¿Preguntas?

(855) 411-2372

TTY/TTD: (855) 729-2372

8 a.m. to 8 p.m. ET, Monday through Friday
(except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Overview)

More than 180 languages available.

An official website of the United States Government

DR 08/23/2024 (00MJ16) 58 180034 04037445

Taiujuan Burches
42520 Richard Rd
Ponchatoula, La 70454

CERTIFIED MAIL

7020 3160 0002 2799 9281

Retail

UNITED STATES POSTAL SERVICE

U.S. POSTAGE PAID
FCM LG ENV
SAVANNAH, GA 31408
AUG 19, 2024

19016

$6.89

RDC 99

S2324N503406-21

TransUnion LLC Consumer
Dispute Center
P. O. Box 2000
Chester, Pa 19016

TU 373

TU 448




EXHIBIT 23

EXHIBIT
23

Taiujuan Burches
8831 Wooster Trails Dr.
Baytown, TX 77521

TransUnion Consumer Solutions

TransUnion Consumer Solutions
P.O. Box 2000
Chester, PA 19016-2000

Investigation Request Letter

To Whom It May Concern:

I received a copy of my credit report with the intention of trying to improve my credit for my first home purchase. I noticed a few inquiries that I would like to know more information about. Under the Fair Credit Reporting Act I have the right to challenge any inaccuracies.

Are you familiar with 15 U.S.C. Sec. 1681i(a) (Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.)? If you can't provide proof, these accounts must be deleted. I would love them deleted if they aren't 100% accurate. Please investigate the items and remove them if anything is missing or incorrect.

I demand the following accounts be verified or removed immediately.

Name of Account

NAVY FCU (Finance)
NAVY FCU (Finance)
SUMMIT CREDIT UNION
(Finance)
USA FINANCE LLC
(Finance)
BANK OF AMERICA (Bank)
CREDCO/BAC 5 (Bank)
BANK OF AMERICA (Bank)
COMDATA-CREDIT DEPT
(Miscellaneous)
US BANK (Bank)
BANK OF AMERICA (Bank)
NAVY FCU (Finance)
NAVY FCU (Finance)

EXHIBIT 26

EXHIBIT
26

Verification
Cancel contract. Please provide the original contract or delete.

I also was informed I can get the updated report after you investigate this from a family lawyer. Could you please send it to me? Also, please let me know who had access to file as well. I want the investigation outcome sent to my address listed on this letter.

TU 7

Thanks for your time and help in this matter.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TAIUJUAN BURCHES,**<br>**Plaintiff,**<br>**v.**<br>**TRANS UNION LLC, et al**<br>**Défendants** | Case No.: 2:25-CV-0004<br>Judge Susie Morgan<br>Magistrate Judge Michael North |

**AFFIDAVIT OF WOJCIECH KIC**

STATE OF TEXAS

COUNTY OF HARRIS

I, **Wojciech Kic,** being duly sworn, state that I have personal knowledge of the following facts:

1. I am over the age of eighteen, competent to make this affidavit, and competent to testify under oath regarding the matters stated herein.

2. I am the President of ManageRentHouses.com, Inc. and as such, am a custodian of records for the Company.

3. ManageRentHouses.com, Inc. is a property-management company that manages, or managed, the property located at 8831 Wooster Trails Drive, Baytown, Texas 77521.

4. In my capacity as President and a custodian of records for the Company, I am familiar with ManageRentHouses.com, Inc.'s records relating to the management of the property located at 8831 Wooster Trails Drive, Baytown, Texas 77521 and the lease of Taiujuan Burches.

5. I have custody of, or access to information concerning, the records described in this affidavit.

EXHIBIT
30

6. I have received and reviewed the Notice of Records Deposition and Subpoena Duces Tecum directed to ManageRentHouses.com, Inc. and dated October 12, 2026.

7. Attached are twenty three (23) pages of documents, which are complete, true and correct copies of all records in ManageRentHouses.com, Inc.'s possession, custody or control responsive to the Requests for Production of Documents in the Notice of Records Deposition, organized as they were kept in the ordinary course of business.

8. The records were made at or near the time of the events, transactions, or occurrences recorded in them.

9. The records were made by, or from information transmitted by, persons with knowledge of the events, transactions, or occurrences recorded in them.

10. The records were created, maintained and kept in the ordinary course of ManageRentHouses.com, Inc.'s regularly conducted property-management activities.

11. It was the regular practice of ManageRentHouses.com, Inc.'s to create and maintain records of leases, lease amendments, background checks, credit checks, rent charges, rent payments, account balances, notices, communications, and other transactions relating to properties under its management.

12. The records were maintained as part of ManageRentHouses.com, Inc.'s regular business records system.

13. To the extent the records contain information entered by different employees, agents, or service providers of ManageRentHouses.com, Inc., those persons entered the information as part of their regular duties or transmitted the information to a person responsible for recording and maintaining it.

14. The records have been maintained without material alteration.

15. I am not aware of any indication that the method or circumstances of preparing the records suggest a lack of trustworthiness.

16. I make this affidavit to authenticate and certify the business records described above for use in the above-captioned proceedings.

17. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Done and signed at Houston, Texas on this 20th day of October, 2026.

WOJCIECH KIG

Sworn to and subscribed before me this 20th day of October, 2026.

TRAVIS C. CROWDER
My Notary ID # 4162925
Expires September 21, 2027

NOTARY PUBLIC

# Agent Full




**Sheena Ayers**
**Tramco Realty**

**My Active Listings**

| | | | |
|---|---|---|---|
| Ag ID: | **AYERSS** | Office ID: | **TXRM01** |
| Direct: | **281-948-6902** | Office Ph: | **281-893-6777** |
| Fax: | **281-893-0719** | Office Fax: | **281-893-0719** |
| Cell: | **281-948-6902** | | |
| Email: | gottamovenow@hotmail.com | | |
| Ag Web: | http://www.har.com/SheenaAyers | | |
| TREC#: | 0371347 | | |
| NRDS#: | **805506975** | | |
| Office Mgr: | **Tana Foreman/0450509** | | |
| Broker Lic#: | **0450509** | | |

**Zelle**

**From:** Chase QuickPay Team <no-reply@alertsp.chase.com>
**Sent:** Tuesday, April 16, 2024 3:11 PM
**To:** Zelle
**Subject:** Taijuan Burches sent you $500.00

**Follow Up Flag:** Follow up
**Flag Status:** Completed

***You received a payment***

Taijuan Burches sent you money through Chase QuickPay® with Zelle®. Your sender is registered with a Zelle member bank that supports payments in real time. You'll usually get their payment in a few minutes.

**Payment details:**
**Amount:** $500.00 (USD)
**Memo:** Rent 8831 Wooster trails dr Taiujuan Burches

To learn more, sign in to **chase.com/QP**.

Have questions? Please call Chase Customer Service at 1-877-242-7372.

Sincerely,
Chase QuickPay® with Zelle® team

To protect your personal information, please don't reply to this email. Instead, use the mobile app or sign in to chase.com to send a message from your Secure Message Center.

If you are concerned about clicking links in this email, the Online services mentioned above can be accessed by typing www.chase.com directly into your browser.

© 2024 JPMorgan Chase & Co.

Received on ________ (date) at ________ (time)

TEXAS ASSOCIATION OF REALTORS®

# RESIDENTIAL LEASE APPLICATION

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED
©Texas Association of REALTORS®, Inc. 2015

***Each occupant and co-applicant 18 years or older must submit a separate application.***

Property Address: To Be Determind
Anticipated: Move-in Date: 6/5 Monthly Rent: $ Full Price Security Deposit: $ Full Price or Double
Initial Lease Term Requested: 12 *(months)*

Property Condition: **Applicant is strongly encouraged to view the Property prior to submitting any application.** Landlord makes no express or implied warranties as to the Property's condition. Applicant requests Landlord consider the following repairs or treatments should Applicant and Landlord enter into a lease: ________

Applicant was referred to Landlord by:
☐ Real estate agent Shuna Ayers *(name)* ________ *(phone)* 281-948-6907 *(e-mail)*
☐ Newspaper ☐ Sign ☐ Internet ☐ Other ________

Applicant's name (first, middle, last) Tairjuan Burches
Is there a co-applicant? ☐ yes ☑ no *If yes, co-applicant must submit a separate application.*
Applicant's former last name (maiden or married): ________
E-mail Tairjuan87@gmail.com Home Phone 832-946-1754
Work Phone ________ Mobile/Pager ________
Soc. Sec. No. [redacted]2812 Driver License No. 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 in La *(state)*
Date of Birth [redacted]1987 Height 6'4 Weight 250 Eye Color brown
Hair Color BLK Marital Status Single Citizenship US *(country)*

Emergency Contact: *(Do not insert the name of an occupant or co-applicant.)*

Name: ________
Address: ________
Phone: ________ E-mail: ________

Name all other persons who will occupy the Property:
Name: Chase Burches Relationship: Son Age: 12
Name: ________ Relationship: ________ Age: ________
Name: ________ Relationship: ________ Age: ________
Name: ________ Relationship: ________ Age: ________

Applicant's Current Address: 42520 Richard Rd Apt. No. ________
Ponchatoula, La 70454 *(city, state, zip)*
Landlord or Property Manager's Name: Vicki Email: ________
Phone: Day: 504-930-1288 Nt: ________ Mb: ________ Fax: ________
Date Moved-In 1-1-17 Move-Out Date 6-1-22 Rent $ 1400
Reason for move: Moving locations

Applicant's Previous Address: ________ Apt. No. ________
________ *(city, state, zip)*



HOUSTON ASSOC OF REALTORS 3693 Southwest Freeway Houston TX 77027 Phone: Fax:
Harmony Gebar

Residential Lease Application concerning

Landlord or Property Manager's Name: ____ Email: ____
Phone: Day: ____ Nt: ____ Mb: ____ Fax: ____
Date Moved-In ____ Move-Out Date ____ Rent $ ____
Reason for move: ____

Applicant's Current Employer: Aglobal United INC
Address: 61532 Bennett Rd, Amite, La 70422 (street, city, state, zip)
Supervisor's Name: Pierre Warford Phone: 850-240-6870 Fax: ____
E-mail: Aglobal.inc1@gmail.com
Start Date: 1-20-2016 Gross Monthly Income: $ 11,000 Position: Pipefitter
Note: If Applicant is self-employed, Landlord may require one or more previous year's tax return attested by a CPA, attorney, or other tax professional.

Applicant's Previous Employer: ____
Address: ____ (street, city, state, zip)
Supervisor's Name: ____ Phone: ____ Fax: ____
E-mail: ____
Employed from ____ to ____ Gross Monthly Income: $ ____ Position: ____

Describe other income Applicant wants considered: ____

List all vehicles to be parked on the Property:

| Type | Year | Make | Model | License Plate No./State | Mo Pymnt |
|---|---|---|---|---|---|
| Car | 2014 | BENS | S550 | | Ø |
| Truck | 2014 | Dodge | 350 | | Ø |
| Car | 2018 | Nissian | Santra | | Ø |

Will any pets (dogs, cats, birds, reptiles, fish, and other pets) be kept on the Property? ☑ yes ☐ no
If yes, list all pets to be kept on the Property:

| Type & Breed | Name | Color | Weight | Age in Yrs. | Gender | Neutered? | Declawed? | Rabies Shots Current? | Bite History? |
|---|---|---|---|---|---|---|---|---|---|
| Frenchie | Coco | White | | 1 | F | ☑Y ☐N | ☑Y ☐N | ☑Y ☐N | ☐Y ☑N |
| | | | | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| | | | | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |
| | | | | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N |

| Yes | No | |
|---|---|---|
| ☐ | ☑ | Will any waterbeds or water-filled furniture be on the Property? |
| ☐ | ☑ | Does anyone who will occupy the Property smoke? |
| ☑ | ☐ | Will Applicant maintain renter's insurance? |
| ☐ | ☑ | Is Applicant or Applicant's spouse, even if separated, in military? |
| ☐ | ☑ | If yes, is the military person serving under orders limiting the military person's stay to one year or less? |
| | | Has Applicant ever: |
| ☐ | ☑ | been evicted? |
| ☐ | ☑ | been asked to move out by a landlord? |
| ☐ | ☑ | breached a lease or rental agreement? |
| ☐ | ☑ | filed for bankruptcy? |
| ☐ | ☑ | lost property in a foreclosure? |
| ☐ | ☑ | had *any* credit problems, including any outstanding debt (e.g., student loans or medical bills), slow-pays or delinquencies? |
| ☐ | ☐ | been convicted of a crime? If yes, provide the location, year, and type of conviction below. |



HOUSTON ASSOC. OF REALTORS, 3693 Southwest Freeway, Houston, TX 77027 | Phone: (713)629-1900 | Fax:
Nathan Gordie

☐ ☑ Is any occupant a registered sex offender? If yes, provide the location, year, and type of conviction below.

☐ ☑ Is there additional information Applicant wants considered?

Additional comments: ______________________

**Authorization:** Applicant authorizes Landlord and Landlord's agent, at any time before, during, or after any tenancy, to:

(1) obtain a copy of Applicant's credit report;
(2) obtain a criminal background check related to Applicant and any occupant; and
(3) verify any rental or employment history or verify any other information related to this application with persons knowledgeable of such information.

**Notice of Landlord's Right to Continue to Show the Property:** Unless Landlord and Applicant enter into a separate written agreement otherwise, the Property remains on the market until a lease is signed by all parties and Landlord may continue to show the Property to other prospective tenants and accept another offer.

**Privacy Policy:** Landlord's agent or property manager maintains a privacy policy that is available upon request.

**Fees:** Applicant submits a non-refundable fee of $________ to ______________ (entity or individual) for processing and reviewing this application. Applicant ☐ submits ☐ will not submit an application deposit of $______________ to be applied to the security deposit upon execution of a lease or returned to Applicant if a lease is not executed.

**Acknowledgement & Representation:**

(1) Signing this application indicates that Applicant has had the opportunity to review Landlord's tenant selection criteria, which is available upon request. The tenant selection criteria may include factors such as criminal history, credit history, current income and rental history.
(2) Applicant understands that providing inaccurate or incomplete information is grounds for rejection of this application and forfeiture of any application fee and may be grounds to declare Applicant in breach of any lease the Applicant may sign.
(3) Applicant represents that the statements in this application are true and complete.

[signature] 5/28/22

Applicant's Signature Date

*For Landlord's Use:*

*On ______________________ (name/initials) notified ☐ Applicant ☐ ______________ by ☐ phone ☐ mail ☐ e-mail ☐ fax ☐ in person that Applicant was ☐ approved ☐ not approved. Reason for disapproval: ______________________*

Authentisign ID: 276BB6DD-6333-4792-A49C-1ED44EBD934C

TEXAS REALTORS

# RESIDENTIAL LEASE

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2019

1. **PARTIES:** The parties to this lease are:

   the owner of the Property, Landlord,: Adejumo Adegboyega Saheed ; and

   Tenant(s): Taiujuan Burches

2. **PROPERTY:** Landlord leases to Tenant the following real property:

   Address: 8831 Wooster Trails Dr, Baytown, TX 77521-5137
   legally described as: LT 34 BLK 1 WOOSTER CROSSING SEC 4

   in Harris County, Texas, together with the following non-real-property items: __________.

   The real property and the non-real-property are collectively called the "Property".

3. **TERM:**

   A. Primary Term: The primary term of this lease begins and ends as follows:

   Commencement Date: June 3, 2022 Expiration Date: June 2, 2023 .

   B. Delay of Occupancy: Tenant must occupy the Property within 5 days after the Commencement Date. If Tenant is unable to occupy the Property by the 5th day after the Commencement Date because of construction on the Property or a prior tenant's holding over of the Property, Tenant may terminate this lease by giving written notice to Landlord before the Property becomes available to be occupied by Tenant, and Landlord will refund to Tenant the security deposit and any rent paid. Landlord will abate rent on a daily basis for a delay caused by construction or a prior tenant's holding over. This paragraph does not apply to any delay in occupancy caused by cleaning, repairs, or make-ready items.

4. **AUTOMATIC RENEWAL AND NOTICE OF TERMINATION:** This lease automatically renews on a month-to-month basis unless Landlord or Tenant provides the other party written notice of termination as provided in Paragraph 4A. Oral notice of termination is not sufficient under any circumstances. Time is of the essence for providing notice of termination (strict compliance with dates by which notice must be provided is required). The date on which rent is due does not apply to the requirement for providing written notice of termination. If a box is not checked under Paragraph 4A, Paragraph 4A(1) will apply. If a box is not checked under Paragraph 4B, Paragraph 4B(1) will apply.

   A. This lease automatically renews on a month-to-month basis unless Landlord or Tenant provides the other party written notice of termination not less than: *(Check only one box.)*
   - [X] (1) 30 days before the Expiration Date.
   - [ ] (2) ________ days before the Expiration Date.



Manage Rent Houses, 3801 Kirby Dr., Suite 152 Houston, TX 77098 Phone: 7132490459 Fax: 8831 Wooster
Abi McKenna Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr, Cambridge, Ontario, Canada N1T 1J5 www.lwolf.com

AuthentIsign ID: 2763B5DD-5333-4792-A49C-1E044EBD934C

Residential Lease concerning: 8831 Wooster Trails Dr Baytown, TX 77521-5137

If Landlord or Tenant fails to provide the other party timely written notice of termination as required by paragraph 4A, the lease automatically renews on a month-to-month basis. The Landlord or Tenant then must provide a subsequent written notice of termination as required by paragraph 4B.

B. If this lease automatically renews on a month-to-month basis, it will continue to renew on a month-to-month basis until either party provides written notice of termination to the other party and the notice of termination will be effective: *(Check only one box.)*

[X] (1) on the last day of the month following the month in which the notice is given. Landlord is not obligated to prorate rent even if Tenant surrenders the Property before the termination date.

[ ] (2) on the date designated in the notice but not sooner than 30 days after the notice is given and, if necessary, rent will be prorated on a daily basis.

5. **RENT:**

A. Monthly Rent: Tenant will pay Landlord monthly rent in the amount of $ **$1,895.00** for each full month during this lease. The first full month's rent is due and payable not later than **June 3, 2022** by *(select one or more)*: [X] cashier's check [ ] electronic payment [ ] money order [X] personal check or [X] other means acceptable to Landlord.

Thereafter, Tenant will pay the monthly rent so that Landlord receives the monthly rent on or before *(check only one box)*:

[X] (1) the first day of each month during this lease.

[ ] (2) ______________________________.

Weekends, holidays, and mail delays do not excuse Tenant's obligation to timely pay rent.

B. Prorated Rent: On or before **July 1, 2022** Tenant will pay Landlord $ **$1,768.67** as prorated rent from the Commencement Date through the last day of the month in which this lease begins.

C. Place of Payment: Unless this lease provides otherwise, Tenant will remit all amounts due to Landlord under this lease to the following person or entity at the place stated and make all payments payable to the named person or entity. Landlord may later designate, in writing, another person or place to which Tenant must remit amounts due under this lease.

Name: **MANAGErenthouses**
Address: **P.O.Box 540788**
**Houston, TX 77254**
**Notice: Place the Property address and Tenant's name on all payments.**

D. Method of Payment:

(1) Tenant must pay all rent timely and without demand, deduction, or offset, except as permitted by law or this lease.

(2) Time is of the essence for the payment of rent (strict compliance with rental due dates is required).

(3) Unless the parties agree otherwise, Tenant may not pay rent in cash and will pay all rent by *(select one or more)*: [ ] cashier's check [ ] electronic payment [X] money order [X] personal check or [X] other means acceptable to Landlord. Landlord [ ] may or [X] may not charge a reasonable fee to process or accept payment by *(select one or more only if Landlord indicates a reasonable fee may be charged)*: [X] cashier's check [ ] electronic payment [X] money order [X] personal check or [X] other means acceptable to Landlord.

(4) Landlord [X] requires [ ] does not require Tenant(s) to pay monthly rents by one payment.

(5) If Tenant fails to timely pay any amounts due under this lease or if any check of Tenant is not honored by the institution on which it was drawn, Landlord may require Tenant to pay such amount and any subsequent amounts under this lease in certified funds. This paragraph does not limit Landlord from seeking other remedies under this lease for Tenant's failure to make timely payments with good funds.

Authentisign ID: 276BB6DD-6333-4792-A49C-1ED44EBD934C



E. Rent Increases: There will be no rent increases through the primary term. Landlord may increase the rent that will be paid during any month-to-month renewal period by providing at least 30 days written notice to Tenant.

6. LATE CHARGES:

A. If Landlord does not actually receive a rent payment in the full amount at the designated place of payment by the 2nd day of each month at 11:59pm, Tenant will pay Landlord for each late payment:

(1) an initial late charge equal to *(check one box only)*: [X] (a) $ 50.00 ; or [ ] (b) ______ % of one month's rent; and

(2) additional late charges of $ 10.00 per day thereafter until rent and late charges are paid in full. Additional late charges for any one payment may not exceed more than 30 days.

**Notice: §92.019, Property Code prohibits assessing a late fee until rent has remained unpaid for at least two full days after the date on which the rent is due.**

B. For the purposes of paying rent and any late charges, the mailbox is not the agent for receipt for Landlord (the postmark date is not the date Landlord receives the payment). The parties agree that the late charge is reasonable based on uncertain damages to the Landlord related to the late payment of rent, including direct or indirect expenses, direct or indirect costs, or overhead associated with the collection of late payment. Landlord's acceptance of a late charge does not waive Landlord's right to exercise remedies under Paragraph 27.

7. RETURNED PAYMENT: Tenant will pay Landlord $ $25.00 for each payment Tenant tenders to Landlord which is returned or not honored by the institution on which it is drawn for any reason, plus any late charges until Landlord receives payment. Tenant must make any returned payment good by paying such amount(s) plus any associated charges in certified funds.

8. APPLICATION OF FUNDS: Regardless of any notation on a payment, Landlord may apply funds received from Tenant first to any non-rent obligations of Tenant, including but not limited to: late charges, returned payment charges, repairs, brokerage fees, periodic utilities, pet charges, and then to rent.

9. PETS:

A. Unless the parties agree otherwise in writing, Tenant may not permit, even temporarily, any pet on the Property (including but not limited to any mammal, reptile, bird, fish, rodent, or insect). An assistance animal is not considered a pet.

B. If Tenant violates this Paragraph 9 or any agreement to keep a pet on the Property, Landlord may take all or any of the following action:

(1) declare Tenant to be in default of this lease and exercise Landlord's remedies under Paragraph 27;

(2) charge Tenant, as additional rent, an initial amount of $ 100.00 and $ 10.00 per day thereafter per pet for each day Tenant violates the pet restrictions;

(3) remove or cause to be removed any unauthorized pet and deliver it to appropriate local authorities by providing at least 24-hour written notice to Tenant of Landlord's intention to remove the unauthorized pet; and

(4) charge to Tenant the Landlord's cost to:
  (a) remove any unauthorized pet;
  (b) exterminate the Property for fleas and other insects;
  (c) clean and deodorize the Property's carpets and drapes; and
  (d) repair any damage to the Property caused by the unauthorized pet.



Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5 www.lwolf.com 8831 Wooster

C. When taking any action under Paragraph 9B Landlord will not be liable for any harm, injury, death, or sickness to any pet.

**10. SECURITY DEPOSIT:**

A. Security Deposit: On or before execution of this lease, Tenant will pay a security deposit to Landlord in the amount of $ 300.00 by *(select one or more)*: [X] cashier's check [X] electronic payment [X] money order [X] personal check or [X] other means acceptable to Landlord. "Security deposit" has the meaning assigned to that term in §92.102, Property Code. Any additional deposits Tenant pays to Landlord, other than the security deposit, will become part of the security deposit.

B. Interest: No interest or income will be paid to Tenant on the security deposit. Landlord may place the security deposit in an interest-bearing or income-producing account and any interest or income earned will be paid to Landlord or Landlord's representative.

C. Refund: Tenant must give Landlord at least thirty (30) days written notice of surrender before Landlord is obligated to account for or refund the security deposit. Any refund of the security deposit will be made payable to all Tenants named in this lease.

**Notices about Security Deposits:**

**(1) §92.108, Property Code provides that a tenant may not withhold payment of any portion of the last month's rent on grounds that the security deposit is security for unpaid rent.**

**(2) Bad faith violations of §92.108 may subject a tenant to liability up to 3 times the rent wrongfully withheld and the landlord's reasonable attorney's fees.**

**(3) The Property Code does not obligate a landlord to return or account for the security deposit until the tenant surrenders the Property and gives the landlord a written statement of the tenant's forwarding address, after which the landlord has 30 days in which to account.**

**(4) "Surrender" is defined in Paragraph 16 of this lease.**

**(5) One may view the Texas Property Code at the Texas Legislature's website which, as of the date shown in the lower left-hand corner of this form, is http://www.statutes.legis.state.tx.us/.**

D. Deductions:

(1) Landlord may deduct reasonable charges from the security deposit for:

(a) damages to the Property, excluding normal wear and tear, and all reasonable costs associated to repair the Property;
(b) costs for which Tenant is responsible to clean, deodorize, exterminate, and maintain the Property;
(c) unpaid or accelerated rent;
(d) unpaid late charges;
(e) unpaid utilities and utility expenses Landlord incurs to maintain utilities to the Property as required by this Lease;
(f) unpaid pet charges;
(g) replacing unreturned keys, garage door openers, security devices, or other components;
(h) the removal of unauthorized locks or fixtures installed by Tenant;
(i) Landlord's cost to access the Property if made inaccessible by Tenant;
(j) missing or burned-out light bulbs and fluorescent tubes (at the same location and of the same type and quality that are in the Property on the Commencement Date);
(k) packing, removing, and storing abandoned property;
(l) removing abandoned or illegally parked vehicles;

Authentisign ID: 276BB6DD-6333-4792-A49C-1ED44EBD934C



(m) costs of reletting (as defined in Paragraph 27), if Tenant is in default;
(n) attorney's fees, costs of court, costs of service, and other reasonable costs incurred in any legal proceeding against Tenant;
(o) mailing costs associated with sending notices to Tenant for any violations of this lease;
(p) any other unpaid charges or fees or other items for which Tenant is responsible under this lease;
(q) cost to restore walls, flooring, landscaping or any alteration to the Property not approved in writing by Landlord;
(r) damages to the Property caused by smoking; including but not limited to stains, burns, odors, and removal of debris; and
(s) costs to rekey certain security devices, as provided in Paragraph 19.

(2) If deductions exceed the security deposit, Tenant will pay to Landlord the excess within 10 days after Landlord makes written demand.

**11. UTILITIES:**

A. Tenant will pay all connection fees, service fees, usage fees, and all other costs and fees for all utilities to the Property (for example, electricity, gas, water, wastewater, garbage, telephone, alarm monitoring systems, cable, and Internet connections) except the following which Landlord will pay: n/a

Unless otherwise agreed, amounts under this paragraph are payable directly to the service providers.

B. Unless provided by Landlord, Tenant must, at a minimum, keep the following utilities on, if available, at all times this lease is in effect: gas; electricity; water; wastewater; and garbage services.

**Notice: Before signing this lease, Tenant should determine if all necessary utilities are available to the Property and are adequate for Tenant's use.**

**12. USE AND OCCUPANCY:**

A. Occupants: Tenant may use the Property as a private residence only. The only persons Tenant may permit to reside on the Property during the term of this lease are (*include names and ages of all occupants*): Chase Burches (12)

B. Phone Numbers and E-mail: Tenant must promptly inform Landlord of any changes in Tenant's phone numbers (home, work, and mobile) and e-mail not later than 5 days after a change.

C. HOA Rules: Tenant must comply with any owners' association rules or restrictive covenants affecting the Property. Tenant will reimburse Landlord for any fines or other charges assessed against Landlord for violations by Tenant of any owners' association rule or restrictive covenant, and any resulting administrative fees assessed by Landlord's agents or any other entity as provided by law.

D. Prohibitions: Unless otherwise authorized by this lease, Tenant may not install or permit any of the following on the Property, even temporarily: a spa, hot tub, above-ground pool, trampoline, or any item which causes a suspension or cancellation of insurance coverage or an increase in insurance premiums. Tenant may not permit any part of the Property to be used for: (1) any activity which is a nuisance, offensive, noisy, or dangerous; (2) the repair of any vehicle; (3) any business of any type, including but not limited to child care; (4) any activity which violates any zoning ordinance, owners' association rule, or restrictive covenant; (5) any illegal or unlawful activity; or (6) activity that obstructs, interferes with, or infringes on the rights of other persons near the Property.

Residential Lease concerning: 8831 Wooster Trails Dr Baytown, TX 77521-5137

E. Guests: Tenant may not permit any guest to stay on the Property longer than the amount of time permitted by any owners' association rule or restrictive covenant or 30 days without Landlord's written permission, whichever is less.

F. Common Areas: Landlord is not obligated to pay any non-mandatory or user fees for Tenant's use of any common areas or facilities (for example, pool or tennis courts).

13. **PARKING RULES:** Tenant may not permit more than 3 vehicles, including but not limited to automobiles, trucks, recreational vehicles, trailers, motorcycles, all-terrain vehicles, jet skis, and boats, on the Property unless authorized by Landlord in writing. Tenant may not park or permit any person to park any vehicles in the yard. Tenant may permit vehicles to be parked only in drives, garages, designated common parking areas, or in the street if not prohibited by law or an owners' association. Tenant may not store or permit any person to store any vehicles on or adjacent to the Property or on the street in front of the Property. In accordance with applicable state and local laws, Landlord may have towed, at Tenant's expense: (a) any inoperative vehicle on or adjacent to the Property; (b) any vehicle parked in violation of this paragraph or any additional parking rules made part of this lease; or (c) any vehicle parked in violation of any law, local ordinance, or owners' association rule. Tenant must promptly inform Landlord of any changes in Tenant's vehicle information (type, year, make, model, and license plate number including state) not later than 5 days after a change.

14. **ACCESS BY LANDLORD:**

A. Advertising: Landlord may prominently display a "For Sale" or "For Lease" or similarly worded sign on the Property during the term of this lease or any renewal period. Landlord or Landlord's contractor may take interior or exterior photographs or images of the Property and use the photographs or images in any advertisements to lease or sell the Property.

B. Access: Before accessing the Property, Landlord or anyone authorized by Landlord will attempt to first contact Tenant, but may enter the Property at reasonable times without notice to make repairs or to show the Property to prospective tenants or buyers, inspectors, fire marshals, lenders, appraisers, or insurance agents. Additionally, Landlord or anyone authorized by Landlord may peacefully enter the Property at reasonable times without first attempting to contact Tenant and without notice to: (1) survey or review the Property's condition and take photographs to document the condition; (2) make emergency repairs; (3) exercise a contractual or statutory lien; (4) leave written notices; or (5) seize nonexempt property if Tenant is in default.

C. Trip Charges: If Landlord or Landlord's agents have made prior arrangements with Tenant to access the Property and are denied or are not able to access the Property because of Tenant's failure to make the Property accessible (including, but not limited to, any occupant, guest or invitee of Tenant, pet, or security device prohibiting access to any area of the Property), Landlord may charge Tenant a trip charge of $ 50.00 .

D. Keybox: **A keybox is a locked container placed on the Property holding a key to the Property. The keybox is opened by a special combination, key, or programmed access device so that persons with the access device may enter the Property, even in Tenant's absence. The keybox is a convenience but involves risk (such as unauthorized entry, theft, property damage, or personal injury). Neither the Association of REALTORS® nor MLS requires the use of a keybox.**

(1) Tenant authorizes Landlord, Landlord's property manager, and Landlord's broker to place on the Property a keybox containing a key to the Property:
(a) during the last n/a days of this lease or any renewal or extension; and
(b) at any time Landlord lists the Property for sale with a Texas licensed broker.

Authentisign ID: 276BD6DD-6333-4792-A49C-1ED45EBD934C

Residential Lease concerning: 8831 Wooster Trails Dr Baytown, TX 77521-5137

(2) Tenant may withdraw Tenant's authorization to place a keybox on the Property by providing written notice to Landlord and paying Landlord a fee of $ n/a as consideration for the withdrawal. Landlord will remove the keybox within a reasonable time after receipt of the notice of withdrawal and payment of the required fee. Removal of the keybox does not alleviate Tenant's obligation to make the Property available for showings as indicated in Paragraph 14B.

(3) If Landlord or Landlord's agents are denied or are not able to access the Property after first attempting to contact Tenant, Landlord may charge Tenant a trip charge as provided in Paragraph 14C.

(4) Landlord, the property manager, and Landlord's broker are not responsible to Tenant, Tenant's guests, family, or occupants for any damages, injuries, or losses arising from use of the keybox unless caused by Landlord, the property manager, or Landlord's broker.

**15. MOVE-IN CONDITION:**

A. Landlord makes no express or implied warranties as to the Property's condition. Tenant has inspected the Property and accepts it **AS-IS** provided that Landlord: n/a

B. Tenant will complete an Inventory and Condition Form, noting any damages to the Property, and deliver it to Landlord within 30 days after the Commencement Date. If Tenant fails to timely deliver the Inventory and Condition Form, the Property will be deemed to be free of damages, unless otherwise expressed in this lease. The Inventory and Condition Form is not a request for repairs. Tenant must direct all requests for repairs in compliance with Paragraph 18.

**16. MOVE-OUT:**

A. Move-Out Condition: When this lease ends, Tenant will surrender the Property in the same condition as when received, normal wear and tear excepted. Tenant will leave the Property in a clean condition free of all trash, debris, and any personal property. Tenant may not abandon the Property.

B. Definitions:

(1) *"Normal wear and tear"* means deterioration that occurs without negligence, carelessness, accident, or abuse.

(2) *"Surrender"* occurs when all occupants have vacated the Property, in Landlord's reasonable judgment, and one of the following events occurs:
(a) the date Tenant specifies as the move-out or termination date in a written notice to Landlord has passed; or
(b) Tenant returns keys and access devices that Landlord provided to Tenant under this lease.

(3) *"Abandonment"* occurs when all of the following occur:
(a) all occupants have vacated the Property, in Landlord's reasonable judgment;
(b) Tenant is in breach of this lease by not timely paying rent; and
(c) Landlord has delivered written notice to Tenant, by affixing it to the inside of the main entry door or if the Landlord is prevented from entering the Property by affixing it to the outside of the main entry door, stating that Landlord considers the Property abandoned, and Tenant fails to respond to the affixed notice by the time required in the notice, which will not be less than 2 days from the date the notice is affixed to the main entry door.

C. Personal Property Left After Move-Out:

(1) If Tenant leaves any personal property in the Property after surrendering or abandoning the Property Landlord may:
(a) dispose of such personal property in the trash or a landfill;
(b) give such personal property to a charitable organization; or
(c) store and sell such personal property by following procedures in §54.045(b)-(e), Property Code.

(2) Tenant must reimburse Landlord all Landlord's reasonable costs under Paragraph 16C(1) for packing, removing, storing, and selling the personal property left in the Property after surrender or abandonment.

17. PROPERTY MAINTENANCE:

A. Tenant's General Responsibilities: Tenant, at Tenant's expense, must:
(1) keep the Property clean and sanitary;
(2) promptly dispose of all garbage in appropriate receptacles;
(3) supply and change heating and air conditioning filters at least once a month;
(4) supply and replace all light bulbs, fluorescent tubes, and batteries for smoke alarms, carbon monoxide detectors, garage door openers, ceiling fan remotes, and other devices (of the same type and quality that are in the Property on the Commencement Date);
(5) maintain appropriate levels of necessary chemicals or matter in any water softener;
(6) take action to promptly eliminate any dangerous condition on the Property;
(7) take all necessary precautions to prevent broken water pipes due to freezing or other causes;
(8) replace any lost or misplaced keys;
(9) pay any periodic, preventive, or additional extermination costs desired by Tenant, including treatment for bed bugs, unless otherwise required by law;
(10) remove any standing water;
(11) know the location and operation of the main water cut-off valve and all electric breakers and how to switch the valve or breakers off at appropriate times to mitigate any potential damage;
(12) water the foundation of the Property at reasonable and appropriate times; and
(13) promptly notify Landlord, in writing, of all needed repairs.

B. Yard Maintenance:

(1) *"Yard"* means all lawns, shrubbery, bushes, flowers, gardens, trees, rock or other landscaping, and other foliage on or encroaching on the Property or on any easement appurtenant to the Property, and does not include common areas maintained by an owners' association.

(2) *"Maintain the yard"* means to perform activities such as, but not limited to: (a) mowing, fertilizing, and trimming the yard; (b) controlling pests and weeds in the yard; and (c) removing debris from the yard.

(3) Unless prohibited by ordinance or other law, Tenant will water the yard at reasonable and appropriate times including but not limited to the following times: ____________________________________________
____________________________________________. Other than watering, the yard will be maintained as follows:

☐ (a) Landlord, at Landlord's expense, will maintain the yard. Tenant will permit Landlord and Landlord's contractors reasonable access to the yard and will remove any pet from the yard at appropriate times.

☒ (b) Tenant, at Tenant's expense, will maintain the yard.

☐ (c) Tenant will maintain in effect a scheduled yard maintenance contract with: ☐ a contractor who regularly provides such service; ☐ ________________.

C. Pool/Spa Maintenance: Any pool or spa on the Property will be maintained according to a Pool/Spa Maintenance Addendum.

D. Prohibitions: If Tenant installs any fixtures on the Property, authorized or unauthorized, such as additional smoke alarms, additional carbon monoxide detectors, locks, alarm systems, cables, satellite dishes, or other fixtures, such fixtures will become the property of the Landlord. Except as otherwise permitted by law, this lease, or in writing by Landlord, Tenant may not:
(1) remove any part of the Property or any of Landlord's personal property from the Property;
(2) remove, change, add, or rekey any lock;
(3) make holes in the woodwork, floors, or walls, except that a reasonable number of small nails may be used to hang pictures in sheetrock and grooves in paneling;
(4) permit any water furniture on the Property;
(5) install additional phone or video cables, outlets, antennas, satellite receivers, or alarm systems;
(6) alter, replace or remove flooring material, paint, or wallpaper;
(7) install, change, or remove any: fixture, appliance, or non-real-property item listed in Paragraph 2;
(8) keep or permit any hazardous material on the Property such as flammable or explosive materials;
(9) keep or permit any material or item which causes any liability or fire and extended insurance coverage to be suspended or canceled or any premiums to be increased;
(10) dispose of any environmentally detrimental substance (for example, motor oil or radiator fluid) on the Property;
(11) cause or allow any lien to be filed against any portion of the Property; or
(12) disconnect or intentionally damage any carbon monoxide detector, or otherwise violate any local ordinance requiring a carbon monoxide detector in the Property.

E. Failure to Maintain: If Tenant fails to comply with this Paragraph 17 or any Pool/Spa Maintenance Addendum, Landlord may, in addition to exercising Landlord's remedies under Paragraph 27, perform whatever action Tenant is obligated to perform and Tenant must immediately reimburse Landlord the reasonable expenses that Landlord incurs plus any administrative fees assessed by Landlord's agents or any other entity as provided by law.

F. Smoking: Smoking by Tenant, Tenant's guests, family, or occupants is ☐ permitted ☒ not permitted on the Property (including, but not limited to, the garage or outdoor areas of the Property). If smoking is not permitted and does occur on the Property, Tenant will be in default and:
(1) Landlord may exercise Landlord's remedies under Paragraph 27; and
(2) Landlord may deduct from the security deposit damages to the Property caused by smoking, including but not limited to stains, burns, odors, and removal of debris.

18. REPAIRS: (Notice: Subchapter B, Chapter 92, Property Code governs repair obligations).

A. Repair Requests: **All requests for repairs must be in writing and delivered to Landlord. If Tenant is delinquent in rent at the time a repair notice is given, Landlord is not obligated to make the repair. In the event of an emergency related to the condition of the Property that materially affects the physical health or safety of an ordinary tenant, Tenant may call Landlord or, if applicable, the property manager, at (713)528-5311 . Ordinarily, a repair to the heating and air conditioning system is not an emergency.**

Authentisign ID: 276BB6DD-6333-4792-A49C-1ED44EB0934C

Residential Lease concerning: 8831 Wooster Trails Dr Baytown, TX 77521-5137

B. NOTICE: If Landlord fails to repair a condition that materially affects the physical health or safety of an ordinary tenant as required by this lease or the Property Code, Tenant may be entitled to exercise remedies under §92.056 and §92.0561 of the Property Code. If Tenant follows the procedures under those sections, the following remedies may be available to Tenant: (1) terminate the lease and obtain an appropriate refund under §92.056(f); (2) have the condition repaired or remedied according to §92.0561; (3) deduct from the rent the cost of the repair or remedy according to §92.0561; and (4) obtain judicial remedies according to §92.0563. Do not exercise these remedies without consulting an attorney or carefully reviewing the procedures under the applicable sections. The Property Code presumes that 7 days is a reasonable period of time for the Landlord to make a diligent effort to repair a condition unless there are circumstances which establish that a different period of time is appropriate (such as the severity and nature of the condition and the availability of materials, labor, and utilities). Failure to strictly follow the procedures in the applicable sections may cause Tenant to be in default of the lease.

C. Completion of Repairs:

(1) Tenant may not repair or cause to be repaired any condition, regardless of the cause, without Landlord's permission. All decisions regarding repairs, including the completion of any repair, whether to repair or replace the item, and the selection of contractors, will be at Landlord's sole discretion.

(2) Landlord is not obligated to complete a repair on a day other than a business day unless required to do so by the Property Code.

D. Payment of Repair Costs:

(1) Except as otherwise specified in this lease, Landlord will pay to repair or remedy conditions in the Property in need of repair if Tenant complies with the procedures for requesting repairs as described in this Paragraph 18. This includes, but is not limited to, repairs to the following items not caused by Tenant or Tenant's negligence:
(a) heating and air conditioning systems;
(b) water heaters; or
(c) water penetration from structural defects.

(2) Landlord will NOT pay to repair the following items unless caused by Landlord's negligence:
(a) conditions caused by Tenant, an Occupant, or any guest or invitee of Tenant;
(b) damage to doors, windows, and screens;
(c) damage from windows or doors left open;
(d) damage from wastewater stoppages caused by foreign or improper objects in lines that exclusively serve the Property;
(e) items that are cosmetic in nature with no impact on the functionality or use of the item; and
(f) the following specific items or appliances: n/a

E. Trip Charges: If a repair person is unable to access the Property after making arrangements with Tenant to complete the repair, Tenant will pay any trip charge the repair person may charge, which amount may be different from the amount stated in Paragraph 14C.



Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5 www.lwolf.com 8831 Wooster

F. Advance Payments and Reimbursements: Landlord may require advance payment of repairs or payments under this Paragraph 18 for which Tenant is responsible. Tenant must promptly reimburse Landlord the amounts under this Paragraph 18 for which Tenant is responsible.

19. SECURITY DEVICES AND EXTERIOR DOOR LOCKS:

A. Subchapter D, Chapter 92, Property Code requires the Property to be equipped with certain types of locks and security devices, including (with some exceptions): (1) window latches on each window; (2) a keyed doorknob lock or keyed deadbolt lock on each exterior door; (3) a sliding door pin lock on each exterior sliding glass door of the dwelling; (4) a sliding door handle latch or a sliding door security bar on each exterior sliding glass door of the dwelling; and (5) a keyless bolting device and a door viewer on each exterior door of the dwelling. Landlord has rekeyed the security devices since the last occupant vacated the Property or will rekey the security devices within 7 days after Tenant moves in. "Security device" has the meaning assigned to that term in §92.151, Property Code.

B. All notices or requests by Tenant for rekeying, changing, installing, repairing, or replacing security devices must be in writing. Installation of additional security devices or additional rekeying or replacement of security devices desired by Tenant may be paid by Tenant in advance in accordance with §92.162(c), Property Code, and may be installed only by contractors authorized by Landlord.

C. If Tenant vacates the Property in breach of this lease, Landlord may deduct from the security deposit reasonable costs incurred by Landlord to rekey security devices as authorized by §92.156(e), Property Code.

20. SMOKE ALARMS: Subchapter F, Chapter 92, Property Code requires the Property to be equipped with smoke alarms in certain locations. Requests for additional installation, inspection, or repair of smoke alarms must be in writing. Disconnecting or intentionally damaging a smoke alarm or removing a battery without immediately replacing it with a working battery may subject Tenant to civil penalties and liability for damages and attorney fees under §92.2611, Property Code.

21. LIABILITY: Unless caused by Landlord, Landlord is not responsible to Tenant, Tenant's guests, family, or occupants for any damages, injuries, or losses to person or property caused by fire, flood, water leaks, ice, snow, hail, winds, explosion, smoke, interruption of utilities, theft, burglary, robbery, assault, vandalism, other persons, condition of the Property, environmental contaminants (for example, carbon monoxide, asbestos, radon, lead-based paint, mold, fungus, etc.), or other occurrences or casualty losses. Unless prohibited by law, Tenant will promptly reimburse Landlord for any damages, injuries, or losses to person or property caused by Tenant, Tenant's guests, any occupants, or any pets or assistance animals, including cost of repairs or service to the Property.

22. HOLDOVER: If Tenant fails to vacate the Property at the time this lease ends Tenant will pay Landlord rent for the holdover period and indemnify Landlord and prospective tenants for damages, including but not limited to lost rent, lodging expenses, costs of eviction, and attorneys' fees. Rent for any holdover period will be three (3) times the monthly rent, calculated on a daily basis, and will be immediately due and payable daily without notice or demand.

23. RESIDENTIAL LANDLORD'S LIEN: Landlord will have a lien for unpaid rent against all of Tenant's nonexempt personal property that is in the Property and may seize such nonexempt property if Tenant fails to pay rent. Subchapter C, Chapter 54, Property Code governs the rights and obligations of the parties regarding Landlord's lien. Landlord may collect a charge for packing, removing, or storing property seized in addition to any other amounts Landlord is entitled to receive. Landlord may sell or dispose of any seized property in accordance with the provisions of §54.045, Property Code.

24. SUBORDINATION: This lease and Tenant's leasehold interest are and will be subject, subordinate, and inferior to: (i) any lien or encumbrance now or later placed on the Property by Landlord; (ii) all advances made under any such lien or encumbrance; (iii) the interest payable on any such lien or encumbrance; (iv) any and all renewals and extensions of any such lien or encumbrance; (v) any restrictive covenant; and (vi) the rights of any owners' association affecting the Property.

**25. CASUALTY LOSS OR CONDEMNATION:** Section 92.054, Property Code governs the rights and obligations of the parties regarding a casualty loss to the Property. Any proceeds, payment for damages, settlements, awards, or other sums paid because of a casualty loss to the Property will be Landlord's sole property. For the purpose of this lease, any condemnation of all or a part of the Property is a casualty loss.

**26. SPECIAL PROVISIONS:** *(Do not insert a lease-option or lease-purchase clause without the assistance of legal counsel. Special obligations and liabilities under statute apply to such transactions.)*
**Landlord is not responsible for extermination, repairing/replacing mini-blinds, screens, window coverings, light bulbs and/or doorbell. Landlord is not responsible for alarm maintenance and/or service.**
**Prior to move in, all utilities paid by the tenant are/will be off.**
**Landlord does not possess and is not responsible for mailbox key.**
**Landlord does not maintain doorbells.**
**Ceiling fans may be replaced with light fixtures.**
**Not valid until signed by all parties.**

**27. DEFAULT:**

A. If Landlord fails to comply with this lease, Tenant may seek any relief provided by law.

B. If Tenant fails to timely pay all amounts due under this lease or otherwise fails to comply with this lease, Tenant will be in default and:
  (1) Landlord may terminate Tenant's right to occupy the Property by providing Tenant with at least one day written notice to vacate;
  (2) all unpaid rents which are payable during the remainder of this lease or any renewal period will be accelerated without notice or demand;
  (3) Landlord may exercise Landlord's lien under Paragraph 23 and any other rights under this lease or the Property Code; and
  (4) Tenant will be liable for:
    (a) any lost rent;
    (b) Landlord's cost of reletting the Property including but not limited to leasing fees, advertising fees, utility charges, and other fees reasonably necessary to relet the Property;
    (c) repairs to the Property for use beyond normal wear and tear;
    (d) all Landlord's costs associated with eviction of Tenant, including but not limited to attorney's fees, court costs, costs of service, witness fees, and prejudgment interest;
    (e) all Landlord's costs associated with collection of amounts due under this lease, including but not limited to collection fees, late charges, and returned check charges; and
    (f) any other recovery to which Landlord may be entitled by law.

C. Notice to vacate under Paragraph 27B(1) may be by any means permitted by §24.005, Property Code.

D. If Tenant vacates the Property in breach of this lease, Landlord may also deduct from the security deposit the reasonable costs to rekey certain security devices, as provided in Paragraph 19.

E. Landlord will attempt to mitigate any damage or loss caused by Tenant's breach by attempting to relet the Property to acceptable tenants and reducing Tenant's liability accordingly.

**28. EARLY TERMINATION:** This lease begins on the Commencement Date and ends on the Expiration date unless: (i) renewed under Paragraph 4; (ii) extended by written agreement of the parties; or (iii) terminated earlier under Paragraph 27, by agreement of the parties, applicable law, or this Paragraph 28. Unless otherwise provided by law, Tenant is not entitled to early termination due to voluntary or involuntary job or school transfer, changes in marital status, loss of employment, loss of co-tenants, changes in health, purchase of property, or death.

A. Special Statutory Rights Tenants may have special statutory rights to terminate the lease early in certain situations involving family violence, military deployment or transfer, or certain sex offenses or stalking.

(1) Military: If Tenant is or becomes a servicemember or a dependent of a servicemember, Tenant may terminate this lease by delivering to Landlord a written notice of termination and a copy of an appropriate government document providing evidence of: (a) entrance into military service; (b) military orders for a permanent change of station (PCS); or (c) military orders to deploy with a military unit for not less than 90 days. Termination is effective on the 30th day after the first date on which the next rental payment is due after the date on which the notice is delivered. §92.017, Property Code governs the rights and obligations of the parties under this paragraph.

(2) Family Violence: Tenant may terminate this lease if Tenant provides Landlord with a copy of documentation described under §92.016, Property Code protecting Tenant or an occupant from family violence committed by a cotenant or occupant of the Property. §92.016, Property Code governs the rights and obligations of the parties under this paragraph. If the family violence is committed by someone other than a cotenant or co-occupant of the Property, Tenant must give written notice of termination 30 days prior to the effective date of the notice.

(3) Sex Offenses or Stalking: Tenant may have special statutory rights to terminate this lease in certain situations involving certain sexual offenses or stalking, if the Tenant provides Landlord with the documentation required by §92.0161, Property Code. For more information about the types of situations covered by this provision, Tenant is advised to review §92.0161, Property Code.

B. Assignment, Subletting and Replacement Tenants:

(1) Tenant may not assign this lease or sublet the Property without Landlord's written consent.

(2) If Tenant requests an early termination of this lease under this Paragraph 28B, Tenant may attempt to find a replacement tenant and may request Landlord to do the same. Landlord may, but is not obligated to, attempt to find a replacement tenant under this paragraph.

(3) Any assignee, subtenant, or replacement tenant must, in Landlord's discretion, be acceptable as a tenant and must sign: (a) a new lease with terms not less favorable to Landlord than this lease or otherwise acceptable to Landlord; (b) a sublease with terms approved by Landlord; or (c) an assignment of this lease in a form approved by Landlord.

(4) At the time Landlord agrees to permit an assignee, subtenant, or replacement tenant to occupy the Property, Tenant will pay Landlord:

(a) if Tenant procures the assignee, subtenant, or replacement tenant:

☐ (i) $ ____________________.

☒ (ii) 100.000 % of one's month rent that the assignee, subtenant, or replacement tenant is to pay.

(b) if Landlord procures the assignee, subtenant, or replacement tenant:

☐ (i) $ ____________________.

☒ (ii) 100.000 % of one's month rent that the assignee, subtenant, or replacement tenant is to pay.

(5) Unless expressly stated otherwise in an assignment or sublease, Tenant will not be released from Tenant's obligations under this lease because of an assignment or sublease. An assignment of this lease or a sublease of this lease without Landlord's written consent is voidable by Landlord.

Authentisign ID: 276BB60D-6333-4792-A49C-1ED44EBD934C

Residential Lease concerning: 8831 Wooster Trails Dr Baytown, TX 77521-5137

29. **ATTORNEY'S FEES:** Any person who is a prevailing party in any legal proceeding brought under or related to the transaction described in this lease is entitled to recover prejudgment interest, attorney's fees, costs of service, and all other costs of the legal proceeding from the non-prevailing party.

30. **REPRESENTATIONS:** Tenant's statements in this lease and any application for rental are material representations. Each party to this lease represents that he or she is of legal age to enter into a contract. If Tenant makes a misrepresentation in this lease or in an application for rental, Tenant is in default.

31. **ADDENDA:** Incorporated into this lease are the following addenda, exhibits and other information. If Landlord's Rules and Regulations are made part of this lease, Tenant agrees to comply with the Rules and Regulations as Landlord may, at Landlord's discretion, amend from time to time.

- [ ] Addendum Regarding Lead-Based Paint
- [x] Inventory & Condition Form
- [ ] Landlord's Additional Parking Rules
- [x] Pet Agreement
- [ ] Protecting Your Home from Mold
- [ ] Residential Lease Guaranty
- [ ] ______
- [ ] ______
- [x] Agreement Between Brokers
- [ ] Landlord's Rules & Regulations
- [ ] Owners' Association Rules
- [ ] Pool/Spa Maintenance Addendum
- [ ] Residential Lease Application
- [ ] Bed Bug Addendum
- [x] Addendum Regarding Rental Flood Disclosure
- [ ] ______

32. **NOTICES:** All notices under this lease must be in writing and are effective when hand-delivered, sent by mail, or sent by electronic transmission to *(Do not insert an e-mail address or a fax number unless the party consents to receive notices under this lease at the e-mail address or fax number specified.)*:

Tenant at the Property and a copy to:
______
______
______
E-mail: ______
Fax: ______

Landlord c/o:
MANAGErenthouses.com
3801 Kirby Dr. Suite 152
Houston, TX 77098
E-mail: ______
Fax: (713)528-5311

33. **AGREEMENT OF PARTIES:**

A. Entire Agreement: There are no oral agreements between Landlord and Tenant. This lease contains the entire agreement between Landlord and Tenant and may not be changed except by written agreement.

B. Binding Effect: This lease is binding upon and inures to the benefit of the parties to this lease and their respective heirs, executors, administrators, successors, and permitted assigns.

C. Joint and Several: All Tenants are jointly and severally liable for all provisions of this lease. Any act or notice to, refund to, or signature of, any one or more of the Tenants regarding any term of this lease, its extension, its renewal, or its termination is binding on all Tenants executing this lease.

D. Waiver: Landlord's past delay, waiver, or non-enforcement of a rental due date or any other right will not be deemed to be a waiver of any other breach by Tenant or any other right in this lease.

E. Severable Clauses: Should a court find any clause in this lease unenforceable, the remainder of this lease will not be affected and all other provisions in this lease will remain enforceable.

Residential Lease concerning: 8831 Wooster Trails Dr Baytown, TX 77521-5137

F. Controlling Law: The laws of the State of Texas govern the interpretation, validity, performance, and enforcement of this lease.

G. Copyright: If an active REALTOR® member of Texas REALTORS® does not negotiate this lease as a party or for one of the parties, with or without assistance by an active member of the State Bar of Texas, this lease is voidable at will by Tenant.

34. INFORMATION:

A. Future inquiries about this lease, rental payments, and security deposits should be directed to the person listed for receipt of notices for Landlord under Paragraph 32.

B. It is Tenant's responsibility to determine, before signing this lease, if: (i) all services (e.g., utilities, connections, schools, and transportation) are accessible to or from the Property; (ii) such services are sufficient for Tenant's needs and wishes; and (iii) Tenant is satisfied with the Property's condition.

C. The brokers to this lease have no knowledge of whether Landlord is delinquent in the payment of any lien against the Property.

D. Unpaid rent and any unpaid amount under this lease are reportable to credit reporting agencies.

E. Landlord is not obligated to respond to any requests for Tenant's rental and payment history from a mortgage company or other prospective landlord until Tenant has given notice of termination of this lease and Tenant is not in breach of this lease. (*Notice: Landlord or Landlord's agent may charge a reasonable fee for processing such information*).

F. If all occupants over 18 years of age die during this lease, Landlord may: (i) permit the person named below to access the Property at reasonable times in Landlord's or Landlord's agent's presence; (ii) permit the named person to remove Tenant's personal property; and (iii) refund the security deposit, less deductions, to the named person. Section 92.014, Property Code governs procedures to follow regarding a deceased tenant's personal property and security deposit.
Name: ______________________ Phone: ______________
Address: ______________________
E-mail: ______________________

G. The Texas Department of Public Safety maintains a database that the public may search, at no cost, to determine if registered sex offenders are located in certain areas (see https://publicsite.dps.texas.gov/SexOffenderRegistry under on-line services). For information concerning past criminal activity in certain areas, contact the local police department.

H. Landlord's insurance does not cover Tenant from loss of personal property. Landlord highly recommends that Tenant obtain liability insurance and insurance for casualties such as fire, flood, water damage, and theft.

I. Landlord's broker, MANAGErenthouses.com ;
[X] will [ ] will not act as the property manager for landlord. If Property is not managed by above-named broker, Property will be managed by [ ] Landlord or [X] property manager for Landlord:
Name of property manager: MANAGErenthouses.com Phone: (713)528-5311
Address: 3801 Kirby Dr. Suite 152, Houston, TX 77098 E-mail: ______________



Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5 www.lwolf.com 8831 Wooster

Authentisign ID: 276BB6DD-6333-4792-A49C-1ED44EBD934C

Residential Lease concerning: 8831 Wooster Trails Dr Baytown, TX 77521-5137

J. This lease should not be used in conjunction with executory contracts of any type, such as contracts for deed, leases with options to purchase, or lease options, without the advice of an attorney.

K. **This lease is negotiable between the parties. This lease is binding upon final acceptance. READ IT CAREFULLY. If you do not understand the effect of this lease, consult your attorney BEFORE signing.**

Landlord Date
**Adejumo Adegboyega Saheed**

Authentisign
*Taiujuan Burches*
6/2/2022 5:51:15 PM GMT
Tenant Date
**Taiujuan Burches**

Landlord Date

Tenant Date

**Or signed for Landlord under written property management agreement or power of attorney:**

By: [signature] 6/3/22
Date

Tenant Date

Tenant Date

Broker's Associate's Printed Name

**MANAGErenthouses.com** **9000494**
Broker's Printed Name License No.

**MANAGErenthouses.com**
Firm Name

*For Landlord's Use:*

On ______________ * (*date*), Landlord provided a copy of the lease, signed by all parties, to ______________ (Tenant) by ☐ mail ☐ e-mail ☐ fax ☐ in person.

**Note: Landlord must provide at least one copy of the lease to at least one Tenant no later than three business days after the date the lease is signed by each party to the lease. Additionally, if more than one tenant is a party to the lease, no later than three business days after the date the Landlord receives a written request for a copy of a lease from a tenant who has not already received one as required above, the Landlord must provide a copy to the requesting tenant. Landlord may provide the copy of the lease in: (1) a paper format; (2) an electronic format if requested by the tenant; or (3) by e-mail if the parties have communicated by e-mail regarding the lease. See § 92.024, Property Code, for more details.*



Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5 www.lwolf.com 8831 Wooster

UNITED STATES POSTAL SERVICE

# POSTAL MONEY ORDER

Serial Number 28983726977

Year, Month, Day 202[illegible]-12-20

Post Office 770931

U.S. Dollars and Cents $940.00

Nine Hundred Forty Dollars and 00/100 **********

Amount

Clerk 19

Pay to Manage renthouses

Address 3201 Kirby

From Taiuwan Burches

Address 8831 Wooster trails Dr Baytown Tx 77521

Memo

SEE REVERSE WARNING • NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS

⑆000000800 2⑆ 28983726977⑈

JPMorganChaseBank 122001 00283 92191003861

MAXIMUM VALUE ONE THOUSAND DOLLARS

For Deposit Only
Managerenthouses.com Inc.
Trust Operating Account
968742718

ENDORSEMENT SIGNATURE

WARNING-CASHIER
REQUIRE POSITIVE IDENTIFICATION
HOLD TO LIGHT AND CHECK FOR
BENJAMIN FRANKLIN WATERMARK AND SECURITY THREAD.
NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS

PL$

TX-13 11/06/2023

TO VERIFY CALL (800) 000-0000

1313157318

157318

PAY TO THE ORDER OF: Mcinaee Rent Houses * * 350.00

Sequence Number: 9180370976 - Posting Date: 11/08/2023

NAVY FEDERAL Credit Union

PO Box 3000
Merrifield, VA 22119-3000
navyfederal.org

68-7497
2560

Cashier's Check

| Serial No | Account No. | Date | Amount |
|---|---|---|---|
| 0457971429 | ******8302 | 11/08/23 | $************2050.00 |

Pay to the Order of MANAGERENTHOUSES

REMITTER: SAVANNAH O BELQUIST

⑆256074974⑆ 280912 ⑈002

JPMorganChaseBank 110807 000813 921910043722

A Declaration of Loss can only be processed if this check is lost, stolen, or destroyed.
For Deposit Only
Managerenthouses.com Inc.
Trust Operating Account
968742718

RECEIVED OR FILED
JUSTICE OF THE PEACE 3-1
HARRIS COUNTY, TEXAS
6/12/2024 2:18 PM

TEXAS ASSOCIATION OF REALTORS®

# EXTENSION OF RESIDENTIAL LEASE

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2014

*NOTICE: Use this form only if date in the bottom, left-hand corner of the lease to be extended is dated before January 1, 2014.*

**CONCERNING THE RESIDENTIAL LEASE OF THE PROPERTY AT** 8831 Wooster Trails, Baytown, TX 77521 **between** Adejumo, Adegboyega Saheed **(Landlord) and** Taiujuan Burches **(Tenant)**

**A. Amendments to Lease:** Effective 7/01/2023, Landlord and Tenant extend and amend the above-referenced lease as follows.

(1) The Expiration Date in Paragraph 3 is changed to: 06/30/2024 .

(2) The monthly rent in Paragraph 5A is: ☑ changed to $ 2,000.00 ☐ remains the same.

(3) The named person and/or contact information in Paragraph 34F: ☑ remains the same ☐ is changed to:

Name: ______ Phone: ______
Address: ______ Email: ______

(4) Paragraph 28A is changed to read as follows.

A. Special Statutory Rights: Tenants may have special statutory rights to terminate the lease early in certain situations involving family violence, military deployment or transfer, or certain sex offenses or stalking.

(1) Military: If Tenant is or becomes a service member or a dependent of a service member, Tenant may terminate this lease by delivering to Landlord a written notice of termination and a copy of an appropriate government document providing evidence of: (a) entrance into military service; (b) military orders for a permanent change of station (PCS); or (c) military orders to deploy with a military unit for not less than 90 days. Termination is effective on the 30th day after the first date on which the next rental payment is due after the date on which the notice is delivered. Section 92.017, Property Code governs the rights and obligations of the parties under this paragraph.

(2) Family Violence: Tenant may terminate this lease if Tenant provides Landlord with a copy of a court order described under 92.016, Property Code protecting Tenant or an occupant from family violence committed by a co-tenant or occupant of the Unit. Section 92.016, Property Code governs the rights and obligations of the parties under this paragraph. If the family violence is committed by someone other than a co-tenant or co-occupant of the Property, Tenant must give written notice of termination 30 days prior to the effective date of the notice.

(3) SexOffense: Tenant may have special statutory rights to terminate this lease in certain situations involving certain sexual offenses or stalking, if the Tenant provides Landlord with the documentation required by 92.0161, Property Code. For more information about the types of situations covered by this provision, Tenant is advised to review 92.0161, Property Code.

(5) Other: Paragraph(2) ______ of the lease are amended as follows:





EXHIBIT
31

RECEIVED OR FILED
JUSTICE OF THE PEACE 3-1
HARRIS COUNTY, TEXAS
6/12/2024 2:18 PM

B. **Obligation to Return this Extension:** If Tenant does not sign and return this extension to Landlord on or before May 06, 2023, Landlord notifies Tenant that:

☑ (1) the lease, in accordance with its terms, will renew on a month-to-month basis, and Landlord notifies Tenant that the monthly rent will: ☑ (a) be $ 2,100.00, effective 7/01/2023.

☐ (b) remain the same.

☐ (2) the lease will terminate on ______ and Tenant must vacate the Property by the date of termination.

| | | | |
|---|---|---|---|
| Landlord | Date | Tenant | Date |
| Adejumo, Adegboyega Saheed | 04/26/2023 | Taiujuan Burches | 04/26/2023 |
| Landlord | Date | Tenant | Date |

Or signed for Landlord under written property management Agreement or power of attorney:

Tenant Date

By: ______

Tenant Date

Printed Name: ______

Firm Name: manageRENThouses.com

Tenant's Phone & E-Mail

()-832 ()-946-1754
Home Work Mobile

E-Mail: Taiujuan87@gmail.com

RECEIVED OR FILED
JUSTICE OF THE PEACE 3-1
HARRIS COUNTY, TEXAS
6/12/2024 2:18 PM

30V

RECEIVED OR FILED
JUSTICE OF THE PEACE 3-1
HARRIS COUNTY, TEXAS
6/12/2024 2:18 PM

**Petition for Eviction from Residential Premises** Case No. 243100217638

Adegboyega Saheed Adejumo § IN THE JUSTICE COURT OF
Landlord (Plaintiff) § Harris County, Texas, Precinct 3 Place 1
VS. Taiujuan Burches §
& all other occupants Tenant (Defendant) §

Name of Landlord *(provide full legal name)*: Adegboyega Saheed Adejumo, referred to as "Plaintiff."

**Tenants.** 1. Name of Tenant *(provide full legal name)*: Taiujuan Burches + all other occupants.
Defendant may be served at *(provide street address and telephone number, if known)*:
8831 Wooster Trails Dr. Baytown TX, 77521
All other home and work addresses of this Defendant in Harris County that are known to the Plaintiff are:

☑ Plaintiff knows of no other home or work addresses of this Defendant in Harris County.

2. Name of Tenant *(provide full legal name)*: ______
Defendant may be served at *(provide street address and telephone number, if known)*:

All other home and work addresses of Defendant in Harris County that are known to the Plaintiff are:

☐ Plaintiff knows of no other home or work addresses of this Defendant in Harris County. Tenant(s) are referred to as "Defendant.

**Premises.** Plaintiff seeks possession of following Premises *(describe premises, i.e. house, apartment building, including street address)*:
8831 Wooster Trails Dr. Baytown TX, 77521

**Grounds for Eviction**. Plaintiff seeks to evict Defendant for the following reason:

☑ **Failure to pay rent:**
Residential Lease: ☑ Written ☐ Oral Beginning date of Lease: Jun 3, 2022 End date of Lease: Jun 30, 2024
Rent: $ $2,000.00 per MONTH *(e.g. month, week)* Date of last rental payment: Apr 17, 2024
Total amount of rent due and unpaid on date of filing: $ April and may + June $4503.00
Rent subsidized by government: $______ paid by ______; $______ paid by the Defendant.

☐ **Violation of Lease:** Tenant violated Paragraph No. ______ of the Lease by *(describe violation)*: ______

☐ **Holding over** after termination of right to possession: Date of notice of termination: ______

☐ **Foreclosure**: Plaintiff purchased the Premises at foreclosure on ______
☐ Plaintiff intends to live in the Premises as Plaintiff's primary residence.
☐ Defendant is a tenant of the former owner; End date of Lease: ______ Rent: $______ per ______

**Notice to Vacate**: Date Notice to Vacate Delivered: 6/5/2024 Manner of delivery first class

☐ Attorney Fees: Plaintiff seeks attorney fees as follows:
Contractual: Lease (written) Paragraph No. ______ Amount of Attorney Fees claimed: $______
Statutory: Written demand to vacate sent on: ______ Date received: ______ Attorney Fees claims: $______

Plaintiff requests possession of the Premises, past due rent, if applicable, attorney's fees, if applicable, court costs, and such other and further relief to which Plaintiff may be entitled.

Respectfully submitted,

A. Vegsund / Agent — Anne Vegsund- Texas Eviction / A — AGENT
*Signature of Plaintiff, Plaintiff's Attorney or Authorized Agent* — Printed Name — Title

Address: 12335 KINGSRIDE LANE #141
HOUSTON, TEXAS 77024
Daytime Telephone: 281-571-7151 Fax Number: 281-402-1162
State Bar No. ______

☑ Plaintiff consents to the e-mail service of the answer and any other motions or pleadings to this e-mail address.
E-Mail Address: FILE@TEXASEVICTION.COM

THE STATE OF TEXAS §
COUNTY OF HARRIS §
SWORN TO BEFORE ME on 6/12/24 by (Anne Vegsund / Agent, Plaintiff.

Niwedita Chung
Clerk Notary Public

Niwedita Chung
My Commission Expires
9/21/2027
Notary ID 134567761

EXHIBIT 32

EXHIBIT
32

RECEIVED OR FILED
JUSTICE OF THE PEACE 3-1
HARRIS COUNTY, TEXAS
6/12/2024 2:18 PM

**Instruction:** A plaintiff requesting a default judgment must provide to the Clerk in writing the last known mailing address of the defendant. This notice must be filed at or before the time the default judgment is signed. The clerk must immediately mail written notice of the default judgment to the defendant at the address provided. **Rule 503.1** Before entering a default judgment against an individual defendant, the plaintiff must also file with the court a Military Status Affidavit.

No. 243100217638

| | | |
|---|---|---|
| Adegboyega Saheed Adejumo | § | IN THE **JUSTICE COURT** OF |
| PLAINTIFF(S) | § | HARRIS COUNTY, TEXAS |
| VS. Taiujuan Burches | § | PRECINCT 3 PLACE 1 |
| & all other occupants | § | |
| DEFENDANT(S) | § | |

**NOTICE OF DEFENDANT'S LAST KNOWN MAILING ADDRESS**

The undersigned certifies that the last known mailing address of the defendant against whom a default judgment is taken in this case is:

Defendant's name: Taiujuan Burches & all other occupants.

Defendant's last known mailing address: 8831 Wooster Trails Dr. Baytown TX, 77521

Submitted on June 12, 2024

a. Vegsund / Agent
*(Signature of Plaintiff or Plaintiff's Attorney of Record*
Printed Name: Anne Vegsund- Texas Eviction /Ag
Address: 12335 KINGSRIDE LANE #141
HOUSTON, TEXAS 77024
Telephone: 281-571-7151
Fax: 281-402-1162
E-Mail: FILE@TEXASEVICTION.COM

RECEIVED OR FILED
JUSTICE OF THE PEACE 3-1
HARRIS COUNTY, TEXAS
6/12/2024 2:18 PM

**Instructions:** The Servicemembers Civil Relief Act applies to a civil proceeding in the Justice Courts. Before entering a default judgment against an individual defendant, the plaintiff must file with the court an affidavit stating whether or not the defendant is in the military service, showing necessary facts to support the affidavit, or stating that the plaintiff is unable to determine whether or not the defendant is in military service, if that is the case. The requirement for an affidavit may be satisfied by a written, signed document declared to be true under penalty of perjury. If it appears that the defendant is in military service, the court may not enter a judgment until after the court appoints an attorney to represent the defendant. If the court is unable to determine if the defendant is in military service, the court may require plaintiff to file a bond in an amount approved by the court.
A person who makes or uses an affidavit under this Act knowing it to be false, may be fined or imprisoned or both. 50 U.S.C. App. 501 et seq.
To obtain certificates of service or non-service under the Servicemembers' Civil Relief Act, you may access the public website: https://www.dmdc.osd.mil/appj/scra/scraHome.do. This website will provide the current active military status of an individual.

## Military Status Affidavit

Case No. 243100217638 § In the Justice Court of

Adegboyega Saheed Adejumo § Harris County, Texas
Plaintiff §

vs. §

Taiujuan Burches & all other occupants § Precinct 3, Place 1
Defendant §

BEFORE ME, on this day personally appeared Anne Vegsund- Texas Eviction /Agent,
who, under penalty of perjury, stated that the following facts are true:

I am the ☑ Plaintiff AGENT ☐ attorney of record for the Plaintiff in this proceeding.

☑ Taiujuan Burches, Defendant, is not in military service.

☐ __________, Defendant, is in military service.

I know this because SCRA

☐ I am unable to determine whether or not the Defendant is in military service.

Signed on 6/12/24

A.Vegsund / Agent
*Signature*
Printed Name: Anne Vegsund- Texas Eviction /Ag
Address: 12335 KINGSRIDE LANE #141
HOUSTON, TEXAS 77024
Telephone: 281-571-7151
Fax: 281-402-1162
E-Mail Address: FILE@TEXASEVICTION.COM

THE STATE OF TEXAS §
COUNTY OF HARRIS §

SWORN TO AND SUBSCRIBED BEFORE ME on 6/12/24.

Niwedita Chung

Clerk of the Court NOTARY PUBLIC, State of Texas

Niwedita Chung
My Commission Expires
9/21/2027
Notary ID 134567761

RECEIVED OR FILED
JUSTICE OF THE PEACE 3-1
HARRIS COUNTY, TEXAS
6/12/2024 2:18 PM

Department of Defense Manpower Data Center

Results as of : May-28-2024 12:08:06 PM

SCRA 5.20

**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:
Birth Date: May-XX-1987
Last Name: BURCHES
First Name: TAIUJUAN
Middle Name:
Status As Of: May-28-2024
Certificate ID: KFB5XQ0XNPZ2B9G

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, Space Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty. HOWEVER, WITHOUT A SOCIAL SECURITY NUMBER, THE DEPARTMENT OF DEFENSE MANPOWER DATA CENTER CANNOT AUTHORITATIVELY ASSERT THAT THIS IS THE SAME INDIVIDUAL THAT YOUR QUERY REFERS TO. NAME AND DATE OF BIRTH ALONE DO NOT UNIQUELY IDENTIFY AN INDIVIDUAL.

Sam Yousefzadeh

Sam Yousefzadeh, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Alexandria, VA 22350

RECEIVED OR FILED
JUSTICE OF THE PEACE 3-1
HARRIS COUNTY, TEXAS
6/12/2024 2:18 PM

TEXAS ASSOCIATION OF REALTORS

# NOTICE TERMINATING RIGHT OF OCCUPANCY

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS IS NOT AUTHORIZED.
Texas Association of REALTORS, Inc. 2003

To: Taiujuan Burches (Tenant)

From: MANAGErenthouses.com, agent for owner (Landlord)

Re: Lease concerning the Property at 8831 Wooster Trails, Baytown, TX 77521

A. Tenant failed to comply with the above-referenced lease.

B. Landlord terminates Tenant's right to occupy the Property:

☐ (1) effective ______________ days after the date this notice is delivered to the Property by certified mail requested.

☑ (2) effective 3 days after the date this notice is delivered by regular mail.

C. Landlord demands that Tenant vacate the Property not later than the date stated in Paragraph B.

D. Landlord is entitled to pursue all available remedies for Tenant's breach.

______________________________ 06/05/2024
Landlord Date

Or signed for Landlord under written property management agreement or power of attorney:

By: ______________________________

Printed Name: Wojciech Kic

Firm Name: MANAGErenthouses.com

*Means of Delivery*

☐ *Certified Mail, Return Receipt Request No.* ______________________________
☐ Affixed to inside of main entry door on ______________ by ______________
☐ Hand delivered to ______________________________ on ______________
☑ Sent via regular mail.

** Note: Do not insert a date earlier than 1 day after the date the notice is: (1) delivered to a person who is at least 16 years old and resides in the Property; or (2) affixed to the inside of the main entry door. See 24.005 Property Code if alternative means of delivery are necessary.*

(TAR-2208) 10-14-03

ManageRentHouses.com 3801 Kirby, Ste 152 Houston, Tx 77098
Phone: (713) 528-5311 Fax: (713) 528-5335 Manager: Stephanie Jarrett

In the Justice Court
Precinct 3, Place 1

Harris County
State of Texas

**Case Number: 243100217638**

Adegboyega Saheed Adejumo
Plaintiff
vs.
Taiujuan Burches & All Other Occupants
Defendant

Represented by: Adegboyega Saheed Adejumo

Represented by:

Leased Premises: 8831 Wooster Trails Dr Baytown TX 77521

Plaintiff(s) ☑ Present ☐ Not Present at Trial
Defendant(s) ☐ Present ☑ Not Present at Trial

On 07/03/2024 the court heard the above-numbered and styled cause.

☑ **DEFAULT JUDGMENT FOR PLAINTIFF**
The Plaintiff, being present, announced ready for trial. The Defendant, although having been duly cited and served with process, said citation with the officer's return thereon having been on file with the clerk of this court, failed to appear or answer in its behalf, and wholly made default. It is therefore decreed that judgment is entered for the Plaintiff for possession of the above described premises, and further, that the Plaintiff have judgment against the Defendant(s) for $4,503.00 as rent owed, plus $ 0 as attorney fees, all costs of court, together with post-judgment interest at a rate of 8.50% per annum from the date of judgment until paid, for which let execution issue. No writ of possession will issue before 7-10-2024. The Defendant(s) appeal bond is set at: $6,000.00

☐ **JUDGMENT FOR PLAINTIFF**
The Plaintiff and Defendant, being present, announced ready for trial. The court, having heard the evidence, determined judgment is for the Plaintiff for possession of the above described premises. It is therefore decreed that judgment is entered for the Plaintiff for possession of the above described premises, and further, that the Plaintiff have judgment against the Defendant(s) for $________ as rent owed, plus $________ as attorney fees, all costs of court, together with post-judgment interest at a rate of 8.50% per annum from the date of judgment until paid, for which let execution issue. No writ of possession will issue before ________________. The Defendant(s) appeal bond is set at: $6,000.00.

☐ **JUDGMENT FOR DEFENDANT**
The Plaintiff and Defendant, being present, announced ready for trial. The court, having heard the evidence, determined judgment is for the Defendant for possession of the above described premises. It is therefore decreed that the Plaintiff take nothing and that judgment is entered for the Defendant(s) for $________ as attorney fees, all costs of court, together with post-judgment interest at a rate of 8.50% per annum from the date of judgment until paid, for which let execution issue. The Plaintiff's appeal bond is set at $500.00.

☐ The court ORDERS that this case is **DISMISSED**:

- ☐ due to lack of jurisdiction.
- ☐ as Plaintiff did not appear.
- ☐ on motion of the ☐ Plaintiff ☐ Defendant.
- ☐ by agreement of the parties and that each side bears their cost incurred.

**The court denies all other relief not granted above.**

You may appeal this judgment by filing a bond, making a cash deposit, or filing a Statement of Inability to Afford Payment of Court Costs within 5 days after this judgment was signed. See Texas Rule of Civil Procedure 510.9(a).

If you are an individual (not a company), your money or property may be protected from being taken to pay this judgment. Find out more by visiting www.texaslawhelp.org/exempt-property. / *Si usted es una persona física (y no una compañía), su dinero o propiedad pudieran estar protegidos de ser embargados como pago de esta deuda decretada en juicio en contra suya. Obtenga mayor información visitando el sitio www.texaslawhelp.org/exempt-property.*

Signed: 07/03/2024

Joe Stephens
Justice of the Peace Precinct 3, Place 1

EXHIBIT
33

**Payment of Rent during the Pendency of Any Appeal:**

☒ The amount of rent to be paid each rental pay period during the pendency of any appeal is $2,000.00

☐ A portion of the rent is payable by a government agency, and the amount of rent to be paid each rental pay period during the pendency of any appeal is: $________ by Defendant and $________ by government agency.

EXHIBIT 33

Taiujuan Burches & All Other Occupants
8831 Wooster Trails Dr
Baytown TX 77521

## NOTICE TO PARTIES INTENDING TO APPEAL

### RIGHT TO REQUEST AN APPOINTMENT OF ATTORNEY

If you intend to appeal the Judgment of the Justice Court by filing a sworn statement of inability to pay, you have the right to request the appointment of an attorney to represent you in the proceedings in the County Civil Courts at Law. You may exercise this right after the sworn statement has been approved and the appeal perfected. You must make your request for the appointment of an attorney, in writing, to the County Civil Court at Law in which the appeal is filed.

An appointed attorney's representation is in the trial de novo in County Civil Court at Law. The County Civil Court at Law may terminate the representation for cause.

### APPEAL BY PAUPER'S AFFIDAVIT OR SURETY BOND

You may appeal the judgment of the Justice Court by posting cash, posting a surety bond, or by filing a sworn statement of inability to pay no later than the 5th day after the date judgment is signed.

If you are the tenant and file a sworn statement of inability to pay or a surety bond to appeal an eviction for nonpayment of rent, you must pay the initial deposit of rent into the registry of the Justice Court within five (5) days of the date you file the sworn statement or surety bond. The rent must be paid by cashier's check or money order payable to the "Justice of the Peace."

**Your failure to pay the first deposit of rent into the Justice Court registry by the required date and time may result in the issuance of a writ of possession without a hearing.** Because the appeal has been perfected even though a writ of possession has issued, the transcript and original papers will be forwarded to the County Civil Court at Law for trial de novo.

### RIGHT TO CONTEST PORTION OF RENT PAID BY GOVERNMENT AGENCY

If a government agency is responsible for all or a portion of the rent, either party may contest the determination of the portion of rent to be paid by the tenant. A contest must be filed with the Justice Court on or before the 5th day after the date the judgment in the eviction proceeding is signed. Not later than the 5th day after the contest is filed, the Justice Court will notify the parties and hold a hearing to determine the amount to be paid by the tenant under the terms of the rental agreement and applicable laws and regulations. If the tenant object to the Justice Court's ruling on the portion of rent to be paid, the tenant is required to pay only the portion that the tenant claims is owed until the issue is heard in the County Civil Court at Law. During the appeal, the tenant or the landlord may file a motion with the County Civil Court at Law to reconsider the amount of rent that the tenant must pay into the Registry of the Court.